# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| RICHARD COLE, BRADFORD COLE, CARY JUSTICE, MICHAEL MASSEY, and DON WEGENER, | ) ) ) | |
| | ) | **Case No: 3:14-cv-02022** |
| **Plaintiffs, on behalf of themselves and all others similarly situated,** | ) ) | |
| | ) | |
| **v.** | ) | **Judge Todd J. Campbell** |
| | ) | **Magistrate Judge Juliet E. Griffin** |
| AMERICAN SPECIALTY HEALTH NETWORK, INC.; AMERICAN SPECIALTY HEALTH, INC.; CIGNA CORPORATION, INC.,; JOHN DOES A, B, & C; and JANE DOES A, B, & C, | ) ) ) ) ) | |
| | ) | |
| **Defendants.** | ) | |

---

## MEMORANDUM OF LAW IN SUPPORT OF
## CIGNA'S MOTION TO DISMISS THE COMPLAINT

---

T. Harold Pinkley, BPR 09830
Amanda Haynes Young, BPR 015472
Valerie Diden Moore, BPR 031593
BUTLER SNOW LLP
150 Third Avenue South, Suite 1600
Nashville, TN 37201
Email: harold.pinkley@butlersnow.com
        mandy.young@butlersnow.com
        valerie.moore@butlersnow.com
Telephone: (615) 651-6700
Facsimile: (615) 651-6701

Joshua B. Simon
Warren Haskel
Ryan D. McEnroe
        (all admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Email: joshua.simon@kirkland.com
        warren.haskel@kirkland.com
        ryan.mcenroe@kirkland.com
Telephone: (212) 446-4800
Facsimile: (212) 446-6460

*Counsel for Defendant Cigna Corporation*

# TABLE OF CONTENTS

INTRODUCTION..............................................................................................................1

FACTUAL BACKGROUND ........................................................................................ 3

ARGUMENT ................................................................................................................. 7

I.      PLAINTIFFS' CLAIMS ARE LARGELY PREEMPTED BY ERISA. ..................... 7

II.     PLAINTIFFS' CLAIMS ARE ALSO SUBJECT TO DISMISSAL UNDER
        12(B)(6) FOR FAILURE TO STATE A CLAIM........................................................ 8

        A.      Plaintiffs' Contract Claims (Counts I and II) Should Be Dismissed. ..................... 9

                1.      Plaintiffs' Breach of Contract Claim (Count I) Fails Because They
                        Have Not Identified a Single Contract Term That Cigna or ASH
                        Breached. ................................................................................................ 10

                2.      Plaintiffs Have Not Pled a Contract of Adhesion (Count II). ................... 12

                3.      Plaintiffs' Unjust Enrichment Claim (Count I) Fails Because
                        Plaintiffs Admit that There is an Operative Contract Between the
                        Parties........................................................................................................ 14

        B.      Plaintiffs Have Failed to Plead Fraud (Count III)................................................. 15

                1.      Plaintiffs' Own Allegations Disprove Any Fraud Occurred.................... 15

                2.      Plaintiffs Have Not Alleged a Loss. ....................................................... 17

        C.      Plaintiffs Have Failed to Plead a Plausible Claim for Trover and
                Conversion (Count IV). ........................................................................................ 18

        D.      Plaintiffs Have Failed to Plead a Plausible Claim for Negligence (Count
                VI) or Negligence Per Se (Count VII). ................................................................. 19

        E.      Plaintiffs' Claims for Constructive Trust (Count V) and Accounting
                (Count VIII) Should Be Dismissed Because They Cannot Independently
                Support the Complaint. ......................................................................................... 23

CONCLUSION .......................................................................................................... 25

## INTRODUCTION

Unhappy with the terms of their agreements with Cigna and ASH,[1] Plaintiffs raise a host of claims based in contract and fraud in an attempt to rewrite the deals. The lack of merit of Plaintiffs' claims is obvious on the face of their complaint. Plaintiffs admit that Cigna and ASH disclosed the existence of the contested changes to Plaintiffs' relationship with Cigna before Plaintiffs entered into any new agreements, and Plaintiffs likewise recognize that Cigna gave them the option not to enter into the disputed contracts. Just as telling, Plaintiffs do not identify a single claim for reimbursement that they believe Cigna or ASH mishandled, nor do Plaintiffs specify a single specific contractual provision that they believe either party breached. In light of these admissions and omissions, it is not surprising that Plaintiffs have not stated any viable claims.

As a threshold matter, all but Plaintiffs' second and third counts are preempted by ERISA to the extent that their patients were covered by ERISA plans, as Plaintiffs' state-law claims are nothing more than generalized, unsubstantiated assertions that Cigna improperly calculated and/or denied unspecified benefits under these plans.

But even putting ERISA preemption aside, all of Plaintiffs' claims suffer from significant defects that warrant dismissal of their complaint in its entirety. Count I, for breach of contract, alleges that Cigna and ASH breached their agreements with Plaintiffs, but as noted above, Plaintiffs have not identified any contractual provisions that Cigna or ASH actually breached,

---

[1] Following the complaint's terminology, "Cigna" refers to Cigna Corporation, which is a holding company that is not engaged in the business of insuring or providing administrative services to healthcare benefits plans and has been misnamed as a party. This motion does not address this fact because Plaintiffs' complaint fails to state a claim for which relief can be granted regardless of which Cigna entity it names. "ASH" refers to defendants American Specialty Health Networks, Inc. and American Specialty Health, Inc., collectively. With respect to quotations in this memorandum of law, all emphasis has been added and all internal citations have been omitted unless otherwise noted in the citation.

and the agreements themselves show that the allegedly wrongful conduct was contractually permitted. Count II, for contract of adhesion, similarly fails because Plaintiffs fail to plead any plausible facts suggesting that they had no choice but to enter into the operative contracts or that the contracts were unenforceable. And since there were enforceable contracts between the parties, Plaintiffs' unjust enrichment claim, also under Count I, fails too.

Plaintiffs' Count III, for fraud/tortious misrepresentation, should be dismissed because Plaintiffs have failed to allege that Cigna or ASH misrepresented anything about the relevant contracts or that Plaintiffs reasonably relied on any alleged misrepresentations, two key elements of common law fraud. In fact, Plaintiffs *admit* that Cigna and ASH disclosed all of the facts that Plaintiffs contend were hidden from them. As would be expected given this defect, Plaintiffs also fail to plead their claim with the particularity required by Federal Rule of Civil Procedure 9(b). And because Plaintiffs always had the option of simply terminating their contracts with ASH, they cannot plead that they suffered any loss from being induced into this agreement.

Plaintiffs' Count IV, for trover and conversion, fails because Plaintiffs allege no identifiable converted property. At most, Plaintiffs point to Cigna's and ASH's alleged obligations to pay a debt under the relevant agreements, but such allegations are insufficient to state a claim for trover and conversion under Tennessee law.

Plaintiffs likewise cannot support Count VI, for negligence, because the only duties that they specifically plead Cigna and ASH owed to them were contractual ones, which cannot establish a claim for negligence. Plaintiffs' Count VII, for negligence per se, also fails because Plaintiffs have failed to identify any statutes that create a legal duty of care.

Finally, Counts V and VIII, for a constructive trust and an accounting, respectively, are not causes of action but remedies that cannot independently support Plaintiffs' complaint.

Moreover, Plaintiffs have not pled plausible facts suggesting that these remedies would be applicable in this case, and therefore these claims also fail.

## FACTUAL BACKGROUND

### *The Relationship of the Parties.*

Cigna is a healthcare company that administers healthcare benefits plans for its clients, many of which are employers who provide health benefits to their employees through self-funded plans. (*See* Compl. ¶ 17.) As part of its role in administering plans, Cigna contracts with individual healthcare providers to treat plan members, creating a relationship whereby providers become "in-network" providers who charge members based on a pre-determined fee schedule. (*Id.* ¶¶ 20, 24-25.) Plaintiffs were in-network providers. (*Id.* ¶¶ 141, 146, 151, 156, 161.) In contrast, "out-of-network" providers do not have a contractual relationship with Cigna, and therefore do not have agreed-upon rates with Cigna, but they can still be paid for treating patients covered by Cigna-administered plans. (*Id.* ¶ 21.)

Cigna also contracts with entities that provide healthcare services, including entities that give Cigna access to their own networks of contracted healthcare professionals, administer payments to healthcare professionals for claims submitted to Cigna, and evaluate claims for medical necessity and/or appropriateness. (*Id.* ¶¶ 27-30.) Cigna contracted with ASH, a well-known chiropractic network and management company, to perform all of these functions for chiropractors in Tennessee. (*Id.*)

### *Cigna and ASH Explain Their New Relationship and the Separate ASH Contract*

To effectuate its new arrangement with ASH, Cigna gave its in-network chiropractors an option: they could continue to treat members of Cigna plans on an in-network basis by agreeing to suspend their agreements with Cigna in favor of separate agreements with ASH, or they could

terminate their agreements with Cigna and treat Cigna's members as out-of-network providers. (*Id.* ¶¶ 34-35.)

At the heart of their complaint, Plaintiffs asset that they were led to believe that their contractual relationship with Cigna would continue unchanged and that they were unaware of a separate agreement with ASH. (*Id.* ¶¶ 43-44, 205.) But that misimpression is belied by the facts alleged in the complaint. For instance, Plaintiffs allege that, starting in 2010, Cigna and ASH sent letters to in-network providers—including Plaintiffs—explaining the new relationship between ASH and Cigna before Plaintiffs ever agreed to any new contracts with Cigna or ASH. (*Id.* ¶ 31.) In particular, these letters informed Plaintiffs that: (1) "Cigna had contracted with ASH to manage and administer in-network chiropractic benefits for Cigna benefit plans;" (2) "in order to remain as an in-network provider with Cigna, Plaintiffs and those similarly situated would be required to contract with ASH and enroll with ASH by a certain deadline . . . ;" and (3) upon agreement with Cigna and ASH, any direct, network provider agreements with Cigna would be "suspended" as long as Cigna's contract with ASH was in effect. (*Id.* ¶¶ 31-34.)

**The Terms of the ETP and PSA Fully Disclosed this New Relationship to Plaintiffs.[2]**

Plaintiffs' allegations also make clear that, after receiving letters from Cigna and ASH, Plaintiffs signed an agreement with Cigna called the "Election to Participate with Cigna" ("ETP") and a "Provider Services Agreement" ("PSA" or "MCA") with ASH. (*Id.* ¶¶ 37, 42-44;

---

[2]    Attached as Exhibits A to D to the Declaration of T. Harold Pinkley are copies of Plaintiffs' ETPs with Cigna and their PSAs with ASH and accompanying signature pages, which Plaintiffs suggest they would have attached to the complaint but for confidentiality concerns. (Compl. ¶ 44 & n.1) Because these contracts are "referred to in the complaint and [are] central to the plaintiffs' claim," this Court may consider them when deciding this motion pursuant to Rule 12(b)(6). *See Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999); *see also Thomas v. Publishers Clearing House, Inc.*, 29 F. App'x 319, 322 (6th Cir. 2002) ("Where the plaintiff fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading."); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (considering pension plan documents that defendant attached to its motion to dismiss because the documents were referred to in the complaint and were central to plaintiff's claim for benefits under the plan).

4

*see also* Ex. A, ETP Agreement; Ex. B.1-B.5, Plaintiffs' ETP Signature Pages; Ex. C, PSA Agreement; Ex. D.1-D.5, Plaintiffs' PSA Signature Pages.) These agreements further demonstrate that Cigna and ASH fully disclosed the new contractual arrangements with Plaintiffs. For instance, the ETP memorialized what Cigna communicated in its letters, including that:

- Plaintiffs' contracts with Cigna would be suspended if they chose to contract with ASH (Compl. ¶ 37(e) ("[T]he undersigned health care provider's rights and obligations under any Direct Agreement with respect to Participants under said Programs shall be suspended from the date on which he or she is or becomes a party to such arrangement with MCA . . ."));

- Plaintiffs had the option to enter into a subsequent agreement with ASH (*id.* ¶ 37(a-b) ("You will provide to Participants Covered Services that are within the scope of your health care practice, and pursuant to the applicable terms and conditions of the MCA Agreement and this Election."));

- Plaintiffs "will accept as full payment due from CIGNA or other Payor for rendering such Covered Services the amounts specified and payable by MCA" (*id.* ¶ 37(c)); and

-  "[T]he terms relating to reimbursement, shall be governed instead by Your arrangement with MCA." (*Id.* ¶ 37(e).)

As is clear from Plaintiffs' allegations, the plain language of the ETP shows that Cigna did not misrepresent to Plaintiffs that their contracts with Cigna would continue, that their fee schedules would remain in place, or that the three-page ETP was the entire agreement with Cigna. (*See id.* ¶ 43-44, 205.)

Plaintiffs' agreement with ASH further explained how their relationship with Cigna and ASH would work going forward. (*See id.* ¶¶ 45-49.) Plaintiffs do not cite any specific terms of the PSA that they believe ASH breached, nor do they cite a single claim that they believe Cigna or ASH paid or otherwise mishandled. Still, much of the conduct that Plaintiffs suggest caused a contractual breach was explicitly permitted by the PSA.  For instance,

- Plaintiffs allege that the explanation of benefits ("EOBs") sent to patients by Cigna and the amount due Plaintiffs from ASH were different, causing unspecified "errors in billing." (*Id.* ¶¶ 56-57, 60.) But the PSA makes clear that these amounts are not supposed to be the same. The "Claims Payment Amount" is the sum Plaintiffs agreed to receive from ASH, subject to various adjustments and deductions, and that is different than the amount that Cigna pays ASH, which is Cigna's claim reimbursement and thus what appears on patients' EOBs. (*See* Ex. C, § 1.07.)

- While Plaintiffs allege that claims were not processed correctly, the PSA imparts a duty on Plaintiffs to "follow-up" with ASH within specified time frames about such disputes, after which Plaintiffs could appeal any remaining non-payments. (Ex. C, Att. G, § 5-6.) Plaintiffs do not allege that they engaged in this process, as they were contractually bound, or that ASH failed to honor the process if they did.

- Plaintiffs complain of "penalties" for submitting paper claims, but the PSA explicitly provides an incentive for submitting claims electronically by ASH Electronic Transaction Processing Program. (*See* Ex. C, Att. J., § 1 ("Contracted Chiropractor shall receive an ETP Program Incentive Payment from or be charged an Administrative Processing Fee by ASH Networks based on the percentage of successful transactions submitted through the ETP Program.").)

- Plaintiffs allege that the "Tier system" violates the contract but that process is plainly set forth in the PSA, and Plaintiffs offer no facts suggesting that Cigna or ASH failed to comply with these terms. (*See* Ex. C, Att. K ("ASH Networks has defined a tier system to describe various levels of waiver.").)

### *The PSA Could Be Terminated by Providers at Any Time Without Cause or Cost*

Finally, while Plaintiffs assert that they were "forced" into the PSA (*see, e.g.*, *id.* ¶¶ 190–92, 199-200), the terms of the PSA again tell a different story. In particular, the PSA states that Plaintiffs could terminate the PSA "at any time with or without cause" subject to a 60-day notice requirement. (Ex. C, PSA Art. 5.01.) There was no monetary penalty for doing so. (*Id.*) Moreover, had they chosen to terminate the PSA, Plaintiffs could have still provided services to members of Cigna-administered plans, just on an out-of-network basis. Indeed, Plaintiffs allege that at least some in-network providers did just that. (Compl. ¶ 106.) Thus, Plaintiffs' claims of compulsion elide the real reason they agreed to the PSA and worked with ASH at all—they wanted the benefits of being a Cigna in-network provider, but without any of the accompanying administrative duties. (*Id.* ¶ 20.)

**ARGUMENT**

## I.    PLAINTIFFS' CLAIMS ARE LARGELY PREEMPTED BY ERISA.

Plaintiffs' claims for Breach of Contract/Unjust Enrichment (Count I), Wrongful Trover/Conversion (Count IV), Constructive Trust (V), Negligence (Count VI), Negligence Per Se (Count VII), and Accounting (Count VIII) simply allege that Cigna improperly calculated and/or denied benefits pursuant to the applicable benefits plans. To the extent that these plans are governed by ERISA, Plaintiffs' state-law claims are precisely the types that courts routinely hold "relate to" an employee benefit plan and are thus preempted under ERISA § 514(a). *See also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45-46 (1987) (ERISA preemption provisions are "deliberately expansive").

Courts interpret ERISA's preemption provisions broadly because the statute "would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Dedeaux*, 481 U.S. at 54. Courts in the Sixth Circuit thus routinely hold that ERISA preempts state-law claims where those claims are, in essence, claims for benefits under ERISA plans. *See Cromwell v. Equicor–Equitable HCA Corp.,* 944 F.2d 1272, 1276 (6th Cir. 1991) ("It is not the label placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit."); *Smith v. Provident Bank,* 170 F.3d 609, 615 (6th Cir. 1999).

Here, the relief Plaintiffs seek under Counts I and IV through VIII is reimbursement for allegedly unpaid or underpaid benefits, which would require this Court to interpret the terms of Cigna's plans to determine whether additional payments were warranted. For instance, Plaintiffs' breach of contract claim alleges that Cigna failed to "properly" and "timely" pay claims in administering its plans. (*See* Compl. ¶ 187.) Likewise, for their trover and conversion cause of action, Plaintiffs claim that Cigna wrongfully withheld property and assets from Plaintiffs in

7

administering its plans. (*Id.* ¶ 112; *see also id.* ¶ 218 (alleging that Plaintiffs submitted claims for payment to Cigna and that Cigna has been unjustly enriched by retaining money that should be paid to Plaintiffs); *id.* ¶ 225 (alleging that Cigna, among other things, failed to properly and timely pay claims); *id.* ¶ 228 (same).)

Consequently, all of Plaintiffs' state-law claims based on plans governed by ERISA are preempted by ERISA and should be dismissed.[3] *See, e.g., Mazur v. UNUM Ins. Co.,* No. 14–1369, 2014 WL 5454836, at *1-2 (6th Cir. Oct. 28, 2014) (beneficiary's breach of contract claim against insurance company for unpaid benefits preempted by ERISA because such claims are "essentially state law claims seeking benefits under an employee benefit plan"); *Heritage Equity Group 401(k) Savings Plan v. Crosslin Supply Co., Inc.*, 638 F. Supp. 2d 869, 875-76 (M.D. Tenn. 2009) (claim for unjust enrichment and seeking constructive trust preempted by ERISA); *Productive MD, LLC v. Aetna Health, Inc.*, 969 F. Supp. 2d 901, 944 (M.D. Tenn. 2013) (provider's claim against insurer under Tennessee Prompt Pay Act preempted by ERISA); *Provident Bank,* 170 F.3d at 615-16 (claims against insurer for trover, conversion, and negligence preempted by ERISA). All that is left are Plaintiffs' claims for Contract of Adhesion (Count II) and Fraud (Count III), but for the reasons described in Section II below, these claims—like all of Plaintiffs' preempted claims—fail to state a claim as a matter of law.

## II.    PLAINTIFFS' CLAIMS ARE ALSO SUBJECT TO DISMISSAL UNDER 12(B)(6) FOR FAILURE TO STATE A CLAIM

Under Rule 12(b)(6), "all well-pleaded material allegations of the pleadings" are accepted as true, and those allegations must "be sufficient to give notice to the defendant as to what claims

---

[3]    Plaintiffs do not identify any specific benefits claims in their complaint, precluding Cigna from specifying at this time which of Plaintiffs' benefits claims are governed by ERISA plans. However, the vast majority of plans administered by Cigna are governed by ERISA, which means that the vast majority of benefits claims submitted by Plaintiffs are likely covered by ERISA too. And Plaintiffs have not alleged that the specific benefits claims at issue here are related to non-ERISA plans.

8

are alleged, and . . . plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). In determining whether a complaint sets forth a plausible claim, a court may consider not only the allegations, but "may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." *Wyser–Pratte Mgmt. Co. v. Telxon Corp.,* 413 F.3d 553, 560 (6th Cir. 2005). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *North v. United States*, No. 3-12-1057, 2013 WL 766337, at *1 (M.D. Tenn. Feb. 28, 2013) (quoting *Iqbal*, 556 U.S. at 678). And "[a] legal conclusion couched as a factual allegation need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient." *Id.*

A. **Plaintiffs' Contract Claims (Counts I and II) Should Be Dismissed.**

Plaintiffs offer three theories of liability under the guise of breach of contract. First, they assert that Cigna and ASH breached their contracts with Plaintiffs by improperly paying claims and interest and improperly applying a "Tier System," which distinguished Plaintiffs' claims for reimbursement from other network chiropractors. (Compl. ¶¶ 186-87.) Second, Plaintiffs assert that the contracts they entered with Cigna and ASH are unenforceable because they are contracts of adhesion that Plaintiffs were forced to enter without knowledge of the contracts' terms. (*Id.* ¶ 199.) Finally, Plaintiffs alternatively plead that if the contracts with Cigna and ASH are not enforceable, Cigna and ASH were unjustly enriched at Plaintiffs' expense. (*Id.* ¶ 192.) None of these theories is availing.

1. <u>Plaintiffs' Breach of Contract Claim (Count I) Fails Because They Have Not Identified a Single Contract Term That Cigna or ASH Breached.</u>

Plaintiffs' first count for breach of contract fails for the simple reason that Plaintiffs have not pled a single contractual provision that Cigna or ASH breached. A breach of contract exists where a party, without legal cause, does not perform a promise forming the whole or part of a valid agreement, and where the non-breaching party performed, suffering damages as a result. *See Childress v. Sullivan Cnty. Bd. of Ed.*, 771 S.W.2d 411, 416 (Tenn. Ct. App. 1988). Central to a claim for breach of contract, "a plaintiff must identify the specific contract language whereby the defendant assumed a legally-enforceable obligation to the plaintiff." *Brooks v. Wells Fargo Bank, N.A.*, No. 3:12–0821, 2014 WL 345737, at *2 (M.D. Tenn. Jan. 30, 2014).

Plaintiffs have not met this basic pleading standard. Plaintiffs never once in the complaint's 61 pages invoke a single contractual provision of the PSA, and Plaintiffs refer to the terms of the ETP only to set out *Plaintiffs'* obligations, not those of Cigna or ASH. (Compl. ¶ 37 ("*You* acknowledge"; "*You* will provide"; "*You* will accept"; "*You* agree to cooperate"; "If *you* currently have").) Plaintiffs' complete failure to notify Cigna and ASH of what contractual terms they allegedly breached is reason alone to dismiss their complaint. *See Shirley v. NationStar Mtg. LLC*, No. 2:10–CV–144, 2011 WL 1196787, at *2 (E.D. Tenn. Mar. 29, 2011) (dismissing contract claim where plaintiff did not attach contract to complaint, failed to point to any specific clause of the contract, and made conclusory allegations that the contract was breached).

Moreover, just pointing to a contractual obligation is not enough. Plaintiffs must also allege the "supporting facts." *Robinson v. Everhome Mtg.*, No. 1:13–CV–576, 2013 WL 6327829, at *3 (W.D. Mich. Dec. 5, 2013); *see also Alshaibani v. Litton Loan Serv., LP*, 528 F. App'x 462, 465 (6th Cir. 2013) (holding that plaintiff's naked allegation that Litton "breached the terms of the Mortgage by, including but not limited to, failing to apply Plaintiff's payments

in accordance with the terms of the mortgage," is simply a legal conclusion couched as a factual allegation); *Bihn v. Fifth Third Mortg. Co.*, No. 3:13–cv–00057, 2013 WL 5882063, at *12 (S.D. Ohio Oct. 30, 2013) (dismissing claims that failed to "offer any details of the alleged breach" but instead asserted that "in charging alleged fees, expenses, and costs of collection which are not permitted under the agreements [the mortgage company] has breached these agreements").

Plaintiffs' contract claim fails in this regard too. The closest Plaintiffs come to alleging that Cigna and ASH breached their contracts is to state conclusorily that the defendants "[f]ail[ed] to properly pay claims as required by contract;" "[f]ail[ed] to timely pay claims;" "[f]ail[ed] to pay claims pursuant to contractual terms;" "improper[ly] assess[ed] fees and penalties;" "improper[ly] appli[ed] a 'Tier System';" and "fail[ed] to pay required interest as required by statute for late claims." (Compl. ¶ 187.) But Plaintiffs nowhere identify even a single claim that they submitted to Cigna or ASH for reimbursement, let alone why and how that unidentified claim was improperly handled. This, too, warrants dismissal of Plaintiffs' contract claim. *See Elmore v. One West Bank FSB*, No. 2:12–cv–02280, 2012 WL 6156035, at *3 (W.D. Tenn. Dec. 11, 2012) (holding that simply alleging a bank "'ran-up' unexplained charges and fees" and imposed "excessive" or "duplicate fees" is insufficient to state a contract claim under Tennessee law).

Underlying the defects in Plaintiffs' pleading is the reality that the conduct that Plaintiffs contend breached the PSA is in fact contractually permitted. (*See supra* Factual Background.) Indeed, Plaintiffs' true point of contention is that Cigna and ASH ***complied*** with the terms of the ETP and PSA, not that they breached them. Plaintiffs cannot ask the Court to rewrite their contracts with Cigna and ASH simply because they are dissatisfied with the deal they accepted.

11

2. <u>Plaintiffs Have Not Pled a Contract of Adhesion (Count II)</u>.

Plaintiffs next attempt to escape their contractual obligations by arguing that their contracts with Cigna and ASH are "contracts of adhesion." (*See* Compl. ¶ 199.) The elements of an adhesion contract under Tennessee law are: (1) the seller's bargaining leverage enables it to control the risks under the contract; and (2) the buyer has no realistic choice on the terms. *See, e.g., Wallace v. Nat'l Bank of Commerce*, 938 S.W.2d 684, 687 (Tenn. 1996); *see also Pyburn v. Bill Heard Chevrolet*, 63 S.W.3d 351, 359-60 (Tenn. Ct. App. 2001) (holding that a contract was not adhesive because no proof that the buyer's refusal to agree would cause some detriment other than being unable to come to terms with the particular dealer).

Plaintiffs rest their adhesion claim on the allegations that the ETP and PSA were form contracts and Plaintiffs lacked the ability to negotiate individual terms. (Compl. ¶ 38, 41, 118.) But a contract is not adhesive merely because one party offers a document on a take-it-or-leave-it basis or because it is a form contract; adhesion arises from a lack of corresponding alternatives. *Wallace*, 938 S.W.2d at 687-88 (holding that the contract was not adhesive even though it was a precondition for obtaining the benefit, because no showing existed that the customer had no realistic choice except to acquiesce to the bank's charges). As Plaintiffs allege, the benefit to being within Cigna's network is the ability to provide services to Cigna's plan members. But Plaintiffs admit that they had one obvious alternative to remaining in-network with Cigna if they wished to continue to treat Cigna plan members—an alternative at least some of Plaintiffs' colleagues chose—become an out-of-network provider. (Compl. ¶¶ 20-22.) Likewise, Plaintiffs offer no reason why they could not contract with another managed care company or see patients covered under Medicare or Medicaid. These are all "realistic choice[s]" that Plaintiffs could have considered when deciding whether to remain in-network with Cigna, which preclude Plaintiffs from claiming that the ETP and PSA were adhesive. *See Wallace*, 938 S.W.2d at 687-88.

Moreover, even an adhesive contract is enforceable so long as it is not unduly oppressive or unconscionable. *See Buraczynski v. Eyring*, 919 S.W.2d 314, 320 (Tenn. 1996) ("Enforceability generally depends upon whether the terms of the contract are beyond the reasonable expectations of an ordinary person, or oppressive or unconscionable."). Unconscionability is a high bar, and even at the motion to dismiss stage, federal courts applying Tennessee law have held that a plaintiff's failure to plead plausible facts of unconscionability warrants dismissal. *See Gebhardt v. GMAC Mortg., LLC*, No. 3:09-CV-425, 2010 WL 2901823, at *3-4 (E.D. Tenn. July 21, 2010) (dismissing unconscionability claim when complaint failed to allege how any terms of the contract were "grossly unfair" or "offensive to the public conscience" or how process leading to agreement was "procedurally" unconscionable).

Plaintiffs have not met this bar. They merely state that "Plaintiffs and those similarly situated . . . had no knowledge prior to the execution of the three page agreement that an 82 page contract existed and by which they would be bound." (Compl. ¶ 199.) Not only is this conclusory allegation insufficient to plead unconscionability, but Plaintiffs admit elsewhere in the complaint that it is not true—Cigna and ASH repeatedly disclosed the existence of the PSA before Plaintiffs signed it, including in communications from Cigna and ASH to Plaintiffs and in the terms of the ETP itself.[4] (*Id.* ¶¶ 32-34, 37; *see also supra* Factual Background.) In light of these conflicting pleadings, the Court need not accept Plaintiffs' bald assertion that Cigna and ASH withheld the PSA or its terms. *See Williams v. CitiMortg., Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012) ("[A] court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the

---

[4]    As a matter of law, Plaintiffs are presumed to have read and understood the ETP and PSA before signing them and agreeing to their terms. *See Philpot v. Tenn. Health Mgmt., Inc.*, 279 S.W.3d 573, 581 (Tenn. Ct. App. 2007) (citations omitted) ("The law imparts on parties to a contract to learn the contents and stipulations of a contract before signing it, and signing it without learning such information is at the party's own peril.").

complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice.").

Plaintiffs' pleading lacks the other key indicia of unconscionability as well. Contracts of adhesion are generally found in the consumer context. Contracting commercial actors, in contrast, are generally presumed to negotiate at arms' length and have the sophistication that a consumer would not, and Tennessee courts accordingly treat such contracts differently. *See Skelton v. Freese Const. Co., Inc.*, No. M2012–01935–COA–R3CV, 2013 WL 6506937, at *8 (Tenn. Ct. App. Dec. 9, 2013) (citing Tennessee cases that have not found contracts of adhesion between commercial parties). That is certainly true here, where Plaintiffs are licensed and experienced medical professionals with substantial education and knowledge of the medical industry, as well as years of experience with medical insurance and contracting with insurers. (Compl. ¶¶ 1-5, 141, 146, 151, 156, 161.) For Plaintiffs to claim a sudden lack of sophistication when considering the ETP and PSA is not plausible, and Count II should be dismissed.

3.    Plaintiffs' Unjust Enrichment Claim (Count I) Fails Because Plaintiffs Admit that There is an Operative Contract Between the Parties.

Unjust enrichment is a quasi-contract claim that imposes an equitable substitute for a contract where no enforceable contract exists. *See Thompson v. Am. Gen. Life & Acc. Ins. Co.*, 404 F. Supp. 2d 1023, 1028 (M.D. Tenn. 2005) ("[P]laintiff cannot recover under an unjust enrichment theory if a valid contract existed, since a contract may not be implied where a valid contract exists on the same subject matter."); *Jaffe v. Bolton*, 817 S.W.2d 19, 26 (Tenn. App. 1991) ("[T]he quasi-contractual principle of unjust enrichment does not apply to an agreement deliberately entered into by the parties, however harsh the provisions of such contract may seem in the light of subsequent happenings."). Plaintiffs' unjust enrichment claim fails because the

14

complaint could not be clearer that their unjust enrichment claim covers the same subject matter as their contract claim; in fact, they plead both claims in the same count.

Instead, Plaintiffs base their claim for unjust enrichment on the possibility that the Court finds their contracts with Cigna and ASH to be unenforceable. But as explained in Section II.A.2 directly above, Plaintiffs have not pled any facts to support such a conclusion, and therefore they have no basis to escape the operative contracts.

**B.    Plaintiffs Have Failed to Plead Fraud (Count III).**

1.    <u>Plaintiffs' Own Allegations Disprove Any Fraud Occurred</u>.

To state a claim for fraud, a plaintiff must plead: (1) a representation of an existing or past fact; (2) the representation was false when made; (3) the representation was in regard to a material fact; (4) the false representation was made knowingly, without belief in its truth, or recklessly; (5) the plaintiff reasonably relied on the misrepresentation; and (6) the plaintiff suffered damages as a result. *See Walker v. Sunrise Pontiac–GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008).

Plaintiffs base their fraud claims on three alleged misrepresentations by Cigna and ASH: that Plaintiffs' direct contracts with Cigna would continue, that the three-page ETP constituted Plaintiffs' entire agreement for providing services to Cigna members, and that the fee schedule for services that Plaintiffs provided to Cigna's members would remain in place. (Compl. ¶¶ 43-44, 205.)  But the only facts that Plaintiffs offer in their complaint show that Cigna and ASH disclosed the very information that Plaintiffs insist was misrepresented. In particular, the complaint admits that both Cigna and ASH sent letters to Plaintiffs preemptively explaining the upcoming contract changes before Plaintiffs agreed to the ETP and ASH agreement. (Compl. ¶¶ 32-33.) These letters not only disclosed the new contracts, but also explained that Plaintiffs' contracts with Cigna would be suspended and that "in order to remain as an in-network provider

with CIGNA, Plaintiffs and those similarly situated would be required to contract with ASH and enroll with ASH by a certain deadline." (*Id*. ¶¶ 32-34.) As explained in the Factual Background section above, Plaintiffs further admit that Cigna disclosed this same information in the ETP itself, informing Plaintiffs that their Cigna contract was going to be suspended if they opted to remain in-network, they would have to contract with ASH, and their fees would be paid pursuant to ASH's contract, not Cigna's. In other words, Plaintiffs' own allegations contradict their claim that Cigna misrepresented the nature of the ETP or PSA.[5] As a result, their fraud claim cannot stand under *Twombly/Iqbal*. *See Williams*, 498 F. App'x at 536-38.

Plaintiffs' admission that Cigna and ASH disclosed the relevant facts to them before Plaintiffs entered into the supposedly fraudulently induced contracts also precludes Plaintiffs from pleading that they relied on the alleged misrepresentations, a necessary element of fraud. *See Ferrell v. Addington Oil Corp.*, No. 2:08-CV-74, 2010 WL 3283029, at *7 (E.D. Tenn. Aug. 18, 2010) (holding that plaintiff did not plead reasonable reliance on alleged misrepresentation about the quantity of gasoline sold because plaintiff measured quantity himself).

Given the contradictory allegations in their complaint, it is not surprising that Plaintiffs have also failed to plead facts that support fraud with the particularity required by Federal Rule of Civil Procedure 9(b). *See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999) ("[A]llegations of fraudulent misrepresentations must be made with sufficient particularity and with a sufficient factual basis to support an inference that they were knowingly made."). "[A]t a minimum [Plaintiffs must] allege the time, place and contents of the misrepresentations upon which [the plaintiff] relied." *Am. Town Ctr. v. Hall 83 Assocs.*, 912 F.2d 104, 109 (6th Cir. 1990).

---

[5] Once again, Plaintiffs' suggestion that they are freed from the terms of the PSA because they failed to read the agreement has no merit. *See Philpot*, 279 S.W.3d at 581.

Plaintiffs have not met this standard. Nowhere in the complaint do Plaintiffs identify the specific content or medium of the communications allegedly suggesting that Plaintiffs' direct contracts with Cigna would continue, that the three-page ETP constituted the Plaintiffs' entire agreement, or that the fee schedule with Cigna would remain in place. Nor does the complaint identify anyone who made these misrepresentations to Plaintiffs, when or how such misrepresentations were made, or even that Cigna or ASH knew such statements were false— Plaintiffs instead only provide communications that show the exact opposite. Such threadbare allegations of fraud do not satisfy Rule 9(b). *See, e.g., Calipari v. Powertel, Inc.*, 231 F. Supp. 2d 734, 736 (W.D. Tenn. 2002) (holding that fraud claim failed Rule 9(b) when plaintiff had not "alleged any indication of when the alleged fraud occurred, the place where the alleged fraud occurred, or the content of the alleged misrepresentation").

2.    Plaintiffs Have Not Alleged a Loss.

Plaintiffs' failure to plead that the alleged misrepresentations caused them any loss is another fatal defect in their fraud claim. *See OnX USA LLC v. Sciacchetano*, No. 1:11CV2523, 2013 WL 1399121, at *3-4 (N.D. Ohio April 5, 2013) (dismissing fraud claim for, among other reasons, failing to allege any loss other than "generalized injury resulting from [Defendant's] fraudulent conduct" or pleading how executing an agreement he alleged was fraudulent "proximately caused him injury").

Plaintiffs baldly assert that they "suffered financial and other damages for which Plaintiffs and class members are entitled to recover significant damages in an amount to be determined by the jury." (Compl. ¶ 208.) But nowhere do Plaintiffs indicate what those damages might be or how the alleged misrepresentations about the ETP or PSA caused them. As explained in the Factual Background section above, if the terms of the PSA were unsatisfactory to Plaintiffs, they could have terminated the agreement at any time with no penalty—which

Plaintiffs admit some providers ultimately did. Thus, Plaintiffs have alleged no loss caused by the misrepresentation, and their fraud claim fails for this independent reason.

### C. Plaintiffs Have Failed to Plead a Plausible Claim for Trover and Conversion (Count IV).

As argued in Section I, Plaintiffs' conversion claims are preempted by ERISA because they merely seek payment of benefits under Cigna's plans, but even if they were not, these claims would still fail. Plaintiffs seem to allege that Cigna and ASH converted money owed to Plaintiffs by misrepresenting the nature of their agreements with Plaintiffs. (Compl. ¶ 213.) As an intentional tort, conversion (of which trover is a form) requires Plaintiffs to prove: (1) appropriation of another's property to one's own use and benefit; (2) by the intentional exercise of dominion over it; and (3) in defiance of the true owner's rights. *See Caldwell v. Canada Trace, Inc.*, No. W2003-00264-COA-R3-CV, 2004 WL 1459418, at *6 (Tenn. Ct. App. June 28, 2004). "[T]he general rule is that money is an intangible and therefore not subject to a claim for conversion." *PNC Multifamily Capital Inst. Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 553-55 (Tenn. Ct. App. 2012) (quoting 90 C.J.S. Trover & Conversion § 16 (2012)). While courts may make an exception when the "money is specific and capable of identification or where there is a determinate sum that the defendant was entrusted to apply to a certain purpose," conversion cannot rely on claims for indeterminate and unidentifiable sums. *See id.* (holding that conversion claim that failed to specifically identify money converted, when it was converted, and by whom, should be dismissed); *see also, Dana Ltd. v. Aon Consulting, Inc.*, 984 F. Supp. 2d 755, 768-69 (N.D. Ohio 2013) (holding that plaintiffs failed to plead a plausible conversion claim when money allegedly converted was not identified).

Here, Plaintiffs have not specified a single unpaid claim allegedly converted by Cigna or ASH, let alone any specific dollar amount or accounts. Just as problematic, Plaintiffs do not

allege that Cigna and ASH were "entrusted" with money to apply to a certain purpose; instead, they are parties to contracts with Plaintiffs to pay for medical services on behalf of Cigna plan members. *PNC*, 387 S.W.3d at 553. The most, therefore, that Plaintiffs could allege is that Cigna and/or ASH had contractual obligations to pay for services, but such allegations do not constitute a claim for conversion under Tennessee law. *See, e.g., Cannon v. Citicorp Credit Servs., Inc.*, (USA), No. 2:12–CV–88, 2014 WL 1267279, at *5 (E.D. Tenn. March 26, 2014) (holding "that an employer's alleged failure to pay wages promised does not constitute conversion"); *Bowman v. PHP Co., Inc.*, No. 3:04-CV-114, 2005 WL 2993902, at *9-10 (E.D. Tenn. Nov. 8, 2005) (holding that "plaintiff did not have an immediate right of possession in the payroll check at the time it was withheld"); *PNC*, 387 S.W.3d at 553-55 ("Trover does not lie to enforce a mere obligation to pay money or for money had and received for payment of a debt.").

### D. Plaintiffs Have Failed to Plead a Plausible Claim for Negligence (Count VI) or Negligence Per Se (Count VII).

Negligence requires allegations of: (1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause. *See Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn. 1993). Duty is the legal obligation owed by the defendant to the plaintiff to conform to a reasonable person standard of care for the protection against unreasonable risks of harm. *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995). Establishment of a legal duty owed by the defendant is an absolute prerequisite to any recovery under a theory of negligence. *See, e.g. Plunk v. Nat'l Health Investors, Inc.*, 92 S.W.3d 409, 413 (Tenn. Ct. App. 2002).

Plaintiffs identify two duties of care that Cigna and ASH allegedly owed: (1) a duty to "comply with the terms of the contract;" and (2) a duty to "comply with Tennessee law." (Compl. ¶ 224.) Even if these negligence theories did not lead to the preemption of Plaintiffs'

claims under ERISA, they would still not be viable. As for the first duty, Tennessee courts have routinely held that contractual duties do not give rise to a negligence claim. *See Permobil, Inc. v. Am. Express Travel Related Servs. Co., Inc.*, 571 F. Supp. 2d 825, 841-43 (M.D. Tenn. 2008); *Thomas & Assocs., Inc. v. Metro. Gov't of Nashville*, No. M2001–00757–COA–R3–CV, 2003 WL 21302974, at *6-10 (Tenn. Ct. App. June 6, 2003) (affirming court's dismissal of negligence and negligence per se claims for failing to identify an independent legal duty other than those duties required by contract). Plaintiffs' attempt to convert their contractual dispute with Cigna and ASH into a tort claim is therefore unavailing.

As for the second duty, Plaintiffs identify three Tennessee statutes they believe supply a duty of care under a theory of negligence per se: Tenn. Code Ann. § 56-7-2404, Tenn. Code Ann. § 56-32-129(a), and Tenn. Code Ann. § 56-7-109.[6] (Compl. ¶ 228.) To plead a negligence per se claim, Plaintiff must show that (1) "the defendant violated a statute or ordinance which imposes a duty or prohibits an act for the benefit of a person or the public"; (2) "the injured party was within the class of persons whom the legislative body intended to benefit and protect by the enactment of that particular statute or ordinance"; and (3) "such negligence was the proximate cause of the injury." *Smith v. Owen*, 841 S.W.2d 828, 831 (Tenn. Ct. App. 1992).[7]

Negligence per se "is not a magic transformational formula that automatically creates a private negligence cause of action for the violation of every statute [and] . . . [n]ot every statutory

---

[6] Plaintiffs do not bother to specify which statutes they believe supply a duty of care for Count VI, which is reason alone to dismiss that portion of their negligence claim. *See, e.g.*, *Tilden v. Gen. Elec. Co.*, No. 3:11-CV-628, 2012 WL 1023617, at *5-6 (E.D. Tenn. March 26, 2012) (dismissing negligence per se action for failing to plead a statute which Defendants had allegedly violated); *McConkey v. McGhan Med. Corp.*, 144 F. Supp. 2d 958, 965 (E.D. Tenn. 2000) (stating that "[t]o establish a claim of negligence per se, one must identify that the defendant breached a statute, regulation, or ordinance").

[7] Cigna is unaware of any Tennessee court that has found that these statutes contain a private of action, presumably explaining why Plaintiffs have tried to plead a claim for negligence per se rather than under the statutes themselves. *See Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850, 855 (Tenn. 2010) ("When the existence of a private right of action depends on the contents of a statute, our courts are not privileged to create such a right under the guise of liberal interpretation of the statute.").

violation amounts to negligence per se." *Rains v. Bend of the River*, 124 S.W.3d 580, 590 (Tenn. Ct. App. 2003). "Even if the plaintiffs are within the class to be protected by the statute, a statutory negligence per se claim cannot stand unless the statute establishes a standard of care." *Thomas & Assocs.*, 2003 WL 21302974, at *8. None of the three statutes that Plaintiffs cite gives rise to negligence per se.

As an initial matter, Plaintiffs are outside the class of people that the legislature intended to protect when enacting Tenn. Code Ann. § 56-7-2404 because the statute does not directly protect chiropractors; rather, it protects their patients seeking reimbursement for chiropractic treatment. *See* Tenn. Code Ann. § 56-7-2404 (West 2014) ("Whenever any policy of insurance issued in this state provides for reimbursement for any service that is within the lawful scope of practice of a duly licensed chiropractor, ***the insured or other person entitled to benefits under the policy shall be entitled to reimbursement for the services*** . . . Whenever any ***insurance subscribers . . . or any other persons covered by the plan or contract***, are entitled to reimbursement for any services that are within the lawful scope of practice of a duly licensed chiropractor, ***the subscriber or other person*** shall be entitled to reimbursement for the services . . . .").

Moreover, none of the three statutes Plaintiffs invoke creates a duty of care because they are all at most administrative guidelines regulating insurance providers. *See King v. Danek Med., Inc.*, 37 S.W.3d 429, 460 (Tenn. Ct. App. 2000) (holding that statutes setting forth administrative requirements could not be used to support a negligence per se claim). By their plain terms, Tenn. Code Ann. § 56-7-2404 and Tenn. Code Ann. § 56-32-129(a) neither expand an insurer's duty to provide chiropractor coverage nor even prevent insurers from limiting the types of services they deem medically necessary. Instead, they are the type of vague anti-discrimination statutes—here,

seeking to prevent discrimination against insureds for receiving services from chiropractors but not specifying what conduct violates the statutes—that courts have reasoned merely "prohibit[] discrimination." *See, e.g.*, *Fonseca v. Golden Living Ctr.-Mountainview*, No. 4:09-cv-93, 2010 WL 3155984, at *4 (E.D. Tenn. Aug. 10, 2010) (holding that violation of statute for gender discrimination did not establish a duty of care because it did "not establish a minimum standard of conduct"). They do "not mandate a standard of care for employers or individuals, nor is a violation of this statute easily defined or proven." *Id.*

Plaintiffs fare no better with Tenn. Code Ann. § 56-7-109. This "prompt pay" statute regulates how and when insurers pay certain types of claims, the notice they must give, and any interest owed for late claims. *See* Tenn. Code Ann. § 56-7-109(b) (West 2014). This law too is the type of regulation that courts have found to be administrative. *See, e.g., Hamilton County Emergency Comm'n Dist. v. BellSouth Telecomm'ns, LLC*, 890 F. Supp. 2d 862, 881 (E.D. Tenn 2012) (dismissing negligence per se claim based on violation of statute requiring telecommunication companies to "to bill, collect, and remit 911 charges" and to provide annual and bi-annual written reports of amounts billed); *see also Myers v. United States*, 17 F.3d 890, 900-01 (6th Cir. 1994) (FTCA provisions ensure administrative compliance with safety statutes, but do not set forth a substantive standard of care).

Several other factors also weigh against basing a negligence per se claim on Tenn. Code Ann. § 56-7-109. The statute provides its own remedy, lacks a private right of action, and gives the Commissioner of Commerce and Insurance the power to conduct hearings, assess penalties, and determine compliance, while vesting it with "ongoing regulatory oversight of health insurance entities." *See* Tenn. Code Ann. §56-7-109(c)(1). These statutory features are inconsistent with an application of negligence per se. *See In re Tenn. Valley Auth. Ash Spill*

*Litig.*, 2012 WL 3647704, at *60 (E.D. Tenn. Aug. 23, 2013) (holding that negligence per se did not apply to Tennessee statutes with no private right of action, their own "statutory remedies," no authorization for plaintiff "to recover damages," and vesting of "power in state regulatory authorities").

Finally, even if any of these statutes supplied a per se duty of care—and they do not—Plaintiffs do not plead one instance where Cigna or ASH caused a violation. Instead, Plaintiffs state that "Defendants also violated state law," "failed to avoid discriminatory practices with regard to Plaintiffs and those similarly situated," engaged in an allegedly "discriminatory" medical necessity review process, and "negligently failed to pay statutory interest for late payments." (Compl. ¶¶ 225, 228.) Such naked legal assertions do not support a negligence claim. *See Adkins v. Chevron Corp.*, 960 F. Supp. 2d 761, 773 (E.D. Tenn. 2012) (negligence per se claim dismissed where plaintiffs "totally fail[ed] to provide any factual allegations which would support their allegation of the breach" of federal statute, made conclusory statements "masquerading as factual allegations," and failed to show "how any of these acts of 'non-compliance' have violated any of the statutes and regulations identified by plaintiffs").

### E. Plaintiffs' Claims for Constructive Trust (Count V) and Accounting (Count VIII) Should Be Dismissed Because They Cannot Independently Support the Complaint.

Constructive trust and accounting are equitable remedies that cannot independently support a claim. *See Bradshaw v. Thompson*, 454 F.2d 75, 79 (6th Cir. 1972) (holding that an accounting "is an extraordinary remedy, and like other equitable remedies, is available only when legal remedies are inadequate."); *In re Del-Met Corp.*, 322 B.R. 781, 836 (M.D. Tenn. Mar. 4, 2005) (finding accounting is not an independent cause of action capable of independently supporting a complaint); *Rider ex rel. Rider v. Rider*, No. M2002–00556–COA–R3CV, 2003 WL 22345475, at *3 (Tenn. Ct. App. Oct. 15, 2003) ("[C]onstructive trust is merely a remedy

used by courts to enforce substantive rights; it is not itself a substantive right."); *Thompson*, 404 F. Supp. 2d at 1029 & n.2 (holding that "constructive trust" is not a cause of action, but rather a remedy used by courts to enforce substantive rights).

But even if these remedies could constitute independent causes of action, Plaintiffs have failed to plead facts to support them. A constructive trust should be imposed only when the defendant "(1) obtains legal title to property in violation of some duty owed the owner of the property; (2) obtains title to property by fraud, duress, or other inequitable means; (3) makes use of a confidential relationship or undue influence to obtain title to property upon more advantageous terms than would otherwise have been obtained; or (4) obtains property with notice that someone else is entitled to the property's benefits." *Stewart v. Sewell*, 215 S.W.3d 815, 826 (Tenn. 2007). Plaintiffs have not pled any of these inequitable circumstances to support their constructive trust claim.

Similarly, an accounting is an "extraordinary" remedy appropriate only when the court seeks "to determine the extent of a misallocation of expenses and the damages resulting therefrom when there is fiduciary relationship between the parties," or when determining "a restitutionary award of the defendant's profits wrongfully obtained from use of the plaintiff's property." *Lubber, Inc. v. Optari, LLC*, No. 3:11–0042, 2011 WL 4738264, at *10-11 (M.D. Tenn. Oct. 6, 2011). Plaintiffs have not pled a fiduciary relationship between the parties, nor could they, given the parties' arm's length relationship. As described in Section II.A-B above, Plaintiffs have also not adequately pled any fraud or unjust enrichment claims; at most, they have alleged claims arising under contract. Plaintiffs are therefore not entitled to an accounting.

24

## CONCLUSION

For the reasons set forth above, Cigna respectfully requests that the Court dismiss Plaintiffs' complaint in its entirety.


Respectfully submitted,


/s/   T. Harold Pinkley

T. Harold Pinkley, BPR 09830
Amanda Haynes Young, BPR 015472
Valerie Diden Moore, BPR 031593
BUTLER SNOW LLP
150 Third Avenue South, Suite 1600
Nashville, TN 37201
Email: harold.pinkley@butlersnow.com
        mandy.young@butlersnow.com
        valerie.moore@butlersnow.com
Telephone: (615) 651-6700
Facsimile: (615) 651-6701

Joshua B. Simon
Warren Haskel
Ryan D. McEnroe
        (all admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Email: joshua.simon@kirkland.com
        warren.haskel@kirkland.com
        ryan.mcenroe@kirkland.com
Telephone: (212) 446-4800
Facsimile: (212) 446-6460


*Counsel for Defendant Cigna Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I, T. Harold Pinkley, the undersigned, certify under penalty of perjury, that on this 23rd day of December, 2014, I caused a true and correct copy of the attached Memorandum of Law in Support of CIGNA's Motion to Dismiss the Complaint to be served upon all counsel of record via this Court's electronic filing system. I further certify that the foregoing is available for viewing and downloading from the electronic filing system.


/s/   T. Harold Pinkley
T. Harold Pinkley