# EXHIBIT C

**AMERICAN SPECIALTY HEALTH NETWORKS, INC.**

**CHIROPRACTIC**

**PROVIDER SERVICES AGREEMENT**

ASH CONFIDENTIAL
Not To Be Reproduced Or Disclosed
Without Written Permission

*CHIROPRACTIC PROVIDER SERVICES AGREEMENT* ............................................................................ 5

**ARTICLE 1    DEFINITIONS** ............................................................................................................... 5
1.01    Administrative Program ......................................................................................................... 5
1.02    Affinity Program ...................................................................................................................... 5
1.03    Affinity Services ...................................................................................................................... 5
1.04    Agreement ................................................................................................................................. 5
1.05    ASHLink .................................................................................................................................... 6
1.06    Chiropractic Services .............................................................................................................. 6
1.07    Claims Payment Amount ........................................................................................................ 6
1.08    Clean Claim .............................................................................................................................. 6
1.09    Clinical Performance Management Program ....................................................................... 6
1.10    Clinical Provider Review Committee .................................................................................... 7
1.11    Clinical Services Management Program ............................................................................... 7
1.12    Contracted Ancillary Provider .............................................................................................. 7
1.13    Contracted Chiropractor ........................................................................................................ 7
1.14    Contracted Provider ................................................................................................................ 7
1.15    Corporate Quality Oversight Committee ............................................................................. 7
1.16    Corrective Action Plan ............................................................................................................ 7
1.17    Covered Conditions ................................................................................................................. 8
1.18    Covered Services ...................................................................................................................... 8
1.19    Credentialed Chiropractic Facility ....................................................................................... 8
1.20    Credentialing/Recredentialing Program ............................................................................. 8
1.21    Days ........................................................................................................................................... 8
1.22    Effective Date ........................................................................................................................... 8
1.23    Emergency Services ................................................................................................................. 8
1.24    External Review Organization (ERO) ................................................................................... 8
1.25    Fee Schedule Amounts ............................................................................................................ 8
1.26    Group Practice ......................................................................................................................... 8
1.27    Medically Necessary Services ................................................................................................ 8
1.28    Medical Records ...................................................................................................................... 9
1.29    Medical Records Evaluation Program .................................................................................. 9
1.30    Member ...................................................................................................................................... 9
1.31    Member Benefit Plan ............................................................................................................. 10
1.32    Member Eligibility/Benefits ................................................................................................. 10
1.33    Member Payments .................................................................................................................. 10
1.34    Non-Covered Services ........................................................................................................... 10
1.35    Non-Credentialed Chiropractic Facility ............................................................................ 10
1.36    Operations Manual ................................................................................................................ 10
1.37    Parties ...................................................................................................................................... 10
1.38    Payor ........................................................................................................................................ 10
1.39    Payor Summary ...................................................................................................................... 10
1.40    Payor Summary Participation .............................................................................................. 11
1.41    Professional Corporation ...................................................................................................... 11
1.42    Provider Quality and Credentialing Committee ............................................................... 11
1.43    Supports and Appliances ...................................................................................................... 11
1.44    Treatment Form Waiver ........................................................................................................ 11
1.45    Urgent Services ...................................................................................................................... 11

**ARTICLE 2    RESPONSIBILITIES OF THE PARTIES** .......................................................... 11
2.01    Mutual Objectives .................................................................................................................. 11
2.02    ASH Networks' Responsibilities .......................................................................................... 12
2.03    Contracted Chiropractor's Responsibilities ...................................................................... 17

**ARTICLE 3    RELATIONSHIP OF PARTIES** .......................................................................... 23
3.01    Payor Summaries ................................................................................................................... 23
3.02    Excluded Payors ..................................................................................................................... 24
3.03    Payor Additions that Require Amendment ........................................................................ 24
3.04    Distribution of Revised Agreement, Attachments, Amendments, and Operations Manual ...... 25
3.05    No New Patients ..................................................................................................................... 26
3.06    Furnish Operations Manual ................................................................................................. 26
3.07    Use of Provider Information by ASH Networks and Payors ............................................ 26

| | | |
|---|---|---|
| 3.08 | Deletion of Contracted Chiropractor from Network Directories | 27 |
| 3.09 | No Representation or Guarantee of Member Enrollment | 27 |
| 3.10 | Immediate Notification by Contracted Chiropractor of Certain Occurrences | 27 |
| 3.11 | Information | 28 |
| 3.12 | Notification of Change in Any Information in Contracted Chiropractor Information Sheet | 28 |
| 3.13 | Requirements for Professional Corporation or Group Practice | 28 |
| 3.14 | Non-Interference with Property and Contract Rights | 29 |

**ARTICLE 4 TERM** ........................................................................................................ **29**

**ARTICLE 5 TERMINATION** ......................................................................................... **29**
| | | |
|---|---|---|
| 5.01 | Contracted Chiropractor Termination of this Agreement With or Without Cause With Notice | 29 |
| 5.02 | ASH Networks Termination of this Agreement for Cause with Thirty (30) Days Notice | 30 |
| 5.03 | ASH Networks Immediate Termination of This Agreement for Cause with Notice | 30 |
| 5.04 | Contracted Chiropractor Appeal of Termination | 31 |
| 5.05 | Arbitration | 32 |
| 5.06 | Term Effective Date | 32 |
| 5.07 | Effect of Termination | 32 |
| 5.08 | Survival of Certain Contractual Provisions after Termination | 32 |
| 5.09 | Contracted Chiropractor Responsibilities after Termination | 32 |
| 5.10 | Contracted Chiropractor Responsibilities During Termination Notice Period | 32 |

**ARTICLE 6 INSURANCE** ............................................................................................. **33**
| | | |
|---|---|---|
| 6.01 | Professional Liability Insurance | 33 |
| 6.02 | Comprehensive General Liability Insurance | 33 |
| 6.03 | Notification of Change in Insurance | 33 |
| 6.04 | Other Insurance | 33 |

**ARTICLE 7 HOLD HARMLESS** .................................................................................. **33**

**ARTICLE 8 confidentiality, RECORDS AND DATA COLLECTION** ........................ **34**
| | | |
|---|---|---|
| 8.01 | Maintenance of Records | 34 |
| 8.02 | Confidentiality of Member Information | 34 |
| 8.03 | Access to Records | 34 |
| 8.04 | Ownership of Medical Records Data and Intellectual Property Rights | 34 |

**ARTICLE 9 PROPRIETARY INFORMATION** ............................................................ **34**

**ARTICLE 10 ADVERTISEMENT OF RELATIONSHIP WITH ASH NETWORKS AND PAYORS** ............ **35**
| | | |
|---|---|---|
| 10.01 | Advertisement by Contracted Chiropractor | 35 |
| 10.02 | Solicitation by Contracted Chiropractor of Members and/or Payors | 35 |

**ARTICLE 11 ASSIGNMENT AND CHANGE OF OWNERSHIP** ................................ **35**

**ARTICLE 12 FORCE MAJEURE** ................................................................................. **36**

**ARTICLE 13 INDEPENDENT CONTRACTORS** ......................................................... **36**

**ARTICLE 14 GOVERNING LAW** ................................................................................ **36**

**ARTICLE 15 SEVERABILITY** ..................................................................................... **36**

**ARTICLE 16 DISPUTES BETWEEN CONTRACTED CHIROPRACTOR AND MEMBERS** ............ **36**

**ARTICLE 17 DISPUTES BETWEEN CONTRACTED CHIROPRACTOR AND ASH NETWORKS** ........... **37**
| | | |
|---|---|---|
| 17.01 | Dispute Resolution and Binding Arbitration | 37 |

**ARTICLE 18 DISPUTES BETWEEN CONTRACTED CHIROPRACTOR AND PAYOR** ............... **37**
| | | |
|---|---|---|
| 18.01 | Dispute Resolution and Arbitration Involving Payors | 37 |

**ARTICLE 19 NOTICES** ................................................................................................. **38**

**ARTICLE 20 ATTORNEYS' FEES; COSTS** ................................................................ **39**

**ARTICLE 21 CAPTIONS** .............................................................................................. **39**

**ARTICLE 22 NO THIRD PARTY BENEFICIARIES** .................................................. **39**

**ARTICLE 23 AMENDMENTS** ...................................................................................... **39**

ASH CONFIDENTIAL OR Disclosed
Not to be reproduced or
without written permission

**ARTICLE 24    INSOLVENCY OF ASH NETWORKS; PROTECTION OF INTERESTS OF CONTRACTED CHIROPRACTOR, MEMBERS, AND PAYORS** ................................................................. 39

**ARTICLE 25    ENTIRE AGREEMENT** ........................................................................... 40

**ARTICLE 26    EFFECTIVE DATE OF AGREEMENT** ............................................... 41

*ATTACHMENT A - CONTRACTED CHIROPRACTOR INFORMATION SHEET* ................... 43

*ATTACHMENT B - ASH NETWORKS CONTACT PERSON REGARDING DISPUTES* ........... 49

*ATTACHMENT E - MEDICARE ADVANTAGE (MA)* ............................................................ 50

*ATTACHMENT F - CLINICAL MANAGEMENT PROGRAMS* ............................................... 54
1.0    Credentialing/Recredentialing Program ........................................................................ 54
2.0    Clinical Services Management Program ........................................................................ 55
3.0    Clinical Performance Management Program .................................................................. 58
4.0    Medical Records Evaluation Program ........................................................................... 60

*ATTACHMENT G - CLAIMS SUBMISSION AND PAYMENT* .............................................. 61
1.0    Claims Submission ......................................................................................................... 61
2.0    Claims Payment ............................................................................................................. 61
3.0    Coordination of Benefits ............................................................................................... 63
4.0    Third Party Liability ...................................................................................................... 63
5.0    Follow-Up on Claims ..................................................................................................... 64
6.0    Appeal of ASH Networks or Payor Non Payment of Claim ......................................... 64
7.0    Improper Collection of Charges .................................................................................... 64

*ATTACHMENT J - ELECTRONIC TRANSACTION PROCESSING (ETP) PROGRAM* ......... 66
1.0    ETP Program Transactions ............................................................................................ 66
2.0    ETP Usage Rate ............................................................................................................. 67
3.0    Claims Payment Amount ............................................................................................... 67
4.0    ETP Program Incentive Payment Calculation ............................................................... 67
5.0    ETP Program Administrative Processing Fee ................................................................ 68
6.0    Direct Deposit Program ................................................................................................. 69
7.0    Direct Deposit Bonus Payment ..................................................................................... 69
8.0    Paper Check (non-Direct Deposit) Administrative Processing Fee ............................... 69

*ATTACHMENT K - TREATMENT FORM WAIVER PROGRAM* ........................................... 70

**TIER 1** ........................................................................................................................... 71

**TIER 2** ........................................................................................................................... 72

**TIER 3** ........................................................................................................................... 74

**TIER 4** ........................................................................................................................... 76

**TIER 5** ........................................................................................................................... 78

**TIER 6** ........................................................................................................................... 80

**ATTACHMENT N –REPRESENTATIONS AND WARRANTIES OF APPLICANT OR CONTRACTED CHIROPRACTOR** ....................................................... 81

CONFIDENTIAL
Not To Be Reproduced or Disclosed
Without Written Permission

# CHIROPRACTIC PROVIDER SERVICES AGREEMENT

THIS CHIROPRACTIC PROVIDER SERVICES AGREEMENT, ("this Agreement") is entered into between American Specialty Health Networks, Inc., a California corporation ("ASH Networks"), and the undersigned chiropractor or Professional Corporation or Group Practice, whose name and other identifying information appear on the signature page herein ("Contracted Chiropractor"). This Agreement will not become effective until it has been signed by both Chiropractor and ASH Networks. After chiropractor and ASH Networks have both signed this Agreement, chiropractor will automatically become a Contracted Chiropractor as of the Effective Date specified in Article 26 of this Agreement.

## RECITALS

WHEREAS, insurers, health care service plans, trust funds, employer groups and other third party payors or payors including, but not limited to, governmental agencies (collectively referred to as "Payors" and further defined below) wish to enter into arrangements for the provision of Chiropractic Services to their enrollees, employees or beneficiaries (collectively referred to as "Members" and further defined below);

WHEREAS, ASH Networks wishes to arrange for and facilitate the provision of Chiropractic Services to Members;

WHEREAS, chiropractor is duly-licensed in the state in which chiropractor provides services within the scope of chiropractic professional licensure and wishes to be credentialed and contracted by ASH Networks;

WHEREAS, where applicable, Contracted Chiropractor and ASH Networks intend for this Agreement (including the attachments and the Operations Manual) to entirely replace and supersede any previous Chiropractic Provider Services Agreement between ASH Networks and Contracted Chiropractor; and,

WHEREAS, chiropractor and ASH Networks desire to enter into this Agreement.

NOW, THEREFORE, ASH Networks and chiropractor agree as follows:

## ARTICLE 1    DEFINITIONS.

For purposes of this Agreement and in addition to the terms elsewhere defined herein, the following terms shall have the meanings indicated:

1.01    **Administrative Program**. The Administrative Program is the set of policies, processes, procedures and standards established, determined, and utilized by ASH Networks to evaluate administrative decisions including, but not limited to, non-reimbursement for Covered Services based on late or untimely submission of Clinical Treatment Forms, Reopen/Modification forms, Medical Records or claims to ASH Networks or the appropriate Payor by Contracted Chiropractors. The Administrative Program may include, for Members covered under a Payor Summary, policies, processes, and procedures established by ASH Networks at the request of that Payor. ASH Networks may amend any aspect of its Administrative Program in accordance with ARTICLE 23 of this Agreement.

1.02    **Affinity Program**. (commonly referred to by some Payors, regulators, accreditation agencies, or others as "Discount Programs"). ASH Networks' Affinity Program consists of services, rendered at a discounted or non-discounted rate, other than those defined as Covered Services under this Agreement and those defined by the applicable Payor Summaries, which Contracted Chiropractor is duly licensed and qualified to perform within the scope of Contracted Chiropractor's practice. Contracted Chiropractor shall refer to the applicable Payor Summary for Affinity Program discount rates and other guidelines. The Affinity Program does not require Medical Necessity verification as described in the Clinical Services Management Program.

1.03    **Affinity Services**. Affinity Services are services provided to Members enrolled in an Affinity Program and pursuant to this Agreement that Contracted Chiropractor is licensed and qualified to provide and for which Contracted Chiropractor is paid directly by Member.

1.04    **Agreement**. This Chiropractic Provider Services Agreement between Contracted Chiropractor and ASH Networks includes this Agreement, the Operations Manual, the attachments listed below, and any amendments to such documents.

Attachment A:    Contracted Chiropractor or Contracted Provider Information Sheet

Attachment B:    ASH Networks Contact Person Regarding Disputes

ASH CONFIDENTIAL Not to be Reproduced Or Disclosed Without Written Permission

Case 3:14-cv-02022   Document 30-7   Filed 12/23/14   Page 6 of 83 PageID #: 333

| Attachment C: | Excluded Payors, if applicable. |
|---|---|
| Attachment D: | Eligible Payors and Payor Summaries |
| Attachment E: | Medicare Advantage (MA) Downstream Entity Contract Attachment |
| Attachment F: | Clinical Management Programs |
| Attachment G: | Claims Submission and Payment |
| Attachment H: | [RESERVED] |
| Attachment I: | State Specific ASH Networks and/or Regulatory Requirements |
| Attachment J: | Electronic Transaction Processing (ETP) Program |
| Attachment K: | Treatment Form Waiver Program |
| Attachment L: | [RESERVED] |
| Attachment M: | [RESERVED] |
| Attachment N: | Representations and Warranties of Applicant or Contracted Chiropractor |

The attachments listed above are hereby incorporated by reference herein. Any reference to the "Agreement" shall include the ASH Networks Operations Manual ("Operations Manual") and each of the attachments listed above, as amended, unless otherwise specified.

1.05 **ASHLink**. ASHLink is a proprietary software system developed and utilized by ASH Networks to support the secure and confidential electronic exchange of data and dissemination of information with Contracted Chiropractors via the Internet. ASHLink provides Contracted Chiropractors and their office staff the ability to submit and verify the status of Clinical Treatment Forms and claims and to verify Member benefits and eligibility. Additionally, ASHLink provides the electronic distribution of ASH Networks materials (Operations Manuals, Clinical Guidelines, newsletters, forms, etc.) that a Contracted Chiropractor or their office staff may utilize to access information relevant to this Agreement.

1.06 **Chiropractic Services**. Chiropractic Services are all services rendered by a Contracted Chiropractor for treatment of ASH Networks Members who are enrolled in a Member Benefit Plan and/or Affinity Program.

1.07 **Claims Payment Amount**. The Claims Payment Amount is the actual amount paid directly and solely by ASH Networks to Contracted Chiropractor and shall be calculated by first deducting from billed charges submitted on a claim any amounts including but not limited to Non-Covered Services, duplicate billed amounts for services, amounts exceeding benefit maximums or limitations of Member Benefit Plans offered to Members by Payors and then applying to Covered Services, the Fee Schedule Amount, deducting Member Payment Amounts and amounts determined to be ineligible for payment due to Coordination of Benefits. The Claims Payment Amount shall also not include any amount due or paid directly to Contracted Chiropractor by any Payor or Member. The Claims Payment Amount shall be further identified as the "Amount Paid" on the Remittance Advice provided to Contracted Chiropractor by ASH Networks.

1.08 **Clean Claim**. A Clean Claim is a claim that has no defect or impropriety, no lack of required substantiating documentation meeting all relevant national standards, no particular circumstances requiring special treatment that prevents timely payment, and that conforms to the clean claim requirements for equivalent claims processed under a Medicare Advantage Program.

1.09 **Clinical Performance Management Program**. The Clinical Performance Management Program (commonly referred to by some Payors, regulators, accreditation agencies, or others as a quality management program) is those policies, processes, procedures and clinical standards established and administered by ASH Networks which have been implemented to:

|   | (a) | Evaluate, manage and improve the delivery of Chiropractic Services by a Contracted Chiropractor; and |
|---|---|---|
|   | (b) | Evaluate a Contracted Chiropractor's compliance with the ASH Networks standards of professional care and professionally recognized standards of practice related to services provided |

under the scope of chiropractic professional licensure and acceptable to ASH Networks and its Corporate Quality Oversight Committee.

ASH Networks may amend any aspect of the Clinical Performance Management Program in accordance with ARTICLE 23 of this Agreement.

1.10 **Clinical Provider Review Committee**. The ASH Networks Clinical Provider Review Committee is an ASH Networks decision-making Committee comprised of appointed Contracted Providers and ASH Networks employees who are credentialed clinicians. This Committee reviews member and provider clinical appeals, appeals related to certain terminations, credentialing denial appeals and implements sanctions and corrective actions. The committee reviews and approves clinical policies, clinical practice guidelines, and the results of the Clinical Services Management Program and the Clinical Performance Management Program. The Clinical Provider Review Committee reports to the Board of Directors.

1.11 **Clinical Services Management Program**. The Clinical Services Management Program (commonly referred to by some Payors, regulators, accreditation agencies, or others as a utilization management or utilization review program) is the set of policies, processes, procedures and clinical standards established, determined, and utilized by ASH Networks under this Agreement to evaluate whether Covered Services provided to Members are Medically Necessary Services, appropriate and eligible for reimbursement. The Clinical Services Management Program may include, for Members covered under a Payor Summary for a specific Payor, procedures and standards established by ASH Networks at the request of that Payor. ASH Networks may amend any aspect of the Clinical Services Management Program in accordance with ARTICLE 23 of this Agreement.

1.12 **Contracted Ancillary Provider**. A Contracted Ancillary Provider is a provider which has contracted with ASH Networks to provide clinical laboratory services, radiological services (plain film x-rays), radiological consultations or other Covered Services under a Member Benefit Plan and is licensed to provide such services. If Contracted Chiropractor does not provide such services, Contracted Chiropractor must refer Members to a Contracted Ancillary Provider pursuant to the provisions of this Agreement and the Operations Manual.

1.13 **Contracted Chiropractor**. A Contracted Chiropractor is a chiropractor, Professional Corporation or Group Practice comprised of one or more chiropractors that provide services under a chiropractic professional license in the applicable state, and has been both credentialed by and contracted with ASH Networks. Once ASH Networks and a chiropractor have both signed this Agreement, a chiropractor will be activated in ASH Networks' network as a Contracted Chiropractor as of the Effective Date. Chiropractors who are employees, independent contractors or owners of or partners in Professional Corporations or Group Practices who have not been both credentialed by and contracted with ASH Networks are not Contracted Chiropractors.

1.14 **Contracted Provider**. A Contracted Provider is a provider of health care services, a Group Practice, or a Professional Corporation which or who has been both credentialed by and contracted with ASH Networks for the purpose of providing professional services within the scope of the Contracted Provider's professional licensure. Additionally, Contracted Provider may employ or contract with one or more other Contracted Providers or Contracted Chiropractors (i) who legally may be employed by or under contract with the Contracted Provider, and (ii) for the purpose of providing professional services within the scope of professional licensure of the employing/contracting Contracted Provider. A provider of health care services who is an employee, independent contractor, or owner of or a partner in a Group Practice or a Professional Corporation and who has not been both credentialed by and contracted with ASH Networks is not a Contracted Provider.

1.15 **Corporate Quality Oversight Committee**. The ASH Networks Corporate Quality Oversight Committee is an ASH Networks decision-making committee that reports to the Board of Directors which is comprised of ASH Networks officers, ASH Networks employees, ASH Networks employees who are credentialed clinicians, and appointed Contracted Providers. This committee's responsibility is to oversee the Corporate Quality Improvement Workplan and Annual Evaluation. This committee's functions include, but are not limited to, the review and approval of administrative and clinical policies, guidelines, programs and documents developed and approved by various ASH Networks committees to ensure consistent implementation and alignment of corporate quality goals. The Corporate Quality Oversight Committee reviews quarterly and annual reports of all administrative and clinical committees and recommends actions and improvements to the Board of Directors for approval and adoption.

1.16 **Corrective Action Plan**. A Corrective Action Plan is a plan developed by ASH Networks in response to an administrative or clinical issue that is deemed unacceptable by ASH Networks in accordance with this Agreement, the Operations Manual, the Clinical Services Management Program, the Clinical Performance Management Program, the Administrative Program, a Member Benefit Plan, and/or professionally recognized standards of practice. The Corrective Action Plan describes the areas of performance improvement, compliance, and/or modification that must be made by Contracted Chiropractor and the

associated timelines. A Corrective Action Plan may also include monitoring, remedial actions, educational requirements and sanctions.

1.17    **Covered Conditions**. Covered Conditions are those defined conditions/diagnoses identified as covered in the applicable Payor Summaries.

1.18    **Covered Services**. Covered Services are Medically Necessary Services for Covered Conditions arranged under a Member Benefit Plan and, pursuant to this Agreement, which Contracted Chiropractor is licensed and qualified to provide and for which Contracted Chiropractor accepts payment from ASH Networks or Payor as payment in full, except for applicable Member Payments. Affinity Services are not considered Covered Services.

1.19    **Credentialed Chiropractic Facility**. Credentialed Chiropractic Facility is a fixed office location (one that is not mobile) listed in Attachment A which has been approved by ASH Networks for use by Contracted Chiropractor to render Chiropractic Services

1.20    **Credentialing/Recredentialing Program**. The Credentialing/Recredentialing Program is the set of policies, processes, procedures and clinical standards established, determined and utilized by ASH Networks to evaluate and determine whether Contracted Chiropractor has satisfied all credentialing and recredentialing requirements adopted by ASH Networks and to approve Contracted Chiropractors participation in ASH Networks and/or Payor provider networks.

1.21    **Days**. Unless otherwise specified, all references to "day(s)" in this Agreement shall refer to calendar days, and not business days.

1.22    **Effective Date**. The Effective Date is the date this Agreement becomes effective, as specified in ARTICLE 1. The Effective Date is determined by ASH Networks upon completion of all necessary pre-contractual requirements, including but not limited to credentialing primary verification, and contracting. The Effective Date may be a date later than the date this Agreement is signed by both Parties. Unless otherwise specified herein, ASH Networks will provide contracting Chiropractor with notice of the Effective Date after the Agreement becomes fully executed.

1.23    **Emergency Services**. Emergency Services consist of Covered Services that are Chiropractic Services provided to manage an injury or condition with a sudden and unexpected onset which manifests itself by acute symptoms of sufficient severity, including severe pain, such that a prudent layperson who possesses an average knowledge of health or medicine, could reasonably expect that the absence of immediate clinical attention to result in (1) placing the health of the individual (or with respect to a pregnant woman, the health of the woman or her unborn child) in serious jeopardy; (2) serious impairment to bodily functions; (3) serious dysfunction of any bodily organ or part; or (4) decreasing the likelihood of maximum recovery.

1.24    **External Review Organization (ERO)**. External Review Organization (ERO) shall mean an organization not affiliated with ASH Networks, who is fully accredited by URAC, who shall review and make a final determination regarding disputes that are not resolved after the internal appeal process described in Attachments F and G, is completed.

1.25    **Fee Schedule Amounts**. Fee Schedule Amounts are those monies payable to Contracted Chiropractor for Covered Services rendered to a Member pursuant to and prescribed in a Payor Summary listed in Attachment D to this Agreement. Fee Schedule Amounts may also be established in new Payor Summaries issued by ASH Networks to Contracted Chiropractor in accordance with ARTICLE 23 of this Agreement. ASH Networks may change Fee Schedule Amounts in accordance with ARTICLE 23. Any reduction or adverse change in Fee Schedule Amounts will not occur more than once per calendar year. ASH Networks will notify Contracted Chiropractor of any such change at least ninety (90) days prior to its effective date in accordance with the provisions in ARTICLE 23. Member Payments are considered part of the Fee Schedule Amounts.

1.26    **Group Practice**. A Group Practice is either (i) a partnership of two or more providers of health care services formed for the purpose of providing professional services within the scope of the professional licensure of the partners or the providers of health care services who are and legally may be employed by or under contract with the partners or the partnership or (ii) the sole proprietorship of an individual provider of health care services who employs or contracts with one or more other providers of health care services for the purpose of providing professional services within the scope of the professional licensure of the individual provider or the providers of health care services who are and legally may be employed by or under contract with the individual provider.

1.27    **Medically Necessary Services**. "Medically Necessary" or "Medical Necessity" shall mean health care services that a Healthcare Provider, exercising Prudent Clinical Judgment, would provide to a patient for the purpose of evaluating, diagnosing, or treating an illness, injury, disease or its symptoms, and that are (a) in accordance with Generally Accepted Standards of Medical Practice; (b) clinically appropriate in terms of type, frequency, extent, site, and duration; and Considered Effective for the patient's illness, injury, or disease; and (c) not primarily for the Convenience of the Patient or

Confidential or Disclosed — Do Not Produce Without Express Permission

Healthcare Provider, and not more costly than an alternative service or sequence of services at least as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of that patient's illness, injury, or disease.

For the purposes of the definition of "Medically Necessary" or "Medical Necessity" above:

"Prudent Clinical Judgment" are those (a) clinical decisions made on behalf of a patient by a provider in a manner which result in the rendering of necessary, safe, effective, appropriate clinical services; (b) clinical decisions that result in the appropriate clinical intervention considering the severity and complexity of symptoms; (c) decisions that result in the rendering of clinical interventions consistent with the diagnosis and are appropriate for the member's response to the clinical intervention; (d) decisions rendered in accordance with the provider's professional scope of license or scope of practice regulations and statutes in the state where the provider practices.

"Generally Accepted Standards of Medical Practice" means standards that are based on Credible Scientific Evidence published in peer-reviewed Medical Literature generally recognized by the relevant medical community, Physician and Healthcare Provider Specialty Society recommendations, the views of Physicians and Healthcare Providers practicing in relevant clinical areas, and any other relevant factors.

"Credible Scientific Evidence" is clinically relevant scientific information used to inform the diagnosis or treatment of a patient that; meets industry standard research quality criteria, is adopted as credible by an ASH Networks clinical peer review committee; and has been published in an acceptable peer-reviewed clinical science resource.

"Medical Literature" means clinically relevant scientific information published in an acceptable peer-reviewed clinical science resource.

Clinical services that are "Considered Effective" are those diagnostic procedures, services, protocols, or procedures that are verified by ASH Networks as being rendered for the purpose of reaching a defined and appropriate functional outcome or Maximum Therapeutic Benefit; and rendered in a manner that appropriately assesses and manages the member's response to the clinical intervention.

"Convenience of the Patient or Healthcare Provider" means considered to be an elective service. Examples of elective/convenience services include: (a) preventive maintenance services; (b) wellness services; (c) services not necessary to return the patient to pre-illness/pre-injury functional status and level of activity; (d) services provided after the patient has reached Maximum Therapeutic Benefit.

"Maximum Therapeutic Benefit" is the patient's health status when returned to pre-clinical/pre-illness daily functional activity and/or the patient's health status when the patient no longer demonstrates progressive improvement toward return to pre-clinical/pre-illness daily functional activity.

A "Healthcare Provider Specialty Society" is a society of specialty providers that represents a significant number of practicing practitioners or other academic or clinical research institutions for that specialty.

1.28    **Medical Records**. Medical Records are all documents relating to Members that are created or maintained by the Contracted Chiropractor and that include clinical findings, diagnostic reports, treatment plans, clinical outcomes, daily progress (treatment) notes, SOAP notes and/or documented interactions with Members. These records shall accurately represent the Member's interaction with the Contracted Chiropractor and the Contracted Chiropractor's office staff. Medical records shall meet professionally recognized standards of practice and be maintained in accordance with state and federal privacy regulations, including the Health Insurance Portability and Accountability Act (HIPAA) of 1996 as well as the ASH Networks' requirements included in the Agreement.

1.29    **Medical Records Evaluation Program**. The Medical Records Evaluation Program is a component of the ASH Networks Clinical Services Management Program and Clinical Performance Management Program which may require a Contracted Chiropractor to submit a Member's Medical Records for review by ASH Networks upon written request by ASH Networks.

1.30    **Member**. A Member is an enrollee, employee or beneficiary of a Payor who is enrolled in a Member Benefit Plan and meets all the eligibility requirements for participation in such plan or program, or an individual who is eligible to participate in an Affinity Program. Members include all eligible and enrolled family members or dependents of the individual named by a Payor for coverage under the Member Benefit Plan or Affinity Program. Members may also include Medicare beneficiaries eligible to receive benefits under a Medicare Advantage benefit plan and, in such cases, Contracted Chiropractor agrees to be bound by the requirements set forth in Attachment E to this Agreement.

Not To Be Reproduced Or Disclosed Without Written Permission CONFIDENTIAL

1.31   **Member Benefit Plan**. A Member Benefit Plan is a group insurance policy, health care service plan contract or similar arrangement pursuant to which a Payor pays for, reimburses the cost of or arranges for the provision of Covered Services to Members or pays for or reimburses any of the Fee Schedule Amounts or costs of those Covered Services. The term Member Benefit Plan shall encompass all documents provided to Members by Payor that describe benefits, limitations and exclusions. Such documents shall include, but are not limited to, enrollment applications, evidences of coverage, summary plan descriptions, group services agreements, and certificates of coverage issued by Payor. The Member Benefit Plan may require use of a Contracted Chiropractor and administration of the Member Benefit Plan by ASH Networks. Member Benefits Plans will be represented by the applicable Payor Summaries included in Attachment D.

1.32   **Member Eligibility/Benefits**. Member Eligibility/Benefits is information maintained by ASH Networks and/or Payor pertaining to each Member's eligibility, including initial date of eligibility and last date of eligibility and benefits including, but not limited to Member Payments such as co-payments, deductibles and/or co-insurance, annual benefit limits, such as 20, 30, or 40 office visits, and remaining annual benefits. Payor Summaries provide only general guidelines on Member eligibility and benefits. Specific eligibility and benefits information for each Member is available only through ASH Networks and/or Payor. The applicable Payor Summary shall direct the Contracted Chiropractor to contact either ASH Networks or Payor for the specific eligibility and benefits information for each Member.

1.33   **Member Payments**. Member Payments are charges that are the direct financial responsibility of the Member and are payable directly to the Contracted Chiropractor for the provision of certain Covered Services as set forth in the Member Benefit Plan. Member Payments may be collected by Contracted Chiropractor at the time services are rendered or subsequently billed to the Member. All Member Payments are calculated based on Contracted Chiropractor's contracted fees with ASH Networks. Member Payments may be a percentage of such fees (e.g., coinsurance) or a pre-determined amount (e.g., deductible or copayment). The Member Payments are a part of the Fee Schedule Amounts described in the Payor Summaries set forth in Attachment D to this Agreement.

1.34   **Non-Covered Services**. Non-Covered Services are all services other than those defined as Covered Services. Non-Covered Services are not subject to the Payor Summaries and Fee Schedule Amounts listed in Attachments D and E to this Agreement. Contracted Chiropractor shall notify Member in advance, and in writing, of the Member's financial obligations with regard to payment for Non-Covered Services. Affinity Services are not considered Non-Covered Services.

1.35   **Non-Credentialed Chiropractic Facility**. Non-Credentialed Chiropractic Facility is an office location which has not been approved by ASH Networks for the provision of Covered Services under a Member Benefit Plan or Affinity Services under an Affinity Program for Members by Contracted Chiropractor. An office location is a Non-Credentialed Chiropractic Facility unless it is listed in Attachment A to this Agreement and has been approved by ASH Networks for use by Contracted Chiropractor as a Credentialed Chiropractic Facility.

1.36   **Operations Manual**. The Operations Manual sets forth ASH Networks' policies, processes, standards and procedures regarding Contracted Chiropractor's participation in Member Benefit Plans and Affinity Programs. The Operations Manual, and any attachments and amendments thereto are provided as administrative support to this Agreement. The Operations Manual may be amended, revised, supplemented or replaced by ASH Networks in accordance with ARTICLE 23 of this Agreement. ASH Networks' Operations Manual is also available on ASHLink at www.ashlink.com.

1.37   **Parties**. Parties are the individuals or entities that execute this Agreement.

1.38   **Payor**. A Payor is a health care service plan, health maintenance organization, health insurer, employer group, trust fund, third party administrator, provider network, governmental agency, or other person or entity who contracts with ASH Networks or one of its affiliates to arrange for the provision of Covered Services or Affinity Services to Members, or to administer claims payment on behalf of the Payor.

1.39   **Payor Summary**. A Payor Summary describes the Covered Services, Member Payments, Fee Schedule Amounts, eligible product lines, and the relevant terms and conditions for rendering Chiropractic Services under a Member Benefit Plan or Affinity Services under an Affinity Program. A Payor Summary may apply to one or multiple Payors. The Payor Summaries that are effective upon the Effective Date of this Agreement are included in this Agreement as Attachment D. Payors determine the scope of their respective coverage plans and establish the terms and conditions that are set forth in each Payor Summary. Payor Summaries include Payor Specific Payor Summaries and may include Generic Payor Summaries. Generic Payor Summaries are Payor Summaries that contain information typically found in a Payor Specific Payor Summary, like Covered Services, Fee Schedule Amounts, eligible product lines, etc., but Generic Payor Summaries do not state that they apply to a specific Payor's Member Benefit Plan. Payor Specific Payor Summaries are Payor Summaries that contain information that is specific to one Payor. ASH Networks may issue new Payor Summaries or revise any Payor Summaries by amending Attachment D in accordance with ARTICLE 23.

1.40 **Payor Summary Participation**. Except as otherwise indicated in Section 3.01.1, participation in any Payor Summary requires Contracted Chiropractor to participate in all other Payor Summaries offered by that Payor and/or its affiliates under this Agreement.

1.41 **Professional Corporation**. A Professional Corporation is a corporation incorporated for the purpose of providing professional services within the scope of the professional licensure of the providers of health care services who are and who legally may be shareholders, directors, officers, and/or professional employees of the professional corporation.

1.42 **Provider Quality and Credentialing Committee**. The ASH Networks Provider Quality and Credentialing Committee is an ASH Networks decision-making committee comprised of appointed Contracted Providers, ASH Networks employees, and credentialed clinicians who are either ASH Networks employees or licensed consultants. The primary responsibility of this committee is to support the Credentialing/Recredentialing Program, the Clinical Performance Management Program and the Clinical Services Management Program. This committee's functions include the review of provider credentials for participation in the ASH Networks network, review of credentialing criteria and implementation of corrective action plans. Other functions include, but are not limited to, peer review of alerts and corrective action plans. The Provider Quality and Credentialing Committee reviews and approves clinical policies related to credentialing. The Provider Quality and Credentialing Committee reports to the Board of Directors.

1.43 **Supports and Appliances**. These are support-type devices prescribed by a Contracted Chiropractor. These shall be restricted to the following items to the exclusion of all others: elbow supports, back supports (thoracic), cervical collars, cervical pillows, heel lifts, hot or cold packs, lumbar braces and supports, lumbar cushions, orthotics, wrist supports, rib belts, home traction units (cervical or lumbar), ankle braces, knee braces, rib supports, and wrist braces. In order for Supports and Appliances to be covered, the Member must be receiving Covered Services from a Contracted Chiropractor for a Neuromusculoskeletal Disorder and have the Support or Appliance prescribed for that condition.

1.44 **Treatment Form Waiver**. A Treatment Form Waiver is a specified number and type of Chiropractic Services for which the submission of a Clinical Treatment Form for clinical evaluation by ASH Networks is not required in order for such services to be eligible for reimbursement. The specific number of visits and type of Chiropractic Services that constitute the Treatment Form Waiver for each individual Contracted Chiropractor shall be determined in accordance with the Treatment Form Waiver Program set forth in Attachment K to this Agreement; any Payor-specific Treatment Form Waiver exception will be set forth in the applicable Payor Summary attached to this Agreement. All Chiropractic Services, including those that fall within the Treatment Form Waiver, shall be subject to the Medical Records Evaluation Program.

1.45 **Urgent Services**. Urgent Services are Covered Services that are Chiropractic Services necessary to prevent serious deterioration of the health of a Member, resulting from an unforeseen illness, injury, or complication of an existing condition, including pregnancy, for which treatment cannot be delayed until the Member returns to the service area.

## ARTICLE 2      RESPONSIBILITIES OF THE PARTIES.

2.01 **Mutual Objectives**.

ASH Networks and Contracted Chiropractors are interested in promoting the value of chiropractic and complementary health care services and their inclusion in third party reimbursement. ASH Networks strives to demonstrate to Payors the value of offering such programs to Members, with the aim of increasing the use of Chiropractic Services provided by Contracted Chiropractors. A Payor's recognition of such value depends on a combination of factors which include clinical effectiveness, customer service, member satisfaction, cost, and other measures. Therefore, it is the mutual objective of ASH Networks and Contracted Chiropractor to work together to promote and deliver Member Benefit Plans and Affinity Programs, which will build greater acceptance of chiropractic and complementary health care in the health care market.

Payors have contracted with ASH Networks to provide administrative services and a network of Contracted Chiropractors to meet the health care and customer service needs of Members and to do so in a way that meets high standards of performance and produces positive outcomes. Such standards of performance and desired outcomes require that services be delivered in a clinically effective and efficient manner, and that their cost be predictable in a competitive health care market. For this reason, it is important that ASH Networks and Contracted Chiropractors each fulfill their respective obligations to Members in a manner that promotes high levels of Member and Payor satisfaction.

Additionally, Payors, regulatory agencies, accreditation organizations and other oversight entities establish specific requirements for ASH Networks and Contracted Chiropractors in connection with the delivery of health care services, benefits administration, and customer service to Members. It is important for ASH Networks and Contracted Chiropractor each to understand and comply with such requirements.

In order to promote the mutual objectives described above, the responsibilities of ASH Networks and Contracted Chiropractor are as follows:

2.02     **ASH Networks' Responsibilities**.

ASH Networks and/or its affiliates shall dedicate resources to the ongoing development of a broad array of products and services in an effort to promote the value and efficacy of chiropractic and complementary health care services and their integration with allopathic medicine in the health care industry and third party reimbursement including, but not limited to, government, self-funded, and insured benefit plans.

ASH Networks has a responsibility to meet the high standards of performance established by Payors, regulatory agencies, accreditation organizations and other oversight entities relating to ASH Networks' responsibilities under this Agreement. Such standards are intended to enhance the delivery of health care services to Members and the administration of benefits and customer service for both the Payor and the Member, and promote positive health outcomes and stabilization of health care costs for Payors and Members. ASH Networks' responsibilities are categorized into the following areas:

- Promotion of Chiropractic Services and Complementary Health Care Benefits;

- Compliance with Regulatory and Accreditation Requirements;

- Operation of Clinical Management Programs;

- Provision of Administrative Services;

- Network Development; and

- Confidentiality of Records

ASH Networks and/or its affiliates shall in all cases determine the scope and level of activity appropriate for the fulfillment of the following responsibilities:

**Promotion of Chiropractic Services and Complementary Health Care Benefits**

2.02.1   Sales and Marketing. ASH Networks and/or its affiliates shall engage in sales and marketing efforts with the goal of promoting the increased availability, use and integration of chiropractic services and complementary health care benefits to existing and prospective Payors utilizing the ASH Networks network of Contracted Chiropractors.

2.02.2   Promotion of Chiropractic Services. ASH Networks and/or its affiliates shall engage in efforts to promote awareness and understanding of the value of chiropractic services to federal and state government agencies, employers, trust funds, health plans, insurance companies, nationally recognized research entities and health care provider and payor associations.

2.02.3   Communication Regarding Participation of Contracted Chiropractor. ASH Networks and/or its affiliates shall communicate the participation of Contracted Chiropractor in ASH Networks networks to existing and prospective Payors in various forms, including but not limited to marketing materials, ASH Networks or Payor network directories and applicable ASH Networks websites accessed by Members. Such communication may include information such as Contracted Chiropractors' name, location of Credentialed Chiropractic Facilities, languages spoken, professional education and practice techniques. ASH Networks and Payors reserve the right to determine whether to include chiropractic services or Contracted Chiropractor in their benefit plans, provider network directories, and/or promotional materials.

2.02.4   ASH Networks Relationships with Payors. ASH Networks shall contract with various types of Payors. Unless otherwise delegated to ASH Networks, with such delegation specified in Payor Summaries, Payors are responsible for the establishment of Member Benefit Plans, Affinity Programs, Covered Services, Affinity Services, dissemination of information to Members, verification of Member eligibility, provision of Member services, payment of claims to Contracted Chiropractors, and other functions. Any payments due Contracted Chiropractor by any Payor are the sole responsibility of such Payor. Any Member Payments due to Contracted Chiropractor from Member are the sole responsibility of the Member. ASH Networks shall not, under any circumstances, be obligated to pay Contracted Chiropractor for any amounts owed to Contracted Chiropractor by Payor or Member unless Contracted Chiropractor and ASH Networks

ASH CONFIDENTIAL Not To Be Reproduced Or Disclosed Without Written Permission

agree otherwise in writing. Contracted Chiropractor understands and agrees that ASH Networks is not responsible for and cannot guarantee Member's or Payor's ability to pay Contracted Chiropractor or Member's or Payor's timeliness in paying Contracted Chiropractor for services approved by ASH Networks for reimbursement and rendered by Contracted Chiropractor pursuant to this Agreement.

2.02.5   <u>Consumer Internet Site</u>. ASH Networks' affiliate, Healthyroads, Inc., has developed and maintains an Internet site, www.Healthyroads.com, for the purpose of increasing the awareness and utilization of chiropractic and other complementary health care services and products by consumers. The Internet site, www.Healthyroads.com, may include, among others, the following elements:

- Public information about Contracted Chiropractors and other Contracted Providers;

- Informational and educational resources;

- Retail site for products (vitamins, herbal supplements, exercise items, etc.);

- "Ask the Expert" feature to respond to consumer questions; and

- Health assessment tools

2.02.6   <u>Member Internet Sites</u>. ASH Networks and/or its affiliates has developed and maintains an Internet site, www.ashcompanies.com, for the purpose of increasing the awareness and utilization of Member Benefit Plans, Affinity Programs and other complementary health care benefit plans by Members. Internet sites for Members may also be linked to Payor Internet sites and customized based on Payor requirements to direct Members to www.ashcompanies.com. The internet site, www.ashcompanies.com, may also include information identifying Contracted Chiropractors and other ASH Networks Contracted Providers that are available to Members of each Payor.

2.02.7   <u>Assist Contracted Chiropractor with ASH Networks Implementation</u>. ASH Networks agrees to assist Contracted Chiropractor in the initial implementation of procedures necessary for Contracted Chiropractor's performance of this Agreement. Such assistance may be in the form of educational information, access to provider services and/or provider relations support.

2.02.8   <u>Research</u>. ASH Networks and/or its affiliates shall identify and support appropriate research initiatives or projects that focus on demonstrating the value of chiropractic and other complementary health care services through clinical efficacy research, comparative health services research, and/or clinical performance/quality improvement initiatives. Proposed research must satisfy criteria established by ASH Networks and/or its affiliates to evaluate the legitimacy and credibility of the proposed methodology.

2.02.9   <u>Supporting Advancement of Licensure and Legislative Recognition of Complementary Health Care Professions</u>. ASH Networks shall promote the recognition of complementary health care providers by supporting the establishment of formal licensure and/or certification requirements by state legislative and regulatory agencies throughout the United States.

<u>**Compliance with Regulatory and Accreditation Requirements**</u>

2.02.10   <u>Regulatory Licensure</u>. ASH Networks and/or its affiliates shall seek any licensure, certification, or approval from state regulatory agencies required to market and administer its programs, products and services directly related to the provision of Covered Services for chiropractic and complementary health care services and benefits utilizing the ASH Networks network of Contracted Chiropractors.

2.02.11   <u>Attainment of Accreditation</u>. ASH Networks and/or its affiliates has obtained relevant accreditation from nationally recognized accrediting organizations to demonstrate ASH Networks' ability to meet or exceed industry standards for administrative and clinical performance management/quality improvement capabilities. Such accreditations enhance ASH Networks' value to existing and prospective Payors and support the delegation of functional responsibilities by Payors to ASH Networks.

2.02.12   <u>Comply with Federal and State Laws and Regulations</u>. ASH Networks and its affiliates shall comply with applicable federal and state laws and regulations pertaining to its clinical and administrative operations.

2.02.13   <u>Clinical Performance Management/Quality Improvement</u>. ASH Networks and/or its affiliates shall utilize Contracted Chiropractors in each major region of the United States to participate on ASH Networks' clinical committees which support clinical management programs including the formulation and adoption of evidence-based clinical guidelines, credentialing criteria, clinical performance management/quality improvement programs, clinical services management, and/or administrative and clinical appeals.

2.02.14   <u>Evaluation and Response to Clinical Treatment Forms</u>. ASH Networks and/or its affiliates shall evaluate the Medical Necessity of chiropractic services submitted on clinical forms in accordance with the Clinical Services Management Program. Contracted Chiropractor is notified, in writing or electronically by ASH Networks and/or its affiliates of the clinical services evaluation determination in a timely manner. The notification shall contain the clinical rationale for Medical Necessity adverse determination, information on how to appeal, and the Clinical Services Manager's name, toll-free telephone number, and telephone extension to facilitate dialogue or other follow-up activities to a clinical services evaluation. Contracted Chiropractor's communication with a Clinical Services Manager regarding clinical services evaluation determination is an Exempt Transaction for purposes of the ETP Program as more fully defined in Attachment J.

2.02.15   <u>Credentialing/Recredentialing Program</u>. ASH Networks and/or its affiliates shall administer a Credentialing/ Recredentialing Program that complies with applicable regulatory requirements, Payor requirements, industry standards, and accreditation standards to ensure timely and accurate credentialing and recredentialing of Contracted Chiropractors and other ASH Networks Contracted Providers. The Credentialing/Recredentialing Program shall also be designed and operated in a manner that will support relevant accreditation requirements and delegation oversight requirements of Payors, in addition to complying with the relevant aspects of the ASH Networks Clinical Performance Management Program.

ASH Networks shall allow Contracted Chiropractor to correct incomplete, inaccurate, or conflicting credentialing information submitted to ASH Networks. The correction shall be considered by the Provider Quality and Credentialing Committee in making the network participation decisions. Contracted Chiropractor's communication with an ASH Networks employee concerning the credentialing/recredentialing process is an Exempt Transaction for purposes of the ETP Program as more fully defined in Attachment J.

2.02.16   <u>Non-Interference with Contracted Chiropractor's Advocacy for Appropriate Health Care</u>. ASH Networks shall not interfere with Contracted Chiropractor's right and obligation to advocate for appropriate health care for Contracted Chiropractor's patients, including Members. Nothing in this Agreement shall be construed to prevent Contracted Chiropractor from communicating with Members and expressing Contracted Chiropractor's professional opinion regarding health care diagnoses, treatment options and other matters of professional judgment.

2.02.17   <u>Encourage Contracted Chiropractor Feedback and Recommendations</u>. ASH Networks and/or its affiliates shall encourage and accept feedback from Contracted Chiropractor for review by the ASH Networks Provider Quality and Credentialing Committee and Clinical Provider Review Committee on the formulation of recommendations related to the programs of ASH Networks and/or its affiliates.

**Provision of Administrative Services**

2.02.18   <u>Professional Affairs</u>. ASH Networks and/or its affiliates shall engage in dialogue with recognized leaders in the health care industry, educational institutions and research entities, and governmental agencies and officials with the goal of promoting positive relations and mutual understanding.

2.02.19   <u>Provider Customer Service Center</u>. ASH Networks and/or its affiliates shall operate a customer service center with a toll free telephone number and internet access to respond to Contracted Chiropractor inquiries regarding credentialing/recredentialing status, requests to update or correct information submitted during the credentialing/recredentialing process, Member eligibility, benefits, Covered Services, Clinical Treatment Forms, claims payments, contractual relationship and responsibilities of Contracted Chiropractors, their office staff and ASH Networks and/or its affiliates. ASH Networks and/or its affiliates shall have an answering machine or answering service available for after-hour inquiries and shall provide a minimum of forty (40) office hours per week (except for weeks that include holidays, routine maintenance,

or extraordinary events). ASH Networks shall provide timely response to inquiries. Attachment J defines which inquiries covered by this section are included within the ETP Program.

2.02.20   <u>Member Customer Service Center</u>. ASH Networks and/or its affiliates shall operate a customer service center with a toll free telephone number and internet access to respond to Member inquiries regarding eligibility, benefits, Covered Services, Clinical Treatment Forms, claims payments, availability of providers and other information. ASH Networks and/or its affiliates shall have an answering machine or answering service available for after-hour inquiries and shall provide a minimum of forty (40) office hours per week (except for weeks that include holidays, routine maintenance or extraordinary events). ASH Networks shall provide timely response to inquiries.

2.02.21   <u>Eligibility Verification</u>. ASH Networks and/or its affiliates shall provide customer service for Contracted Chiropractors and Members related to Member eligibility verification for Covered Services under Member Benefit Plans with Payors, as follows:

- In response to Contracted Chiropractor or Member inquiries regarding Member eligibility;

- Upon submission of Clinical Treatment Forms by Contracted Chiropractor; and

- Upon submission of claims by Contracted Chiropractor.

Attachment J defines which inquiries covered by this section are included within the ETP Program.

2.02.22   <u>Electronic Transaction Processing (ETP) Program</u>. ASH Networks shall designate an Internet based or other electronic submission process to promote the secure and confidential electronic exchange of data and dissemination of information to Contracted Chiropractor for the purpose of increasing the timeliness, accessibility and cost effectiveness of conducting business with ASH Networks. This Internet based or other electronic submission process is referred to as the "Electronic Transaction Processing Program" or the "ETP Program" as more fully defined in Attachment J. ASH Networks has designated ASHLink as the ETP Program. ASH Networks shall send all Remittance Advice forms, ASH Networks Response forms or other administrative or clinical forms to Contracted Chiropractor electronically through ASHLink.

(a)   Contracted Chiropractor shall utilize the ETP Program and shall be eligible for ETP Program Incentive Payments by utilizing ASHLink or other electronic submission processes adopted and made available by ASH Networks. An additional Direct Deposit Bonus Payment will be provided if Contracted Chiropractor registers for and solely utilizes direct deposit capabilities offered by ASH Networks for electronic deposit of all funds due Contracted Chiropractor by ASH Networks in addition to electronic communication of all Remittance Advice resulting from claims processing activity by ASH Networks under the direct deposit provision described in Attachment J. Contracted Chiropractor may also be subject to the application of Administrative Processing Fees for low or non-utilization of ASHLink, Direct Deposit or other electronic submission processes adopted and made available by ASH Networks, as described in Attachment J.

(b)   For the purposes of the ETP Program, business transactions between Contracted Chiropractor and ASH Networks shall be identified as Successful Transactions, Exempt Transactions or Unsuccessful Transactions, as defined in Attachment J. ASH Networks shall measure and provide Contracted Chiropractor with Contracted Chiropractor's ETP Usage Rate, as defined in Attachment J, for Contracted Chiropractor to monitor ETP Program Successful Transaction activity compared to Non-ETP Program Successful Transaction activity submitted via paper, fax or telephone inquiries.

Only Successful Transactions shall be used in the determination of the ETP Usage Rate for the purpose of determining ETP Program Incentive Payments or Administrative Processing Fees in accordance with the respective schedules described in Attachment J. In no event shall the identification of business transactions into the categories defined above for the purposes of administering the ETP Program prevent, act as a barrier or be considered an incentive for Contracted Chiropractor to not arrange for or provide Medically Necessary Covered Services for Member Benefit Plans under this Agreement.

(c)   Contracted Chiropractor shall provide all computer hardware and support services necessary to perform electronic data exchange via the ETP Program. Contracted Chiropractor agrees that ASH

Case 3:14-cv-02022   Document 30-7   Filed 12/23/14   Page 16 of 83 PageID #: 343

Networks shall not be responsible for any costs or expenses incurred by Contracted Chiropractor to participate in the ETP Program.

2.02.23 <u>Claims Payment</u>. When delegated by a Payor, ASH Networks and/or its affiliates shall administer claims payment in a manner that complies with applicable regulatory requirements to ensure timely and accurate processing and payment. ASH Networks shall calculate and pay interest charges in accordance with applicable state laws and regulations applicable to delayed claims payment. Interest shall be payable on late claims only where required by law.

2.02.24 <u>Education</u>. ASH Networks and/or affiliates shall develop and conduct educational programs which may include orientations, seminars, newsletters, materials and/or videos to promote the education and understanding of Contracted Chiropractors and their office staff regarding the programs, products, services or business activities of ASH Networks and/or its affiliates, Payors, regulatory requirements and other relevant topics.

2.02.25 <u>Grievances and Appeals</u>. ASH Networks shall develop, update and maintain policies and procedures that comply with applicable statutory and regulatory requirements relating to the formal grievances and appeals procedures set out in this Agreement.

2.02.26 <u>Provider and Member Satisfaction Surveys</u>. ASH Networks and/or its affiliates shall develop and conduct random surveys of Contracted Chiropractors, other ASH Networks Contracted Providers, and Members to assess overall satisfaction regarding various aspects of the services provided by ASH Networks and its Contracted Providers. A nationally recognized independent research firm shall conduct said surveys on no less than an annual basis.

2.02.27 <u>Non-Discrimination against Chiropractors and Members</u>. ASH Networks and/or its affiliates shall not discriminate against chiropractors and/or Members for any reason, including but not limited to age, sex, marital status, religion, ethnic background, national origin, political affiliation, ancestry, race, color, sexual orientation, health disability status or source or amount of reimbursement.

2.02.28 <u>Prepare, Maintain, and Make Available the Operations Manual</u>. ASH Networks shall prepare and maintain an Operations Manual setting forth ASH Networks' policies, processes, standards and procedures regarding Contracted Chiropractor's participation in Member Benefit Plans and Affinity Programs.

**<u>Network Development</u>**

2.02.29 <u>Network Development</u>. Payors, regulatory agencies, and accreditation organizations have requirements for network adequacy and provider access and availability for Members. ASH Networks and/or Payors shall determine the criteria for ASH Networks network development and provider recruitment. ASH Networks and/or its affiliates shall promote the development of its provider networks by recruiting chiropractors and other complementary health care providers. Network development shall also be conducted to:

(a) Comply with applicable regulatory requirements for network adequacy and Member access requirements;

(b) Support the identified needs of Payors;

(c) Respond to specific provider interest to join ASH Networks networks;

(d) Respond to Payor or Member nominations of specific providers; and

(e) Satisfy network requirements of ASH Networks and/or its affiliates to support existing or proposed benefit plans, products and services to Payors.

2.02.30 <u>Contracted Ancillary Provider Network</u>. ASH Networks shall develop and maintain a network of Contracted Ancillary Providers that are available to perform ancillary services for Members referred to Contracted Ancillary Providers by Contracted Chiropractors. In the absence of a Contracted Ancillary Provider being available in reasonable geographic proximity, ASH Networks and/or its affiliates shall arrange for access to an ancillary provider, as described in applicable Payor Summary. Payor shall have the right to determine whether to utilize ASH Networks' Contracted Ancillary Provider network or Payor's

HIGHLY CONFIDENTIAL — Not to be Produced or Disclosed Without Written Permission

ancillary provider network. ASH Networks will assist the Contracted Chiropractor when a referral to an ancillary provider is Medically Necessary and is approved by ASH Networks.

**Confidentiality of Records**

    2.02.31 <u>Records Management</u>. ASH Networks and/or its affiliates shall develop, update and maintain policies and procedures that comply with applicable statutory and regulatory requirements for the secure and confidential storage, retention, retrieval and destruction of all records pertaining to its business operations, whether these records are in paper or electronic form.

    2.02.32 <u>Confidentiality of Member Information</u>. ASH Networks and/or its affiliates shall protect access to and distribution of information and/or records that are subject to regulatory requirements for protection of Member information and privacy including, but not limited to, protection of non-public personal health information.

2.03   **Contracted Chiropractor's Responsibilities**.

Contracted Chiropractor has a responsibility to meet the high standards of performance established by Payors, regulatory agencies, accreditation organizations and other oversight entities relating to Contracted Chiropractor's responsibilities under this Agreement. Such standards are intended to enhance the delivery of health care services to Members and the administration of benefits and customer service for both the Payor and the Member, and promote positive health outcomes and stabilization of health care costs for Payors and Members. Contracted Chiropractor's responsibilities are categorized into the following areas:

- Provision of Patient Care;

- Provision of Member Services; and

- Compliance with State and Federal Privacy Laws and Regulations

Therefore Contracted Chiropractor agrees to the following:

**Provision of Patient Care**

Contracted Chiropractor has the following responsibilities relating to the provision of patient care to Members:

    2.03.1 <u>Provide Chiropractic Services, Emergency Services and Urgent Services</u>. During normal office hours, Contracted Chiropractor shall promptly furnish Covered Services required by Members to Members of any Payor. Contracted Chiropractor shall provide an appointment for a Member within seven (7) days of receiving a request for non-Emergency or non-Urgent Services. Contracted Chiropractor shall provide services to Members within twenty-four (24) hours of the Member's request for Emergency Services or Urgent Services and shall be available seven (7) days per week, twenty-four (24) hours per day to provide for Emergency Services or Urgent Services or arrange for back-up support in accordance with this Agreement. Contracted Chiropractor shall only provide Covered Services, including Emergency Services and Urgent Services, that Contracted Chiropractor is licensed and qualified to provide and has the capacity to provide. Contracted Chiropractor shall document all Chiropractic Services, Emergency Services and Urgent Services provided to Members. Contracted Chiropractor is responsible for the quality of Chiropractic Services provided to Members under this Agreement. Nothing stated in this Agreement shall be interpreted to diminish this responsibility. Nothing in this Agreement is intended to create nor shall it be construed to create any right by ASH Networks to intervene in the method or means by which Contracted Chiropractor renders chiropractic services.

    2.03.2 <u>Provide Affinity Services</u>. During normal office hours, Contracted Chiropractor agrees to promptly furnish Affinity Services to Members of any Payor, upon request. Contracted Chiropractor shall only provide those Affinity Services that Contracted Chiropractor is licensed and qualified to provide and has the capacity to provide. Contracted Chiropractor shall document all Affinity Services provided to Members in the Member's Medical Records. Contracted Chiropractor is responsible for the quality of clinical services provided to Affinity Program Members under this Agreement. Nothing stated in this Agreement shall be interpreted to diminish this responsibility. Nothing in this Agreement is intended to create nor shall it be construed to create any right by ASH Networks to intervene in the method or means by which Contracted Chiropractor renders chiropractic services.

ASH CONFIDENTIAL – May Not Be Reproduced or Disclosed Without Written Permission

2.03.3 <u>Comply with Federal and State Law</u>. Contracted Chiropractor shall maintain and demonstrate upon request by ASH Networks that Contracted Chiropractor is licensed and meets all federal and state regulations or is exempt from compliance with such regulations. Contracted Chiropractor shall submit evidence of such licensure to ASH Networks upon request.

2.03.4 <u>Comply with Credentialing/Recredentialing Program, Clinical Services Management Program, Medical Records Evaluation Program and Clinical Performance Management Program, Payor Summaries and Operations Manual</u>. Contracted Chiropractor shall comply fully with the Credentialing/Recredentialing Program, Clinical Services Management Program, Medical Records Evaluation Program and the Clinical Performance Management Program described in Attachment F to this Agreement, the applicable Payor Summaries and the Operations Manual, including procedures designed to monitor and evaluate the Medical Necessity of services rendered, accessibility, availability, and continuity of care and shall cooperate with ASH Networks in ASH Networks' administration of its grievance procedures, including procedures to resolve complaints or grievances filed by Members with ASH Networks. Contracted Chiropractor agrees and acknowledges that such procedures shall include, but not be limited to, a system for identifying and resolving deficiencies and the evaluation of, among other things, compliance with professionally recognized standards of practice, customer service requirements and Credentialing/Recredentialing Program requirements.

2.03.5 <u>Non-Licensed Chiropractor in Credentialed Chiropractic Facilities</u>. Contracted Chiropractor shall not submit claims for reimbursement of services provided to Members by a non-licensed chiropractor within the Credentialed Chiropractic Facility, under the terms of this Agreement. Only Contracted Chiropractors are eligible for reimbursement of Covered Services in accordance with the applicable Payor Summary. Non-licensed chiropractors include, but are not limited to, interns, students, pre-ceptors and post-ceptors.

2.03.6 <u>Non-Contracted Licensed Chiropractor</u>. Contracted Chiropractor shall not submit claims for reimbursement of services provided to Members by a chiropractor within the Credentialed Chiropractic Facility, other than a Contracted Chiropractor, under the terms of this Agreement. Only Contracted Chiropractors are eligible for reimbursement of Covered Services in accordance with the applicable Payor Summary.

Contracted Chiropractor shall not refer Members to any such non-contracted licensed chiropractor unless Member acknowledges, in advance and in writing, Member's responsibility to pay for some or all of the services rendered by a non-contracted licensed chiropractor. A Member may elect, at the Member's sole discretion, to seek services from a non-contracted licensed chiropractor. However, reimbursement for such services will be the financial responsibility of the Member on a cash basis or under specific provisions of the Member Benefit Plan providing for reimbursement of services from a non-contracted licensed chiropractor.

2.03.7 <u>Non-Covered Services to be provided by Other Health Professionals.</u> When a Member requires Non-Covered Services from other health care professionals, Contracted Chiropractor agrees to inform the Member that requests for such services shall be coordinated by the Member's PCP, treating physician, or other health professional in accordance with the terms and conditions of the Member's medical and hospital health plan.

2.03.8 <u>Contracted Chiropractor Referral Responsibilities</u>. Subject to existing and amended procedures as set forth in the Operations Manual, Contracted Chiropractor agrees to comply with the requirements specified below regarding referrals. ASH Networks reserves the right to monitor and audit the Contracted Chiropractor's practices for compliance with the requirements specified in this Section and its subparts. If ASH Networks finds that the Contracted Chiropractor does not comply, ASH Networks may impose a Corrective Action Plan on the Contracted Chiropractor, pursuant to Section 2.03.11. Failure to comply with a Corrective Action Plan may result in sanctions, up to and including, termination form participation in ASH Networks.

(a) **Referral by Primary Care Physician or Treating Physician to Contracted Chiropractor**. When a Payor requires a Primary Care Physician ("PCP") or treating physician referral for Covered Services under a Member Benefit Plan, Contracted Chiropractor is responsible to verify that Member has received a valid referral in accordance with the Member Benefit Plan and shall submit such referral to ASH Networks with the Clinical Treatment Form or Claim, as required by the applicable Payor Summary. Services provided to a Member without a referral, when such referral is required by the applicable Payor Summary, shall be the financial responsibility of the Member when a Contracted Chiropractor has obtained a signed Member Plan Requirement Acknowledgment form in advance of rendering services. Contracted Chiropractor may contact

ASH Networks' provider customer service department for information on receiving appropriate referrals from Primary Care Physicians or treating providers under a Member Benefit Plan.

(b) **Referral to Ancillary Providers**. If Covered Services required by a Member include diagnostic plain-film x-rays, radiological consultations or clinical laboratory services and Contracted Chiropractor does not or cannot provide such Covered Services, Contracted Chiropractor may refer the Member for the ancillary services in accordance with one of the following procedures:

(i) **Referral to ASH Networks Contracted Ancillary Providers**: Contracted Chiropractor may provide Member with a referral to an ASH Networks Contracted Ancillary Provider who is in the same geographical area as Contracted Chiropractor and shall provide Member with the name and address of such Contracted Ancillary Provider;

(ii) **Referral to Payor Contracted Ancillary Providers**: Where Contracted Chiropractor contacts ASH Networks, ASH Networks shall assist the Contracted Chiropractor with the referral to the Payor contracted ancillary provider or refer the Contracted Chiropractor to the Payor to arrange for ancillary provider services.

Nothing in this Section shall in any way reduce or alter Contracted Chiropractor's obligation to obtain approval for these Covered Services from ASH Networks under the Clinical Services Management Program.

Where Contracted Chiropractor is not able to refer the Member to an ASH Networks Contracted Ancillary Provider or to a Payor Contracted Ancillary Provider, the Contracted Chiropractor must direct the Member to Member's Primary Care Physician or treating physician to arrange for ancillary provider services unless the Member requests to use a non-contracted ancillary provider. Where the Member request to use a non-contracted ancillary provider, Contracted Chiropractor shall obtain, in advance, a Member written acknowledgement of Member's responsibility to pay for some or all of the services rendered by a non-contracted ancillary provider.

Contracted Chiropractor may contact ASH Networks' provider customer service department for information or support in receiving or making appropriate referrals under the Member Benefit Plan. Contracted Chiropractor's communication with ASH Networks' Provider Customer Service Department regarding a referral is an Exempt Transaction for purposes of the ETP Program as more fully defined in Attachment J.

2.03.9 <u>Continuity of Care</u>. In the event a specific Payor Summary terminates, Contracted Chiropractor agrees to comply with applicable state and federal law and/or applicable Payor Summary requirements for the provision of continuity of care of a former Member who is no longer eligible for Covered Services as of the Payor Summary termination date.

2.03.10 <u>Credentialed Chiropractic Facility</u>. Contracted Chiropractor and ASH Networks acknowledge that accreditation agencies and most Payors require ASH Networks to require Contracted Chiropractor to only provide Chiropractic Services at office locations that have been credentialed by ASH Networks and/or Payor. Therefore:

(a) If the Member Benefit Plan includes only in-network benefits, Contracted Chiropractor agrees to render Covered Services for Members only at Credentialed Chiropractic Facilities listed in Attachment A to this Agreement. Contracted Chiropractor agrees not to provide Chiropractic Services to Members at office locations which are Non-Credentialed Chiropractic Facilities. Contracted Chiropractor shall not be eligible for reimbursement or payment by ASH Networks or any Member for Chiropractic Services rendered at a Non-Credentialed Chiropractic Facility, and Contracted Chiropractor agrees to waive all such charges not approved by ASH Networks. Contracted Chiropractor may request approval from ASH Networks of a new office location, whether it is an additional office location or a relocation of an existing office, by submitting a completed Provider Status Change Request form to ASH Networks. ASH Networks reserves the right to approve or not approve such request for a new office location. Such approval process may require an evaluation by ASH Networks of the new office location. Contracted Chiropractor should request approval by ASH Networks of the new office location sixty (60) days prior to the proposed effective date of the new office location. ASH Networks also reserves the right to complete a site visit evaluation and review, at any time, after receiving written notice of

CONFIDENTIAL or Disclosed
SHOULD NOT BE Reproduced or Disclosed
Without Written Permission

Contracted Chiropractor's intent to establish the new office location. If approved by ASH Networks, the new office location will qualify as a Credentialed Chiropractic Facility. Nothing in this section shall prohibit a Contracted Chiropractor from providing Emergency Services or Urgent Services at a Member's home or other location as requested by Member.

(b)     If the Member Benefit Plan includes both in-network and out-of-network benefits, a Member may be treated by Contracted Chiropractor at a Non-Credentialed Chiropractic Facility. Contracted Chiropractor shall obtain Member agreement in advance and in writing that services provided by Contracted Chiropractor at a Non-Credentialed Chiropractic Facility will be reimbursed at the out-of-network benefit rate according to the Member Benefit Plan.

2.03.11  <u>Contracted Chiropractor Performance Improvement</u>. Payors and ASH Networks have a high level of expectation of performance of Contracted Chiropractors. ASH Networks may issue Corrective Action Plans ("CAP") to support the performance improvement of its Contracted Chiropractors. Therefore, Contracted Chiropractor agrees that ASH Networks may issue CAPs to Contracted Chiropractor as determined by ASH Networks. ASH Networks shall deliver all CAPs to Contracted Chiropractor in writing. CAPs will communicate to Contracted Chiropractor:

- The manner in which Contracted Chiropractor's practices are not in accordance with professionally recognized standards of practice;

- Requirements of this Agreement with which the Contracted Chiropractor is not in compliance;

- Performance improvement requirements of the Contracted Chiropractor;

- Timeline required for Contracted Chiropractor to acknowledge intent to comply; and

- Timeline established under ASH Networks' Administrative Program and/or Clinical Performance Management Program for Contracted Chiropractor to demonstrate achievement of the required level of performance, compliance or improvement.

In order to maintain and adhere to the mutual objectives and Contracted Chiropractor responsibilities of this Agreement, Contracted Chiropractor agrees to comply with any CAP delivered to Contracted Chiropractor by ASH Networks within the timelines specified and to respond to the CAP in writing or as otherwise requested by ASH Networks. Contracted Chiropractor may submit information to ASH Networks in response to the CAP which explains the Contracted Chiropractor's position including, but not limited to, any information demonstrating that Contracted Chiropractor is in compliance with this Agreement or Operations Manual.

<u>**Provision of Member Services**</u>

Contracted Chiropractor is responsible for ensuring that Members receiving treatment in Contracted Chiropractor's office have a positive customer service experience. In this connection, Contracted Chiropractor has the following responsibilities:

2.03.12  <u>Contracted Chiropractor Notification to Members of Their Financial Responsibilities, Member Eligibility/Benefits, and Covered Services</u>. Members need to be notified by their Contracted Chiropractor of their financial responsibility for amounts they may owe Contracted Chiropractor for Chiropractic Services and of their Eligibility/Benefits and Covered Services prior to the provision of services. Therefore, Contracted Chiropractor agrees to properly notify Members in writing prior to the provision of Chiropractic Services as follows:

(a)     **Members Determined to be Ineligible**. Prior to or on the initial visit before rendering services, Contracted Chiropractor agrees to provide notification to all patients that represent themselves as Members that they must reimburse the Contracted Chiropractor for all rendered services if the Member is later determined to be ineligible with ASH Networks or a Payor. The Initial Health Status form includes a section meeting the notification requirement.

(b)     **Non-Covered Services**. Contracted Chiropractor agrees to have any Member who desires to receive and self-pay for Non-Covered services complete and execute the Member Billing Acknowledgment form prior to rendering services to the Member. The Member Billing

Case 3:14-cv-02022   Document 30-7   Filed 12/23/14   Page 21 of 83 PageID #: 348

Acknowledgment form includes a section where the Contracted Chiropractor must identify Non-Covered services to be rendered and the amounts for which the Member is agreeing to self-pay the Contracted Chiropractor.

(c)  **Non-Medically Necessary Services**.  Contracted Chiropractor agrees to properly document in the Member's Medical Records, Clinical Treatment Forms, and Reopen/Modification forms accurate and contemporaneous clinical information to establish whether Chiropractic Services are Medically Necessary Services under a Member Benefit Plan as required under this Agreement and/or the Contracted Chiropractor's professional license. Contracted Chiropractor agrees to satisfy all requirements of the Clinical Services Management Program including, but not limited to, the timely completion and submission of Clinical Treatment Forms, Medical Records and/or Reopen/Modification forms, communication with ASH Networks Clinical Services Managers and participation in ASH Networks' appeals and grievance process. Contracted Chiropractor agrees not to inform the Member that services which may be Covered Services have been determined not to be Medically Necessary Services without submitting the services for evaluation by ASH Networks under the Clinical Services Management Program. If Chiropractic Services are determined by ASH Networks not to be Medically Necessary Services, and, therefore, are Non-Covered Services, Contracted Chiropractor agrees to notify Members in advance, and in writing, using the Member Billing Acknowledgment form, of Member's responsibility to self-pay for such Non-Covered Services under a Member Benefit Plan.

(d)  **Accuracy of Member Eligibility/Benefits and Covered Services Information**. Contracted Chiropractor agrees to provide current Member Eligibility/Benefits and Covered Services information to Members. ASH Networks shall provide Contracted Chiropractor with Member Eligibility/Benefits and Covered Services information through its provider services department available to Contracted Chiropractors through a toll-free telephone number, through submission of a facsimile, and through ASHLink, which is available to Contracted Chiropractor through the Internet.  In order for Contracted Chiropractor to provide Members with accurate Member Eligibility/Benefits and Covered Services information, Contracted Chiropractor must verify Member Eligibility/Benefits and Covered Services initially and periodically during a Member's course of treatment.

Contracted Chiropractor agrees to properly inform Members of their financial responsibilities, Member Eligibility/Benefits and Covered Services. Contracted Chiropractor agrees to use the appropriate written notification process as defined in this Section and the Operations Manual. Contracted Chiropractor agrees and understands that in the absence of the proper notification and appropriate written agreement, the Member shall be held harmless by Contracted Chiropractor, ASH Networks and/or Payor and agrees to waive all charges and not seek payment from Member, ASH Networks and/or Payor.

2.03.13  <u>Verification of Member Eligibility/Benefits and Covered Services</u>. Contracted Chiropractor agrees to verify Member Eligibility/Benefits and Covered Services with ASH Networks or Payor, as required by the applicable Payor Summary, at the time of the initial examination/office visit and then periodically during the provision of Covered Services. Contracted Chiropractor shall verify Member Eligibility/Benefits and Covered Services by contacting ASH Networks' provider services department through its toll-free telephone number, facsimile, and/or by querying ASHLink via the Internet. Contracted Chiropractor agrees and understands that the applicable Payor Summary will only include general guidelines for Member Eligibility/Benefits and shall not be used as the sole source of verification of Member Eligibility/Benefits and Covered Services. Attachment J defines which inquiries covered by this section are included within the ETP Program.

If Contracted Chiropractor does not verify Member Eligibility/Benefits and/or Covered Services as required in this Section and if a claim is not paid, due directly or indirectly to the non-verification of Member Eligibility/Benefits and/or Covered Services by Contracted Chiropractor, then Contracted Chiropractor agrees to waive all charges related to such services and not seek payment from Member, ASH Networks and/or Payor. If Contracted Chiropractor does not submit Clinical Treatment Forms, Medical Records and/or claims on a timely basis, as required under this Agreement, due to Contracted Chiropractor's failure to verify Member Eligibility/Benefits and/or Covered Services with ASH Networks and/or Payor, then Contracted Chiropractor shall waive all charges relating to such services and not seek payment from Member, ASH Networks and/or Payor.

Nothing in this Section shall guarantee Member eligibility. ASH Networks' verification of Member eligibility is subject to final determination of eligibility by the Payor. If a Payor determines a Member to be ineligible subsequent to the provision of services and/or the review and approval of Clinical Treatment Forms or Reopen/Modification forms, the Member shall be financially responsible to self-pay the Contracted Chiropractor for services rendered while the Member was ineligible, if the Member executed the Initial Health Status form guaranteeing their eligibility under a Member Benefit Plan.

2.03.14 <u>Member Rights</u>. Contracted Chiropractor shall respect the rights of Members, including but not limited to those listed below. Additional information on Members' Rights is included in the Operations Manual.

Members have a right to:

(a)     Receive medically necessary and appropriate care and services;

(b)     Participate in decisions regarding care, including the right to refuse treatment;

(c)     Receive considerate and respectful care in a culturally sensitive manner;

(d)     Receive timely access to care;

(e)     Receive information about the Member's condition in understandable terms; and

(f)     Full consideration of privacy and confidentiality.

2.03.15 <u>Access and Availability</u>. Contracted Chiropractor shall be accessible and available to Members, including but not limited to the following:

(a)     Return Member calls within sixty (60) minutes during normal business hours;

(b)     Maintain an answering machine or answering service to receive telephone calls from Members twenty-four (24) hours a day, seven (7) days per week;

(c)     Return telephone calls from Members left on Contracted Chiropractor's answering machine or answering service in a timely manner appropriate for the nature of the caller's health care needs consistent with good professional practice;

(d)     Provide services to Members within seven (7) days of the Members' request to schedule or reschedule an appointment for non-Emergency or non-Urgent Services

(e)     Provide services to Members within twenty-four (24) hours of the Members' request to schedule or reschedule an appointment for Emergency Services or Urgent Services; and

(f)     Provide services to Members within thirty (30) minutes of their scheduled appointment time.

2.03.16 <u>Member Payments and Billing</u>. Contracted Chiropractors shall collect appropriate Member Payments, as specified in the Payor Summaries, at the time of service and shall bill Members according to the procedures described in the Agreement. Contracted Chiropractor shall not waive any Member Payments.

2.03.17 <u>Timely Submission and Follow-up with ASH Networks</u>. Contracted Chiropractors shall submit and follow up on Clinical Treatment Forms, claims and all other ASH Networks documentation according to the procedures and timelines set forth in the Agreement. Contracted Chiropractor shall have the ability to send and receive facsimiles via a dedicated telephone line or electronic data exchange with ASH Networks utilizing ASHLink. ASH Networks shall ensure that ASHLink will be at least as reliable as other websites maintained by ASH Networks and its affiliates. Attachment J defines which inquiries covered by this section are included within the ETP Program.

2.03.18 <u>Comply with Administrative Procedures in Operations Manual</u>. Contracted Chiropractor shall abide by all procedures and policies set forth in the Operations Manual, which may be amended by ASH Networks pursuant to ARTICLE 23 of this Agreement.

ASH CONFIDENTIAL - Not to Be Reproduced or Disclosed without Written Permission

2.03.19 <u>Non Discrimination</u>. Contracted Chiropractor shall comply with applicable state and federal laws and regulations regarding non-discrimination. Contracted Chiropractor shall not discriminate against Members, employees or applicants for employment for any reason, including but not limited to age, sex, marital status, religion, ethnic background, national origin, political affiliation, ancestry, race, color, sexual orientation, health disability status or source or amount of reimbursement. Contracted Chiropractor shall render Covered Services and/or Affinity Services to Members covered by a Member Benefit Plan and/or Affinity Program in the same manner, in accordance with the same standards, and within the same time availability as services offered to patients who are not Members.

2.03.20 <u>Cultural Competency</u>. Contracted Chiropractor shall provide access to Covered Services, both clinical and non-clinical, to all Members including those with limited English proficiency or reading skills, with diverse cultural and ethnic backgrounds, the homeless, and individuals with physical and mental disabilities. Contracted Chiropractor must provide information regarding treatment options in a culturally competent manner, including the option of no treatment. With respect to services provided by Contracted Chiropractor, Contracted Chiropractor must ensure that individuals with disabilities have effective communication in making decisions regarding treatment options.

**Compliance with State and Federal Privacy Laws and Regulations**

2.03.21 <u>Compliance with State and Federal Privacy Laws and Regulations</u>. Contracted Chiropractor shall maintain compliance with state and federal privacy laws and regulations, including the Health Insurance Portability and Accountability Act (HIPAA) of 1996, with respect to protected Member information.

**ARTICLE 3     RELATIONSHIP OF PARTIES.**

3.01 **Payor Summaries**. Payor Summaries are included in Attachment D. Payor Summaries are both Generic and Payor Specific. Contracted Chiropractor agrees that ASH Networks may issue new Payor Summaries with thirty (30) days notice or revise current Payor Summaries with ninety (90) days notice or will provide notice in accordance with ARTICLE 23 of this Agreement, whichever is the greater notification timeframe. Contracted Chiropractor agrees that such revisions may affect Covered Services, Fee Schedule Amounts, administrative guidelines, and/or other elements of the Payor Summaries.

Contracted Chiropractor may elect to not participate in any Payor Summary prior to execution of this Agreement unless prohibited by state regulation or Payor specification including but not limited to election to participate requirements. Any election by Contracted Chiropractor to not participate in any Payor Summary prior to the execution of this Agreement shall be set forth in writing by the Contracted Chiropractor and submitted to ASH Networks together with a copy of the fully executed Agreement. Failure to provide notice of election to not participate, along with the executed agreement, shall be deemed to be an election to participate in all Payor Summaries.

After execution of this Agreement, Contracted Chiropractor may elect to not participate in any Payor Summary added to Attachment D in accordance with Section 3.04 of this Agreement unless prohibited by state regulation or Payor specification. Should Contracted Chiropractor elect to not participate in a Payor Summary that is added to Attachment D, written notice of such election must be received by ASH Networks within thirty (30) days following Contracted Chiropractor's receipt of ASH Networks' notice of revised Payor Summaries. Failure to provide notice of election to not participate, along with the executed agreement, shall be deemed to be an election to participate in all Payor Summaries.

3.01.1 <u>Election to Not Participate In All Product Offerings</u>. Upon receipt of proper written notice to ASH Networks, a Contracted Chiropractor may elect to not participate in the following categories of Affinity Programs and Member Benefit Plans administered by ASH Networks.

(a) **Member Benefit Plans and Affinity Program Participation for a Given Payor**. A Contracted Chiropractor may only elect to not participate in all Payor Summaries for a given Payor (HMO, PPO, network access, affinity, etc.) unless ASH Networks informs Contracted Chiropractor that Contracted Chiropractor may elect to not participate in some but not all Payor Summaries for that Payor at the Contracted Chiropractor's discretion.

(b) **Stand Alone Affinity Program Participation**. A Contracted Chiropractor may elect to not participate in the ASH Networks stand alone Affinity Programs as described in applicable Payor Summaries; however, the Contracted Chiropractor may not limit this election to specific ASH Networks stand alone Affinity Programs.

ASH CONFIDENTIAL
Not To Be Used or Disclosed
Without Written Permission

(c) **ASH Insurance and Self Funded Payor Member Benefit Plan Participation.** A Contracted Chiropractor may elect to not participate in all Member Benefit Plans under American Specialty Health Insurance Company (ASH Insurance) or self-funded Payors administered by ASH Networks; however, the Contracted Chiropractor may not limit this election to specific Payors.

(d) **Seamless Network Member Benefit Plan Participation.** A Contracted Chiropractor may elect to not participate in the ASH Networks seamless network Member Benefit Plan as described in applicable Payor Summaries that provides access to ASH Networks Contracted Chiropractors nationally; however, the Contracted Chiropractor may not limit this election to specific Payors.

3.01.2  <u>Reinstatement Process</u>. If a Contracted Chiropractor elects to not participate in one or more Affinity Programs or Member Benefit Plans in accordance with the criteria outlined above and subsequently requests to reactivate participation, a two hundred dollar ($200) reactivation fee will be applied per request to cover the administrative costs related to reinstatement, issuance of Payor Summaries and updating of provider directories with the Contracted Chiropractor's change in status. This reactivation fee will be waived if Contracted Chiropractor requests to reactivate participation upon proper written notice within thirty (30) days of the annual issuance of all Payor Summaries.

3.01.3  <u>Annual Payor Summary Issuance and Election to Not Participate Criteria</u>. ASH Networks shall issue all Payor Summaries to Contracted Chiropractor at least once per calendar year along with the notice of related election to not participate criteria for each Payor Summary. Payor Summaries shall be issued along with the related election to not participate criteria at least ninety (90) days prior to the effective date of issued Payor Summaries unless specified otherwise in ARTICLE 23 of this Agreement.

3.01.4  <u>Provider Notification Process</u>. The Contracted Chiropractor shall have thirty (30) days from the date of notice and issuance of the Payor Summaries to inform ASH Networks in writing of the election to not participate in specific Affinity Program or Member Benefit Plan as described in applicable Payor Summaries and in accordance with the election to not participate criteria. Should the Contracted Chiropractor fail to provide proper notice within the thirty (30) day timeframe, ASH Networks will deem that the Contracted Chiropractor has elected to continue to participate in all Affinity Programs and Member Benefit Plans described in applicable Payor Summaries that have been issued.

3.02  **Excluded Payors (Attachment C)**. Attachment C, which is incorporated herein by this reference, lists specific Payors ("Excluded Payors") that contract with ASH Networks but which require providers to meet additional Payor-specific requirements in order to become participating network providers under such Payors' Member Benefit Plan and/or Affinity Program. Unless Contracted Chiropractor meets such additional Payor-specific requirements as specified in Attachment C, Contracted Chiropractor would be considered a non-participating network provider under any Payors listed in Attachment C. Contracted Chiropractor is not eligible to receive reimbursement by ASH Networks and/or Payor for Covered Services under a Member Benefit Plan for a Payor listed in Attachment C. Contracted Chiropractor agrees that Payors may in the future exclude Contracted Chiropractor from participation in any one or more Member Benefit Plans even though Contracted Chiropractor is otherwise eligible to participate in ASH Networks. If Contracted Chiropractor is excluded from a specific Payor's Member Benefit Plan, Contracted Chiropractor is responsible to obtain Member agreement in advance, and in writing, that the Contracted Chiropractor is ineligible for reimbursement by ASH Networks and/or Payor and that Member is responsible to pay for all Chiropractic Services. If Contracted Chiropractor is excluded pursuant to Attachment C from a Payor's Affinity Program and/or Member Benefit Plan, Contracted Chiropractor and Contracted Chiropractor's staff, agents and/or representatives shall not represent that Contracted Chiropractor participates in ASH Networks' network for such Payor's plan or program. Contracted Chiropractor further agrees to notify any Member covered by the Member Benefit Plan from which Contracted Chiropractor has been excluded, in advance and in writing, that charges incurred for services rendered by any Contracted Ancillary Provider, Primary Care Physician or other Contracted Chiropractor, as a result of any referral by Contracted Chiropractor, may be ineligible for reimbursement by ASH Networks and/or the applicable Payor. Contracted Chiropractor further agrees to assume full financial responsibility for charges incurred for services rendered as a result of any referral made by Contracted Chiropractor of a Member covered by the Member Benefit Plan(s) from which Contracted Chiropractor has been excluded if Contracted Chiropractor does not notify Member in advance and in writing of Member's responsibility to self-pay for services rendered by a Contracted Ancillary Provider, Primary Care Physician, or other Contracted Chiropractor. ASH Networks may add or delete Payors by issuing a revised Attachment C pursuant to ARTICLE 23 of this Agreement.

3.03  **Payor Additions that Require Amendment**. This Agreement excludes the following types of Payors: workers' compensation, automobile medical coverage ("auto med pay") and third party personal injury. If ASH Networks develops a benefit management program or network for workers' compensation, auto medical coverage and third party personal injury Payors, Contracted Chiropractor will be offered an amendment to this Agreement in order to be eligible for such programs or

Case 3:14-cv-02022   Document 30-7   Filed 12/23/14   Page 25 of 83 PageID #: 352

networks. Contracted Chiropractor will be included in benefit management programs or networks for workers' compensation, auto med-pay and third party personal injury Payors only if the Contracted Chiropractor agrees in advance and in writing to participate through an amendment to this Agreement.

3.04 **Distribution of Revised Agreement, Attachments, Amendments, and Operations Manual**. ASH Networks shall prepare and be responsible for distributing any updated Agreements, new or updated attachments (including but not limited to those listed below), Payor Summaries, amendments and/or Operations Manuals, which may be revised by ASH Networks in accordance with ARTICLE 23 of this Agreement. Set forth below are brief descriptions of the various attachments to this Agreement.

**Attachment A** – <u>Contracted Chiropractor Information Sheet</u> – This attachment describes key information pertaining to the Contracted Chiropractor and Contracted Chiropractor's offices. Demographic information, insurance information and tax identification data are required to be provided by Contracted Chiropractor in Attachment A and shall be updated by Contracted Chiropractor any time this information changes.

**Attachment B** – <u>ASH Networks Contact Person Regarding Disputes</u> – This attachment informs the Contracted Chiropractor of the party at ASH Networks to be contacted should any contractual dispute arise.

**Attachment C** – <u>Excluded Payors</u> – When applicable, this attachment will be sent by ASH Networks to inform the Contracted Chiropractor of specific Payor programs for which Contracted Chiropractor is excluded from participating for purposes of the provision of Covered Services under a Member Benefit Plan or Affinity Services to Members.

**Attachment D** – <u>Payor Summaries</u> – A Payor Summary describes Covered Services, Member Payments, Fee Schedule Amounts, eligible product lines, and the relevant terms and conditions for rendering Chiropractic Services under varying types of Member Benefit Plans offered by ASH Networks to Payors. A Payor Summary may apply to one or multiple Payors.

**Attachment E** – <u>Medicare Advantage Downstream Entity Contract</u> – This attachment describes additional contractual requirements applicable to this Agreement as required by the Center for Medicare and Medicaid Services (CMS) formerly Health Care Financing Administration or HCFA. Such requirements must be complied with by Contracted Chiropractor in the treatment of Members that are eligible and enrolled in any Medicare Advantage benefit plan represented by a Payor Summary.

**Attachment F** – <u>Clinical Management Programs</u> – This attachment describes the contractual, clinical, customer service and administrative requirements of the Clinical Services Management Program, Clinical Performance Management Program and Medical Records Evaluation Program that shall be met by Contracted Chiropractor.

**Attachment G** – <u>Claim Submission and Payment</u> – This attachment describes the contractual, customer service and administrative requirements for claim submission and payment that must be met by Contracted Chiropractor.

**Attachment H** – [RESERVED]

**Attachment I** – <u>State Specific Requirements</u> – This attachment identifies unique requirements specific to the state in which Contracted Chiropractor is licensed and renders services to ASH Networks Members. Such requirements, as established by ASH Networks, are based upon, among other things, state laws and regulations, and ASH Networks and/or Payor specific operational requirements, such as unique malpractice insurance coverage requirements.

**Attachment J** – <u>Electronic Transaction Processing (ETP) Program</u> – This attachment describes the electronic submission process created by ASH Networks.

**Attachment K** – <u>Treatment Form Waiver Program</u> – This attachment describes the waiver, applicable in some circumstances, by ASH Networks of the Clinical Management Program's Clinical Treatment Form submission requirement.

**Attachment L** – [RESERVED]

**Attachment M** – [RESERVED]

Not To Be Reproduced or Disclosed Without Written Permission

**Attachment N -** Representations and Warranties of Applicant or Contracted Chiropractor – This attachment includes Applicant or Contracted Chiropractor's representations and warranties with respect to Compliance with Clinical Practice Guidelines and Policies, Compliance with Governmental Program Participation Requirements, Compliance with Patient Safety Guidelines and Compliance with Facility Requirements.

3.05    **No New Patients**. For the purposes of this Section, the terms "Patient", "New Patient", and "ASH Networks Patient" shall have the following meanings:

"Patient" means a person who received treatment from the Contracted Chiropractor within the past twelve (12) months.

"New Patient" means a person who has not previously received treatment from the Contracted Chiropractor.

"ASH Networks Patient" means a Patient who (a) is a Member under a Member Benefit Plan administered by ASH Networks, and (b) for whom a Clinical Treatment Form or a claim was submitted to ASH Networks within the past twelve (12) months.

Notwithstanding anything to the contrary in this Section or in ARTICLE 23 of this Agreement, Contracted Chiropractor may elect to not accept Members from ASH Networks as New Patients, if the Contracted Chiropractor has closed Contracted Chiropractor's practice to all New Patients (including both Members from ASH Networks and non-Members). Contracted Chiropractor may also elect to not accept Members from ASH Networks as new patients if the Contracted Chiropractor has a minimum of twenty-five (25) ASH Networks' Patients and the number of ASH Networks Patients exceeds 50% (percent) of the Contracted Chiropractor's total number of Patients.

If the above criteria are met, a Contracted Chiropractor that wishes to not accept Members from ASH Networks as new patients must submit a written request to ASH Networks. The Contracted Chiropractor must include an attestation that the above criteria have been met with the request. Once approved by ASH Networks, Contracted Chiropractor's request will remain in effect until the earlier of (a) the date the Contracted Chiropractor notifies ASH Networks that the above criteria are no longer being met, or (b) the date ASH Networks determines that the above criteria is no longer being met, or (c) if the Contracted Chiropractor provides written notice to ASH Networks that Contracted Chiropractor intends to resume accepting Members from ASH Networks as new patients. ASH Networks will notify Contracted Chiropractor of the effective date for accepting new patients.

The Contracted Chiropractor agrees to continue to treat all Members administered by ASH Networks that are currently or have been patients in the last twelve (12) months in addition to any current patient who is not an ASH Member that becomes an ASH Member during the time that the Contracted Chiropractor is not accepting new Members.

Upon receipt of the written request and verification by ASH Networks that the criteria above have been satisfied, ASH Networks shall inform the Contracted Chiropractor that the request has been approved. The effective date of not accepting new Members will be the first of the month following sixty (60) days from the date of notification from ASH Networks that the request has been approved. This time period will permit ASH Networks to communicate the change in status to Payors and to update provider directories accordingly.

If the Contracted Chiropractor voluntarily elects to accept a Member as a New Patient during the period of time that ASH Networks and the Contracted Chiropractor have agreed that the Contracted Chiropractor is not accepting Members as New Patients, ASH Networks shall consider Contracted Chiropractor's election to see new patients as having rescinded his or her status as not accepting new patients. ASH Networks will notify Contracted Chiropractor of the change in status due to these circumstances.

Should the Contracted Chiropractor request to accept new patients or ASH Networks confirms that the criteria to not accept Members as New Patients is no longer being satisfied, ASH Networks will change the status of not accepting Members as New Patients to accepting Members as New Patients and will notify Contracted Chiropractor of the effective date for accepting Members as New Patients. ASH Networks will communicate the change in status to Payors and update provider directories accordingly within thirty (30) days.

3.06    **Furnish Operations Manual**. ASH Networks shall furnish Contracted Chiropractor with an Operations Manual when ASH Networks provides Contracted Chiropractor with an Agreement. ASH Networks' Operations Manual is also available on ASHLink at www.ashlink.com.

3.07    **Use of Provider Information by ASH Networks and Payors**. ASH Networks shall include Contracted Chiropractor in ASH Networks' network directory and/or websites and shall notify all Payors within ninety (90) days, after the Effective Date of this Agreement, of the addition of Contracted Chiropractor to ASH Networks' network. ASH Networks shall publish

demographic information regarding Contracted Chiropractor, including but not limited to Contracted Chiropractor's name, address, telephone number, education, and languages spoken. Such demographic information shall also be provided by ASH Networks to Payors for inclusion by Payors in provider directories, websites and/or information systems for communication to Members, potential Members and employer groups. ASH Networks shall request that Contracted Chiropractor be added to any Payor provider directory, website, and/or other source of information. However, ASH Networks does not guarantee the timeliness of any Payors': (i) addition of Contracted Chiropractor to provider directories and other such sources of information; (ii) printing and distribution of new provider directories with the inclusion of Contracted Chiropractor's name; or (iii) accuracy of Contracted Chiropractor's information in provider directories and other sources of information. If Payor does not accept Contracted Chiropractor for the provision of services to Members covered under Payor's Member Benefit Plan and/or Affinity Program, Contracted Chiropractor agrees that ASH Networks reserves the right to exclude Contracted Chiropractor from participation in any one or more specified Payor plans or programs even though Contracted Chiropractor may be otherwise eligible to participate in ASH Networks. Such exclusion will be referenced in Attachment C of this Agreement.

3.08 **Deletion of Contracted Chiropractor from Network Directories**. ASH Networks will notify all Payors, no later than thirty (30) days after the effective date of Contracted Chiropractor's resignation or termination of this Agreement, of the need to delete Contracted Chiropractor's information from network directories and/or other such sources of provider information. Contracted Chiropractor acknowledges that materials, including but not limited to network directories provided to Members by Payor, may continue to reflect that Contracted Chiropractor is participating in the ASH Networks and/or Payor network for some period of time following Contracted Chiropractor's termination.

3.09 **No Representation or Guarantee of Member Enrollment**. ASH Networks makes no representation or guarantees concerning the number of Members, if any, that will access Contracted Chiropractor under this Agreement.

3.10 **Immediate Notification by Contracted Chiropractor of Certain Occurrences**. Circumstances may impact the Contracted Chiropractor's professional status.  ASH Networks, Payors, regulators and accreditation agencies have expectations and/or requirements for Contracted Chiropractors' professional status. To satisfy these expectations, ASH Networks will monitor and promptly address issues related to any change in Contracted Chiropractors' status as described below. Therefore, Contracted Chiropractor shall notify ASH Networks in writing by overnight mail service or fax within forty-eight (48) hours of the occurrence of any of the following:

    (a)    The filing of any claims for professional negligence or malpractice against Contracted Chiropractor or the institution of any action, litigation or lawsuit in that regard, regardless of whether the claim involves a Member;

    (b)    The commencement of any voluntary or involuntary bankruptcy proceedings by or against Contracted Chiropractor or any similar proceedings;

    (c)    Contracted Chiropractor's loss of any license required for the provision of chiropractic services;

    (d)    Upon notification to Contracted Chiropractor of the initiation of any action by law enforcement, a state board or other regulatory body or its agents  involving Contracted Chiropractor or Contracted Chiropractor's license including inquiry, investigation and/or accusation; the suspension, revocation or imposition of any limitations on any such license; the commencement of any disciplinary, non-disciplinary, educational or enforcement action involving Contracted Chiropractor by the state chiropractic licensing agency, the U.S. Department of Health and Human Services, the Center for Medicare and Medicaid Services, the Office of the Inspector General, any other federal or state regulatory agency, or any licensing or professional agency or body; or the commencement or institution of any similar action;

    (e)    Any lapse of professional liability (malpractice) or general liability insurance maintained by Contracted Chiropractor; any denial, cancellation or revocation of any such insurance; or any reduction in the amount of such insurance carried by or issued to Contracted Chiropractor;

    (f)    The filing of any criminal charges against Contracted Chiropractor by a District Attorney, the State Attorney General or any other government official or agency;

    (g)    Contracted Chiropractor's termination, for cause, from a provider network offered by any other payor, including, without limitation, any health care service plan or health maintenance organization, any health insurer, any preferred provider organization, any employer or any trust fund;

Not To Be Reproduced Or Distributed Without Prior Written Permission

ASH Networks CONFIDENTIAL — Not to be reproduced without written disclosure — Not to be reproduced without written disclosure

(h)      Any other occurrence or condition which might impair the ability of Contracted Chiropractor to perform Contracted Chiropractor's responsibilities under this Agreement including, but not limited to, any disability, impairment, or medical condition which would affect Contracted Chiropractor's ability to provide Chiropractic Services to Members and any related current or proposed accommodation; or

(i)      The sale or transfer of all or substantially all of the assets of Contracted Chiropractor's practice or Credentialed Chiropractic Facility listed in Attachment A; or any other sale of any assets of Contracted Chiropractor's practice or Credentialed Chiropractic Facility listed in Attachment A, if the sale or transfer may result in a significant or material change in the management or operation of the Contracted Chiropractor's practice.

3.11    **Information**. Contracted Chiropractor shall provide ASH Networks, upon request by ASH Networks, any information that is related to the terms of this Agreement and to Members, subject to applicable state and federal laws pertaining to confidentiality of Member information.

3.12    **Notification of Change in Any Information in Contracted Chiropractor Information Sheet**. Contracted Chiropractor agrees to notify ASH Networks at least sixty (60) days in advance of any change in Contracted Chiropractor's name, address, telephone number, taxpayer identification number, or any other information listed in Attachment A. For purposes of this Agreement, Contracted Chiropractor's taxpayer identification number means Contracted Chiropractor's employer identification number. Notwithstanding the foregoing, if Contracted Chiropractor is a sole proprietor who does not employ another Contracted Chiropractor for the purpose of rendering Chiropractic Services, Contracted Chiropractor may use his or her social security number as Contracted Chiropractor's taxpayer identification number. If Contracted Chiropractor is an employee, independent contractor, or owner of, or a partner in a Group Practice or a Professional Corporation, then the owner of the tax identification number used in Attachment A of this Agreement must also be a Contracted Chiropractor or a Contracted Provider with ASH Networks. In such case, the Contracted Chiropractor must be employed by or under contract with the Contracted Provider, which employment or contractual relationship is legally permitted, and for the purpose of providing professional services within the scope of professional licensure of the Contracted Provider. ASH Networks reserves the right to exclude any new or additional office location of Contracted Chiropractor from participation in ASH Networks.

3.13    **Requirements for Professional Corporation or Group Practice**. If Contracted Chiropractor is a Professional Corporation or a Group Practice, Contracted Chiropractor must fulfill the following additional requirements:

(a)      An authorized officer of the Professional Corporation, one of the partners in the Group Practice who is authorized to act on behalf of the partnership or the sole proprietor must have executed a Chiropractic Provider Services Agreement with ASH Networks on behalf of the Professional Corporation or the Group Practice;

(b)      Each Contracted Chiropractor who will provide Chiropractic Services to Members on behalf of the Professional Corporation or the Group Practice must have executed a Chiropractic Provider Services Agreement with ASH Networks;

(c)      If Contracted Chiropractor is a Professional Corporation, each chiropractor who will provide Chiropractic Services on behalf of the Professional Corporation must be an employee of the Professional Corporation and a Contracted Chiropractor with ASH Networks. If Chiropractor is a Group Practice, each Chiropractor who will provide Chiropractic Services on behalf of the Group Practice, other than a partner in the partnership or the sole proprietor, must be an employee of the Group Practice and a Contracted Chiropractor with ASH Networks. All Chiropractic Services provided under this Agreement between the Professional Corporation or the Group Practice and ASH Networks must be billed in the name of the Professional Corporation or the Group Practice, regardless of whether the Chiropractic Services were provided by a Contracted Chiropractor who is a shareholder, officer, director or employee of the Professional Corporation, partner in the Group Practice, the sole proprietor of the Group Practice or an employee of the Group Practice;

(d)      The Professional Corporation or the Group Practice must maintain its own employer identification number for use as its taxpayer identification number and may not use the social security number of any individual, including any shareholder of the Professional Corporation or any partner in the Group Practice, for billing or similar purposes. A sole proprietor shall use his/her social security number as his/her taxpayer identification number;

<table>
<tr><td>(e)</td><td>Complete and submit a W-9 form certifying that the individual signing the W-9 form on behalf of the Professional Corporation or Group Practice is a: (i) sole practitioner; (ii) member of a Professional Corporation; or (iii) a partner in a Group Practice. If the individual is a member of a Professional Corporation or a partner in a Group Practice, then the owner of the tax identification number used in Attachment A to this Agreement must be a Contracted Chiropractor; and</td></tr>
</table>

 (e) Complete and submit a W-9 form certifying that the individual signing the W-9 form on behalf of the Professional Corporation or Group Practice is a: (i) sole practitioner; (ii) member of a Professional Corporation; or (iii) a partner in a Group Practice. If the individual is a member of a Professional Corporation or a partner in a Group Practice, then the owner of the tax identification number used in Attachment A to this Agreement must be a Contracted Chiropractor; and

 (f) In the event that the Contracted Chiropractor, who is the owner of the Professional Corporation or Group Practice Tax Identification Number, resigns or is terminated, ASH Networks shall re-evaluate the credentials of both the remaining Contracted Chiropractors and the Professional Corporation or Group Practice to determine the continued participation or termination of the remaining Contracted Chiropractors.

3.14 **Non-Interference with Property and Contract Rights**. During the term of this Agreement and for one (1) year following the date of its termination, Contracted Chiropractor agrees that Contracted Chiropractor shall not:

 (a) Interfere with ASH Networks' property rights or contract rights, including, without limitation, ASH Networks' contractual relationship with any Member or Payor;

 (b) Advise or counsel any Member to dis-enroll from ASH Networks or advise or counsel any Payor, Contracted Chiropractor, or other ASH Networks Contracted Provider to terminate its contract with ASH Networks or advise or counsel any other party which has contracted with ASH Networks or any Payor for the provision of Chiropractic Services to terminate, cancel or decline to renew its contract;

 (c) Solicit any Member or any other party which has enrolled or contracted with ASH Networks or Payor for the provision of Chiropractic Services to become a Member, subscriber, insured or other type of covered person under coverage offered by any other health care service plan, health maintenance organization, health insurer, preferred provider organization or any other similar organization, plan or program which provides health coverage; or

 (d) Harass, threaten or attempt to intimidate any Member or Contracted Chiropractor regarding any communication between the Member and/or Contracted Chiropractor and ASH Networks, a Member Benefit Plan, Affinity Program, a Payor or a Contracted Ancillary Provider.

At no time may Contracted Chiropractor disclose to any party any proprietary, confidential or other information that is the property of ASH Networks or any Payor or that was obtained by Contracted Chiropractor through its relationship with ASH Networks under, or in connection with, this Agreement.

Nothing in this Section shall prevent or be construed to prevent Contracted Chiropractor from advocating for appropriate health care for any patient of Contracted Chiropractor, in accordance with and subject to all applicable federal or state laws or regulations.

If Contracted Chiropractor violates this Section, Contracted Chiropractor acknowledges that Contracted Chiropractor will be responsible for paying any and all actual damages incurred by ASH Networks or any Payor as a result of that violation and may be liable for other costs, expenses, damages, claims or liabilities; and, if money damages are insufficient to compensate ASH Networks or Payor for the violation of this Section, Contracted Chiropractor may be subject to an injunction prohibiting the activity which constitutes a violation of this Section and/or other equitable relief. Nothing in this Section shall affect any of ASH Networks' other rights under this Agreement at law or in equity.

## ARTICLE 4 TERM.

The initial term of this Agreement shall be from the Effective Date specified in Article 26 of this Agreement through and including December 31st of that same year, subject to the termination provisions set forth in this Agreement. After the initial term, this Agreement shall automatically renew for one (1) year on each successive January 1st, unless terminated by either Party, as provided herein.

## ARTICLE 5 TERMINATION.

5.01 **Contracted Chiropractor Termination of this Agreement With or Without Cause With Notice**. Notwithstanding any other provision in this Agreement, Contracted Chiropractor may terminate this Agreement at any time with or without cause by providing at least sixty (60) days prior written notice of termination to ASH Networks, or as otherwise specified by state

Case 3:14-cv-02022 Document 30-7 Filed 12/23/14 Page 30 of 83 PageID #: 357

law. Such notice shall be provided in accordance with ARTICLE 19 of this Agreement. The termination notification period will commence on the date that ASH Networks receives Contracted Chiropractor's notice. Both Contracted Chiropractor and ASH Networks acknowledge and agree that Contracted Chiropractor's issuance of a notice terminating this Agreement with or without cause need not specify any cause, reason, grounds, justification or other basis for the termination other than the exercise of Contracted Chiropractor's rights under this Section. This sixty-day (60) notice requirement will allow time for ASH Networks to notify Payors of Contracted Chiropractor's termination so that Payors may in turn provide advance notice to Members affected by this change. ASH Networks shall not terminate this Agreement without cause.

5.02 **ASH Networks Termination of this Agreement for Cause with Thirty (30) Days Notice**. In the event of a material breach of any provision of this Agreement by Contracted Chiropractor, ASH Networks may terminate this Agreement by providing Contracted Chiropractor with at least thirty (30) days prior written notice of termination, unless otherwise specified by state law. The notice shall describe the nature of the breach, the effective date of the termination (which will not precede the time at which any applicable appeal would be concluded assuming Contracted Chiropractor timely pursues appeal rights under Section 5.04), and describe Contracted Chiropractor's right to appeal pursuant to Section 5.04 of this Agreement.

5.03 **ASH Networks Immediate Termination of This Agreement for Cause with Notice**. ASH Networks may terminate this Agreement immediately.

(a)     In the event of a material breach of any provision of this Agreement;

(b)     In the event Contracted Chiropractor poses an imminent danger to a Member or the public health;

(c)     If ASH Networks determines, through its Clinical Performance Management Program, Medical Records Evaluation Program or Clinical Services Management Program, that the chiropractic services rendered to a Member by Contracted Chiropractor do not meet the professionally recognized standards of practice and/or potentially place a Member at risk;

(d)     If ASH Networks determines, through its Clinical Performance Management Program, Medical Records Evaluation Program or Clinical Services Management Program, that the chiropractic services rendered or offered at the Contracted Chiropractor's Credentialed Facility do not meet professionally recognized standards of chiropractic practice and/or potentially place a Member at risk;

(e)     If Contracted Chiropractor does not maintain licenses required to perform Chiropractic Services under this Agreement or fails to comply with applicable state and federal laws and regulations;

(f)     If Contracted Chiropractor ceases to be an employee of the sole proprietor, Group Practice or Professional Corporation;

(g)     In the event of an act of fraud by Contracted Chiropractor. This includes, but is not limited to, any material misrepresentation, falsification or failure to provide accurate information to ASH Networks, a Payor, a Member, or a contracted ancillary provider by Contracted Chiropractor or Contracted Chiropractor's staff, agent or representative in connection with any document or information relating to a Member, to any aspect of Contracted Chiropractor's participation with ASH Networks, a Payor or a Member Benefit Plan, or utilized by Contracted Chiropractor and/or Contracted Chiropractor's staff, agents or representatives in Credentialed Chiropractic Facility. Such documents and information include, but are not limited to, patient Medical Records, ASH Networks standardized forms, claim submissions, appeals submissions, and contractual documents;

(h)     Contracted Chiropractor's commission of any act or Contracted Chiropractor's conduct or any allegation of conduct, for which Contracted Chiropractor's license may be subject to revocation, suspension or the imposition of any limitation, whether or not actually revoked, suspended or limited, or if Contracted Chiropractor is otherwise disciplined by any licensing, regulatory or professional agency with jurisdiction over Contracted Chiropractor;

(i)     The institution of any action against Contracted Chiropractor or Contracted Chiropractor's license or the commencement of any disciplinary or enforcement action against Contracted Chiropractor by the State Board of Chiropractic Examiners, the State Department of Health, the U.S. Department of Health and Human Services, the Office of the Inspector General, the Center for

Case 3:14-cv-02022   Document 30-7   Filed 12/23/14   Page 31 of 83 PageID #: 358

Medicare and Medicaid Services (formerly HCFA), or any other licensing, regulatory or professional agency, or the commencement or institution of any similar action;

(j) The filing and/or conviction of any criminal charges against Contracted Chiropractor by the District Attorney, the State Attorney General, or any other federal or state government agency;

(k) The termination of any contractual relationship other than this Agreement between Contracted Chiropractor and ASH Networks or an ASH Networks affiliate, and/or any adverse change in the scope or type of services that Contracted Chiropractor is credentialed by ASH Networks or an ASH Networks affiliate to provide;

(l) Any occurrence or condition which materially impairs the ability of Contracted Chiropractor to discharge Contracted Chiropractor's responsibilities under this Agreement; or

(m) Contracted Chiropractor's engagement in threatening or abusive behavior toward ASH Networks or its employees, ASH Networks' affiliates or its employees, Payors or their employees or any Member.

Such termination shall occur immediately upon written notice by ASH Networks to Contracted Chiropractor upon any of the occurrences set out in this Section. The notice of termination shall describe the reason for termination, the effective date of the termination, and describe Contracted Chiropractor's right to appeal pursuant to Section 5.04 of this Agreement

5.04 **Contracted Chiropractor Appeal of Termination**. Any notice of termination issued by ASH Networks shall state that the Contracted Chiropractor is entitled to appeal the termination pursuant to Sections 5.04.1-5.04.2 or that the Contracted Chiropractor is entitled to an appeal pursuant to Sections 5.04.3-5.04.4. ASH Networks' appeals process includes the following procedures:

 5.04.1 Initial Clinical Appeal. Contracted Chiropractor may appeal ASH Networks' termination for cause under Sections 5.02 or 5.03 and other actions giving rise to appeal rights as set forth in this Agreement upon receipt of a notice of termination or other document indicating the right to appeal pursuant to Sections 5.04.1-5.04.2. The appeal is commenced by providing a written request to ASH Networks' Clinical Quality Management Department no more than thirty (30) days after receipt of the notice of termination or other notice specifying that an appeal was available under this section, unless otherwise specified by state law. The initial appeal will be reviewed by ASH Networks' Clinical Provider Review Committee (CPRC). If the CPRC's determination is to uphold the termination or other adverse action giving rise to the appeal right, ASH Networks will give notice of this determination as provided in ARTICLE 19. Such notice, where applicable, will state a termination date that will be effective unless Contracted Chiropractor timely gives notice of its intent to request a Second Level Appeal and Hearing under Section 5.04.2 Contracted Chiropractor may request a Second Level Appeal and Hearing as set out in Section 5.04.2 below.

 5.04.2 Second Level Clinical Appeal and Hearing. Contracted Chiropractor may request a Second Level Appeal and Hearing of a CPRC determination issued pursuant to Section 5.04.1 by providing a written request to ASH Networks' Clinical Quality Management Department within thirty (30) days following notification of the CPRC's determination. ASH Networks will acknowledge receipt of the appeal request within five (5) days of receipt. ASH Networks shall provide to Contracted Chiropractor specific hearing procedures for the appeal before ASH Networks' Hearing Panel that is comprised of three (3) Contracted Chiropractors. Notice of the Hearing Panel determination, and the effective date of any termination, where applicable, will be provided pursuant to ARTICLE 19.

 5.04.3 Initial Administrative Appeal. Contracted Chiropractor may appeal ASH Networks' termination for cause under Sections 5.02 and 5.03 and other actions giving rise to appeal rights as set forth in this Agreement upon receipt of a notice of termination or other document indicating the right to appeal pursuant to Sections 5.04.3-5.04.4. The appeal is commenced by providing a written request to ASH Networks' Provider Relations Department no more than thirty (30) days after receipt of the notice of termination or other notice specifying that an appeal was available under this section, unless otherwise specified by state law. The initial appeal will be to ASH Networks' Administrative Review Committee or a subcommittee thereof (ARC). The Administrative Review Committee is comprised of ASH Networks' senior clinical staff, various officers, department managers and an ASH Networks Contracted Chiropractor.

 If the ARC's determination is to rescind the termination or other adverse action, the ARC may specify conditions for, and timing of, such rescission. If dissatisfied with any conditions of reinstatement, or if the

Case 3:14-cv-02022 Document 30-7 Filed 12/23/14 Page 32 of 83 PageID #: 359

ARC's determination is to uphold a termination or other adverse action, Contracted Chiropractor may seek a Second Level Appeal/Hearing under Section 5.04.4. Notice of the ARC determination will be provided pursuant to ARTICLE 19. Such notice, where applicable, will state a termination date that will be effective unless Contracted Chiropractor timely gives notice of its intent to request a Second Level Appeal/Hearing under Section 5.04.4.

5.04.4   <u>Second Level Administrative Appeal/Hearing</u>. Contracted Chiropractor may request a Second Level Appeal/Hearing concerning an ARC determination issued pursuant to Section 5.04.3 by providing a written request to ASH Networks' Provider Relations Department as specified within thirty (30) days following notification of the ARC's determination. The Second Level Appeal/Hearing under this Section 5.04.4 will take place before the Executive Review Committee, or its subcommittee (ERC). ASH Networks will acknowledge receipt of the Second Level Appeal/Hearing request within five (5) days of receipt. The ERC will resolve the appeal within sixty (60) days after receipt of the notice requesting the appeal.

If the ERC's determination is to rescind the termination or rescind any other adverse action, the ERC may specify conditions for, and timing of, such rescission. Notice of the ERC determination, and the effective date of any termination, where applicable, will be provided pursuant to ARTICLE 19.

5.05   <u>**Arbitration**</u>. Following the final conclusion of any Second Level Appeal, either ASH Networks or Contracted Chiropractor may submit the matter to arbitration pursuant to ARTICLE 17 of this Agreement.

5.06   <u>**Term Effective Date**</u>. With respect to terminations under Section 5.02, such appeal rights or hearing rights, if timely asserted and preserved, shall be available to Contracted Chiropractor before the effective date of termination and may alter the effective date of termination. With respect to terminations under Section 5.03, such appeal rights, hearing rights or dispute resolution process, if timely asserted and preserved, shall be available to Contracted Chiropractor after the effective date of termination and shall not alter the effective date of termination. If a termination under Section 5.03 is rescinded, ASH Networks may provide Contracted Chiropractor with a new Effective Date subsequent to the termination date.

5.07   <u>**Effect of Termination**</u>. Except as otherwise provided herein, this Agreement shall be of no further force or effect following the Effective Date of any termination.

5.08   <u>**Survival of Certain Contractual Provisions after Termination**</u>. Notwithstanding any other provision of this Agreement, the following provisions of this Agreement shall survive any termination of this Agreement: 2.03, 3.04, 5.09, ARTICLE 6, ARTICLE 7, ARTICLE 8, ARTICLE 9, ARTICLE 14, ARTICLE 16, ARTICLE 17, ARTICLE 18, ARTICLE 20, ARTICLE 24, Attachment E, Section 4.02, Attachment E, Article 9 and Attachment F, Sections 2.05 and 2.08, and Attachment G, Section 7.0.

5.09   <u>**Contracted Chiropractor Responsibilities after Termination**</u>. Contracted Chiropractor understands that materials such as network directories provided to Member by Payor may continue to reflect that Contracted Chiropractor is participating in the ASH Networks and/or Payor network for some period of time following Contracted Chiropractor's termination. Some Members may be unaware that Contracted Chiropractor was terminated. Therefore, to avoid Member confusion regarding Contracted Chiropractor's status with ASH Networks and/or Payors, for a period of one (1) year following the termination of this Agreement, Contracted Chiropractor shall be financially and contractually responsible to notify, in writing, any Member covered by any Payor Summary, who seeks Chiropractic Services from Contracted Chiropractor, that Contracted Chiropractor is no longer a Contracted Chiropractor and is ineligible for reimbursement from ASH Networks. Nothing in this Section shall preclude a chiropractor who is no longer a Contracted Chiropractor (or who is subject to an exclusion) from continuing to provide chiropractic services to Members. If Contracted Chiropractor treats a Member after termination of this Agreement, Contracted Chiropractor agrees to waive all charges for providing services to that Member for any Chiropractic Services provided to the Member after termination unless Contracted Chiropractor has notified the Member in advance and in writing that Contracted Chiropractor is no longer a Contracted Chiropractor and/or there is a relevant exclusion and thus Contracted Chiropractor is ineligible for reimbursement from ASH Networks or Payor for providing services to that Member and Member has agreed in writing in advance to accept sole responsibility to pay for all services. Where this agreement has been terminated, Contracted Chiropractor further agrees to notify any Member in advance, and in writing, that the charges incurred for services rendered by any Contracted Ancillary Provider, Primary Care Physician or other Contracted Chiropractor, as a result of any referral Contracted Chiropractor may make for such Member, may be ineligible for reimbursement by ASH Networks and/or the applicable Payor. Contracted Chiropractor further agrees to assume full financial responsibility for charges incurred for services rendered as a result of any referral by Contracted Chiropractor after this agreement has been terminated.

5.10   <u>**Contracted Chiropractor Responsibilities During Termination Notice Period**</u>. Contracted Chiropractor agrees to provide Covered Services to Members who are established patients during the termination notification period. Contracted

Chiropractor agrees not to accept any new Members requesting an initial examination and other Covered Services during the termination notification period. With respect to terminations under Section 5.02, the termination notification period is the period following the exhaustion of appeal rights or hearing rights available to Contracted Chiropractor, and ending on the date of termination. With respect to terminations under Section 5.03, the termination notification period begins immediately upon written notice by ASH Networks to Contracted Chiropractor and ends on the date of termination. Contracted Chiropractor agrees to refer any new Members who seek Chiropractic Services from Contracted Chiropractor during the termination notice period to other Contracted Chiropractors. Contracted Chiropractor agrees that ASH Networks is not required to approve claims for Covered Services that are rendered during the termination notification period for new Members. Contracted Chiropractor agrees to waive all charges for Covered Services rendered during the termination notification period for new Members.

## ARTICLE 6     INSURANCE.

6.01     **Professional Liability Insurance**. Contracted Chiropractor shall maintain professional liability (malpractice) insurance to cover all services provided to Members under the terms of this Agreement, in accordance with ASH Networks' Professional Liability Insurance requirements as set forth in Attachment I to this Agreement, and of standard form in the applicable state.

Contracted Chiropractor must maintain professional liability coverage for all aspects of Contracted Chiropractor's practice including, but not limited to, (i) coverage for the use of any devices or equipment which Contracted Chiropractor intends to use in such practice; and (ii) coverage for all claims arising from Contracted Chiropractor's professional conduct, wherever it occurs.

Contracted Chiropractor must procure a "reporting endorsement" or "tail" coverage for a period of one (1) year after the expiration of any "claims made" policy. Coverage under the "reporting endorsement" or "tail" coverage shall cover Contracted Chiropractor under the policy and shall not limit or restrict coverage as to ASH Networks or Members. Any special "reporting endorsement" or policy provisions shall provide coverage to Contracted Chiropractor and shall not limit or restrict coverage as to ASH Networks or Members.

Any professional liability policy procured by Contracted Chiropractor, including any tail coverage policy, shall require the insurer to defend any claim or suit against Contracted Chiropractor during the policy period.

Neither Contracted Chiropractor nor Contracted Chiropractor's insurer shall require that Members execute an arbitration agreement which requires that:  (i) all medical malpractice disputes involving Contracted Chiropractor shall be decided by arbitration; and (ii) the Member thereby waives the Member's constitutional right to a jury or court trial. Contracted Chiropractor may request that Members sign an arbitration agreement; however, if the Member chooses not to sign, Contracted Chiropractor shall not refuse to render Chiropractic Services to that Member.

If Contracted Chiropractor's insurer and insurance coverage do not meet the requirements of this Section and Attachment I, Contracted Chiropractor's insurance coverage shall be unacceptable to ASH Networks.

6.02     **Comprehensive General Liability Insurance**. Contracted Chiropractor shall maintain comprehensive general liability insurance acceptable to ASH Networks and of standard form in the applicable state, in accordance with the general liability insurance requirements set forth in Attachment I to this Agreement.

6.03     **Notification of Change in Insurance**. Contracted Chiropractor shall notify ASH Networks within five (5) days of any material change in professional liability and comprehensive general liability insurance coverage required by this Article. Contracted Chiropractor shall provide certification of professional liability insurance coverage to comply with ASH Networks' Credentialing/Recredentialing Program.

6.04     **Other Insurance**. Contracted Chiropractor is responsible to maintain all necessary insurance policies, including but not limited to Workers' Compensation, in amounts necessary to provide adequate coverage for all liabilities.

## ARTICLE 7     HOLD HARMLESS.

To the extent not covered by insurance, Contracted Chiropractor shall be solely responsible for and shall hold ASH Networks free and harmless from any claims, losses, damages, liabilities, costs, expenses, attorneys' fees and costs or obligations arising from or relating to any act or omission of Contracted Chiropractor, Contracted Chiropractor's agents, partners, associates, employees or representatives in providing or failing to provide Chiropractic Services to Members or arising from or relating to any act or responsibility of Contracted Chiropractor. To the extent not covered by insurance, ASH Networks shall be solely responsible for and shall hold Contracted Chiropractor free and harmless from any claims, losses, damages, liabilities, costs, expenses, attorneys' fees and

Case 3:14-cv-02022   Document 30-7   Filed 12/23/14   Page 34 of 83 PageID #: 361

costs or obligations arising from or relating to any act or omission of ASH Networks, its agents, employees or representatives in connection with ASH Networks' responsibilities under this Agreement.

**ARTICLE 8      CONFIDENTIALITY, RECORDS AND DATA COLLECTION.**

8.01    **Maintenance of Records**. Contracted Chiropractor shall maintain and provide ASH Networks, Payors, the State Department of Insurance, the State Department of Health, U.S. Department of Health and Human Services, U.S. Department of Justice, Office of Inspector General, Center for Medicare and Medicaid Services (formerly HCFA) and/or other federal and state agencies, with all records relating to services provided to each Member by Contracted Chiropractor, in such form and containing such information as is required by applicable federal and state law, including medical/clinical histories, records, and reports from other health care providers received by Contracted Chiropractor and such other information as ASH Networks, Payors, or other such agencies may require. Such records shall be retained by Contracted Chiropractor for at least seven (7) years or for a longer period of time, if required by applicable state or federal laws or regulations. Contracted Chiropractor agrees to maintain Medical Records for seven (7) years following any minor's age of majority or for a longer period of time, if required by applicable state or federal laws or regulations.

8.02    **Confidentiality of Member Information**. ASH Networks and Contracted Chiropractor shall abide by all Federal and State laws and regulations, including the Health Insurance Portability and Accountability Act (HIPAA) of 1996, regarding privacy, security and disclosure of Medical Records, other health information and Member information. Contracted Chiropractor agrees to maintain records and other information with respect to Members in an accurate and timely manner, to provide timely access by Members to the records and information that pertain to them and to safeguard the privacy of any information that identifies a particular Member. Contracted Chiropractor shall limit uses and disclosures of personal information obtained from ASH Networks (including any information received from ASHLink) solely for treatment, payment and related operational purposes permitted or required by this Agreement or as required by law. Information from, or copies of, records may be released only to authorized individuals. Contracted Chiropractor must ensure that unauthorized individuals cannot gain access to or alter patient records. Upon discovering a suspected breach of personal Member information the Contracted Chiropractor obtained from ASH Networks, Contracted Chiropractor shall immediately report the incident to ASH Networks' designated Privacy Officer. Original Medical Records must be released only in accordance with federal or state laws or regulations.

8.03    **Access to Records**. Contracted Chiropractor shall provide access to ASH Networks, at reasonable times upon request by ASH Networks and/or Payor, to inspect books, papers, and records relating to Contracted Chiropractor's performance under this Agreement including, without limitation, access to Member's Medical Records and financial records pertaining to the costs of operations and income received for Chiropractic Services rendered to Members. To the extent required by law, Contracted Chiropractor shall provide access, at reasonable times, upon demand by any governmental regulatory agency responsible for the administration of health care service plans, to inspect Contracted Chiropractor's equipment, books, and records including, without limitation, the Medical Records of Members relating to the provision of Chiropractic Services under this Agreement.

8.04    **Ownership of Medical Records Data and Intellectual Property Rights**. ASH Networks agrees that it does not own Medical Records maintained by Contracted Chiropractor. However, ASH Networks, as reasonably needed or as required by law, has the right with respect to a Contracted Chiropractor submitting a claim for payment for a Member covered under a Member Benefit Plan, to ask for and receive copies of such Medical Records. ASH Networks may review Medical Records for treatment, payment, or health care operations purposes, for reasons required by law, and for other customary purposes such as disease management, patient management, utilization management, quality assurance, quality review, quality management, and audit (including without limitation any audit activities undertaken by ASH Networks to comply with NCQA and URAC accreditation rules). Nothing herein is intended to or should be construed to convey to a Contracted Chiropractor that Contracted Chiropractor has any property interest in (i) ASH Networks data or intellectual property, (ii) products or services offered or provided now or in the future, or (iii) any business, systems or information management process that incorporates any Medical Records or related data obtained by ASH Networks from such Contracted Chiropractor or any reports or data resulting from any such data or processes.

**ARTICLE 9      PROPRIETARY INFORMATION.**

All information, documents, software and other materials of any sort furnished to Contracted Chiropractor by ASH Networks including, without limitation, the Operations Manual, information regarding the Clinical Services Management Program, information regarding the Medical Records Evaluation Program, information regarding the Clinical Performance Management Program, any provider lists, any fee schedules, and any copyrighted or trademarked materials, shall be and remain the property of ASH Networks. Such proprietary information is only to be used by Contracted Chiropractor in connection with the performance of Contracted Chiropractor's obligations under this Agreement and only in the manner provided for in this Agreement. Contracted Chiropractor shall not disclose or use any proprietary information or trade secrets for Contracted Chiropractor's own benefit during the term of this

Case 3:14-cv-02022   Document 30-7   Filed 12/23/14   Page 35 of 83 PageID #: 362

Agreement or after termination of this Agreement, except as authorized in writing by ASH Networks. Contracted Chiropractor shall have no ownership rights in said proprietary information including, but not limited to, copying, use or distribution of said proprietary information.

Contracted Chiropractor will hold all proprietary information in confidence using appropriate safeguards and security to preserve the confidential nature of that information and will not disclose such proprietary information to any third party except (a) as needed to those employees and representatives who have a need to know such information in connection with the Contracted Chiropractor's performance of duties under this Agreement; or (b) if such disclosure is requested or required in any judicial, administrative, or arbitration proceeding, by a governmental agency, or otherwise required by law. Contracted Chiropractor shall be required to request or preserve confidential treatment of provided information, as applicable, in accordance with such disclosures.

Upon termination of this Agreement, Contracted Chiropractor shall return to ASH Networks all proprietary information in Contracted Chiropractor's possession, if requested, and in a manner to be specified by ASH Networks. Contracted Chiropractor shall cooperate with ASH Networks in maintaining the confidentiality of such proprietary information at all times during and after termination of this Agreement.

ASH Networks reserves the right to use Contracted Chiropractor's name, clinic name, address, telephone number, tax identification number, education, languages spoken, clinical techniques, hours of operation and all symbols, trademarks or service marks presently existing or later established by Contracted Chiropractor in any advertising, publication or promotional material to indicate Contracted Chiropractor's availability to provide Chiropractic Services to Members pursuant to this Agreement.

**ARTICLE 10     ADVERTISEMENT OF RELATIONSHIP WITH ASH NETWORKS AND PAYORS.**

ASH Networks' relationship with Payors may not, in all cases, extend to all benefit plans, employer groups, and/or covered persons under Payor's programs. As such, to avoid the potential for confusion by persons covered under a Payor program in which Contracted Chiropractor does not participate, Contracted Chiropractor shall abide by the advertisement and solicitation requirements set forth below.

10.01    **Advertisement by Contracted Chiropractor**. ASH Networks communicates the participation of Contracted Chiropractor in ASH Networks' networks by including Contracted Chiropractor in ASH Networks' and/or Payor's provider directories, websites, or other sources of information to Members. Typically, Payors limit advertisement to Members to such sources of information. Therefore, Contracted Chiropractor shall not advertise any type of relationship with ASH Networks and/or a Payor in any manner, including but not limited to Internet web pages, newspapers, yellow pages, billboards, mass mailings, telemarketing or business cards. Contracted Chiropractor may elect to display and/or distribute materials approved and developed by ASH Networks and/or Payor to promote Member Benefit Plans and/or Affinity Programs.

10.02    **Solicitation by Contracted Chiropractor of Members and/or Payors**. Neither Contracted Chiropractor nor Contracted Chiropractor's staff, agents, and/or representatives shall directly contact any individuals or organizations that Contracted Chiropractor knows to be Members and/or Payors to solicit the use of Contracted Chiropractor's professional services or to offer any type of professional services, seminars, materials or otherwise solicit as patients, Members who are not already established patients of Contracted Chiropractor.

**ARTICLE 11     ASSIGNMENT AND CHANGE OF OWNERSHIP.**

No assignment of the rights or responsibilities of this Agreement shall be made by Contracted Chiropractor without the express written approval of a duly authorized representative of ASH Networks. Any attempted assignment in violation of this provision shall be void as to ASH Networks.

If Contracted Chiropractor sells or transfers part or all of the ownership of a sole proprietorship, Group Practice or Professional Corporation, including the sale or transfer of any partnership interest or shares of stock, this Agreement shall automatically terminate unless Contracted Chiropractor requests and obtains advance written agreement from ASH Networks that this Agreement will remain in force. If Contracted Chiropractor is a sole proprietor and sells or transfers part or all of Contracted Chiropractor's practice, this Agreement shall automatically terminate and the purchaser or transferee shall have no rights under this Agreement. The purchaser or transferee may apply to ASH Networks to enter into an agreement similar to this Agreement. ASH Networks shall have no obligation to enter into any such agreement.

ASH Networks may, in its discretion, assign all or a portion of its rights or responsibilities under this Agreement to any party at any time pursuant to the provisions of ARTICLE 23.

The provisions of this Agreement and obligations arising hereunder shall extend to and be binding upon the Parties hereto and their respective successors and assignees and shall inure to the benefit of the Parties hereto and their respective successors and assignees.

NOT FOR CONFIDENTIAL OR DISCLOSED. May Not Be Reproduced Without Permission.

**ARTICLE 12     FORCE MAJEURE.**

In the event that Contracted Chiropractor's operations are substantially interrupted by acts of war, fire, insurrection, labor disputes, riots, earthquakes or any other acts of nature, Contracted Chiropractor shall be relieved of Contracted Chiropractor's obligations as to those affected operations for the duration of such interruption. In the event that Contracted Chiropractor's ability to render Covered Services is substantially interrupted because of an event described above, ASH Networks shall have the right to terminate this Agreement in accordance with ARTICLE 5 of this Agreement.  Such notice of termination may be withdrawn if ASH Networks determines that Covered Services can be performed despite the event or because the interruption has ended.

**ARTICLE 13     INDEPENDENT CONTRACTORS.**

13.01     None of the provisions of this Agreement shall be construed to create a relationship of agency, representation, joint venture, ownership, control or employment between the Parties, other than that of independent parties contracting solely for the purpose of effectuating this Agreement.

13.02     Contracted Chiropractor shall be responsible solely to eligible Members for Chiropractic Services. Contracted Chiropractor is an independent contractor and ASH Networks shall have no dominion or control over Contracted Chiropractor, Contracted Chiropractor-Member relationship, Contracted Chiropractor's personnel or Contracted Chiropractor's professional services. Contracted Chiropractor and Contracted Chiropractor's employees and agents shall not have any claim, under this Agreement or otherwise, against ASH Networks for vacation pay, sick leave or retirement or other benefits of any kind. During the term of this Agreement or any renewals hereof, Contracted Chiropractor shall be fully responsible and liable for all state and federal income taxes or other taxes to which payments made by ASH Networks to Contracted Chiropractor may become subject. Contracted Chiropractor is responsible to maintain all necessary insurance policies, such as workers' compensation, errors and omissions, professional malpractice liability, and general business liability insurance in amounts necessary to provide adequate coverage for all liabilities.

Notwithstanding any other provision of this Agreement, Contracted Chiropractor shall be free to contract with any other alternative chiropractic delivery system, third party payor or other party.

**ARTICLE 14     GOVERNING LAW.**

This Agreement shall be interpreted and governed by the laws of the state in which Contracted Chiropractor is duly licensed to provide chiropractic services. Any provisions required to be in this Agreement by any law shall bind the Parties hereto, whether or not expressly provided in this Agreement.

**ARTICLE 15     SEVERABILITY.**

In the event any provision of this Agreement is rendered invalid or unenforceable by state or federal law or declared null and void by any court of competent jurisdiction, the remainder of the provisions of this Agreement shall remain in full force and effect. In the event that a provision of this Agreement is rendered invalid or unenforceable or declared null and void as provided herein, and its removal has the effect of materially altering the obligations of either Party in such manner as, in the judgment of the Party affected, will cause serious financial hardship to such Party or will cause such Party to act in violation of its corporate Articles or Bylaws, the Party so affected shall have the right to terminate this Agreement by providing the other Party with at least fifteen (15) days prior written notice.

**ARTICLE 16     DISPUTES BETWEEN CONTRACTED CHIROPRACTOR AND MEMBERS.**

Controversies or claims between Contracted Chiropractor and Members arising out of Contracted Chiropractor's performance of this Agreement shall not be governed by this Agreement except as provided herein. Contracted Chiropractor and Member may seek any appropriate legal action to resolve any such controversy or claim deemed necessary, except as provided in Attachment G to this Agreement.

In the event ASH Networks is informed by either party or becomes aware of a dispute between Contracted Chiropractor and Member, ASH Networks and/or Payor shall determine if such dispute is subject to the provisions of this Agreement and ASH Networks and/or Payor is obligated to address the dispute as an appeal or grievance in accordance with its policies, processes, procedures and standards. Contracted Chiropractor agrees to participate in and to provide such assistance and information to ASH Networks at no cost or expense to ASH Networks as may be necessary or helpful to ASH Networks in administering any Member grievance or appeal and in reviewing and evaluating ASH Networks Member grievances or appeals.

If ASH Networks and/or Payor determines that a dispute between Contracted Chiropractor and Member is not subject to the provisions of this Agreement, ASH Networks may make available to Member or Contracted Chiropractor ASH Networks' grievance

and appeals processes for resolution of such dispute, upon request by Member or Contracted Chiropractor. In such instances, the decision from the grievance and appeals processes shall not be binding upon Contracted Chiropractor and Member, except upon agreement between Contracted Chiropractor and Member, nor shall such disputes be subject to binding arbitration, except upon agreement between Contracted Chiropractor and the Member.

## ARTICLE 17    DISPUTES BETWEEN CONTRACTED CHIROPRACTOR AND ASH NETWORKS.

17.01    **Dispute Resolution and Binding Arbitration**. In the event of any dispute between Contracted Chiropractor and ASH Networks arising out of or relating to this Agreement, Contracted Chiropractor and ASH Networks shall first attempt in good faith to resolve the dispute mutually between themselves. In order to initiate the resolution process, Contracted Chiropractor shall contact ASH Networks in writing or by telephone in accordance with the provisions set forth in Attachment B, which is hereby incorporated by reference into this Agreement. If Contracted Chiropractor and ASH Networks are unable to resolve the dispute by mutual agreement, including but not limited to, utilizing all available levels of ASH Networks' grievance and appeals processes, unless otherwise prohibited by state law, then all matters in controversy, except those submitted to an ERO pursuant to Attachment F, Section 2.07 and Attachment G, Section 6.0, shall be submitted, upon the motion of either party, to binding arbitration under the Commercial Arbitration Rules of the National Arbitration Forum ("the Forum"). All such arbitration proceedings shall be administered by the Forum in the state in which Contracted Chiropractor is duly licensed and providing Chiropractic Services; however, the arbitrator shall be bound by applicable state and federal law, and shall issue a written opinion setting forth findings of fact and conclusions of law. The arbitrator must have experience in resolving matters of the same type under dispute in the same jurisdiction. Contracted Chiropractor and ASH Networks agree that the decision of the arbitrator shall be final and binding as to each of them. The Party against whom the award is rendered shall pay any monetary award and/or comply with any other order of the arbitrator within sixty (60) days after the entry of judgment.

17.02    In all cases submitted to the Forum, Contracted Chiropractor and ASH Networks agree to share equally the Forum administrative fee as well as the arbitrator's fees and expenses, if any, unless otherwise assessed by the arbitrator. The administrative fees shall be advanced by the initiating Party, subject to final apportionment by the arbitrator.

17.03    Contracted Chiropractor and ASH Networks agree that the arbitrator's award may be enforced in any court having jurisdiction thereof by the filing of a petition to enforce said award. Costs of filing to have an award enforced may be recovered by the Party which brings such action.

17.04    Should Contracted Chiropractor or ASH Networks, prior to submitting a dispute to arbitration, desire to utilize other impartial dispute settlement techniques such as mediation or fact-finding, a joint request for such services may be made to the Forum, or the Parties may initiate such other procedures as they may mutually agree upon at such time.

17.05    Any arbitration proceedings shall occur in San Diego, California, unless otherwise required by state law.

17.06    Contracted Chiropractor and ASH Networks agree that if they become involved in a claim or dispute under the arbitration process outlined herein, neither Party will disclose to any other person not directly involved in the arbitration process: (i) the substance of, or basis for, the claim; (ii) the content of any testimony or other evidence presented at the arbitration hearing or obtained through discovery; or (iii) the terms or amount of any agreement reached pursuant to arbitration.

17.07    Contracted Chiropractor and ASH Networks agree that notwithstanding their agreement to submit all disputes arising out of or relating to this Agreement to arbitration as set out in this Article, except those submitted to an ERO pursuant to Attachment F, Section 2.07 and Attachment G, Section 6.0, either party may apply to a state or federal court located in San Diego, California (or, if required by applicable state law, a state or federal court located in the state in which Contracted Chiropractor resides) for injunctive relief regarding any dispute arising out of or relating to this Agreement, but in no event may any party seek any monetary award from the other party in any proceeding filed in state or federal court seeking injunctive relief (with the sole exception of a request for fees and costs under ARTICLE 20 herein). Each party consents to the jurisdiction of the state and federal courts located in San Diego, California (or, if required by applicable state law, the state and federal courts located in the state in which Contracted Chiropractor resides) for resolution of claims for injunctive relief and fees and costs under ARTICLE 20 as described in this Section and agrees that venue is proper in any such court.

## ARTICLE 18    DISPUTES BETWEEN CONTRACTED CHIROPRACTOR AND PAYOR.

18.01    **Dispute Resolution and Arbitration Involving Payors**.

18.01.1    In the event of any dispute between Contracted Chiropractor and a Payor arising out of or relating to this Agreement, at the request of ASH Networks, Contracted Chiropractor shall first attempt in good faith to resolve the dispute mutually with the Payor through ASH Networks, including but not limited to, utilizing

CONFIDENTIAL – Not To Be Reproduced or Distributed Without Written Permission

all available levels of ASH Networks' grievance and appeals processes, unless otherwise prohibited by state law. Contracted Chiropractor may seek ASH Networks' assistance with regard to any dispute by contacting ASH Networks in writing or by telephone at the address and telephone set forth in Attachment B to this Agreement.

18.01.2   If Contracted Chiropractor and the Payor are unable to resolve the dispute by mutual agreement pursuant to the provisions of Section 18.01.1 of this Agreement and ASH Networks' agreement with the Payor requires the Payor to arbitrate any disputes arising out of or relating to that agreement, including any dispute that involves Contracted Chiropractor, on the terms set forth in Sections 18.01.3-18.01.7 of this Agreement or on substantially similar terms, then all matters in controversy shall be submitted, upon the motion of either Contracted Chiropractor or the Payor, to binding arbitration.

18.01.3   Any arbitration conducted pursuant to this Article shall be conducted under the Commercial Arbitration Rules of the National Arbitration Forum ("the Forum"). Unless Payor and Contracted Chiropractor agree otherwise, all such arbitration proceedings shall be administered by the Forum in the state in which Contracted Chiropractor is duly-licensed and providing Chiropractic Services; however, the arbitrator shall be bound by applicable state and federal law and shall issue a written opinion setting forth findings of fact and conclusions of law. The decision of the arbitrator shall be final and binding as to both Contracted Chiropractor and the Payor. The party against whom the award is rendered shall pay any monetary award and/or comply with any other order of the arbitrator within sixty (60) days after the entry of judgment.

18.01.4   In all cases submitted to the Forum, Contracted Chiropractor and Payor shall share equally the Forum administrative fee as well as the arbitrator's fees and expenses, if any, unless otherwise assessed by the arbitrator. The administrative fees shall be advanced by the initiating party, subject to final apportionment by the arbitrator.

18.01.5   The arbitrator's award may be enforced in any court having jurisdiction thereof by the filing of a petition to enforce said award. Costs of filing to have an award enforced may be recovered by the party that brings such action.

18.01.6   Should Contracted Chiropractor or the Payor, prior to submitting a dispute to arbitration, desire to utilize other impartial dispute settlement techniques such as mediation or fact-finding, a joint request for such services may be made to the Forum, or the parties may initiate such other procedures as they may mutually agree upon at such time.

18.01.7   Unless Contracted Chiropractor and the Payor agree otherwise, any arbitration proceedings under this Article shall occur in the state in which Contracted Chiropractor is duly-licensed and providing Chiropractic Services to Members. If an arbitration held pursuant to this Article also involves ASH Networks as a party, the arbitration shall be held in the State in which Contracted Chiropractor is duly-licensed and providing Chiropractic Services to Members, unless Contracted Chiropractor, the Payor and ASH Networks each agrees otherwise.

**ARTICLE 19    NOTICES.**

Any notice required or permitted to be given under this Agreement to ASH Networks or Contracted Chiropractor, shall be in writing and shall be (a) delivered by electronic means (i.e. ASHLink, sent via an inalterable email document (such as PDF), or facsimile with confirmation), (b) delivered in person, (c) sent by certified, registered mail, or "overnight express" by the United States Postal Service with return receipt requested and postage prepaid, or (d) sent "express mail," "two day delivery," "3-5 day ground" or any similar service offered by private, prepaid courier such as Federal Express, United Parcel Service or any similar organization.

Notice(s) sent by ASH Networks shall be delivered, mailed, or sent for delivery to the Contracted Chiropractor's ASHLink account, email address, facsimile number or mailing address on file with ASH Networks. If Contracted Chiropractor changes the email address, facsimile number, or other address, Contracted Chiropractor shall provide written notice of the change to ASH Networks at least thirty (30) days prior to the effective date of the change.  Notice(s) sent by Contracted Chiropractor shall be delivered, mailed or sent for delivery to ASH Network via ASHLink or to the email address, facsimile number or mailing address provided below.

Notice shall be effective on the earlier of the date received or the date deemed received.

- Notices given by electronic means (i.e. ASHLink, sent via an inalterable email document (such as PDF), or facsimile with confirmation) shall be deemed received one (1) business day after being sent.

ASH CONFIDENTIAL PROPRIETARY
NOT TO BE reproduced without
prior written permission

- Notices delivered personally shall be deemed received upon actual receipt.

- Notices given by certified or registered mail shall be deemed received two (2) United States Postal Service business days after the date mailed.

- Notices given by "3-5 day ground" will be deemed received five (5) business days after the date delivered to the United States Postal Service, Federal Express, United Parcel Service or any similar organization.

- Notices sent for delivery by any other means specified in this first paragraph of this Article shall be deemed received two (2) business days after delivery to the United States Postal Service, Federal Express, United Parcel Service or any similar organization.

**NOTICES TO ASH NETWORKS:**
American Specialty Health Networks, Inc.
P.O. Box 509001
San Diego, CA 92150-9001
Attn: Vice President of Network Management

For specific email addresses and facsimile numbers, call ASH Networks at (800) 972-4226. The appropriate email address or facsimile number will be provided depending on the nature of the Notice.

## ARTICLE 20    ATTORNEYS' FEES; COSTS.

In the event that either Party brings legal action relating to this Agreement, the prevailing Party shall be entitled to payment by the other of all reasonable attorneys' fees, costs and expenses incurred in such action.

## ARTICLE 21    CAPTIONS.

Captions in this Agreement are descriptive only and shall not affect the intent or interpretation of this Agreement.

## ARTICLE 22    NO THIRD PARTY BENEFICIARIES.

Except as otherwise expressly provided in this Agreement, nothing in this Agreement shall create or be deemed to create any rights or remedies in any third party, including but not limited to a Member or a Contracted Chiropractor other than Contracted Chiropractor.

## ARTICLE 23    AMENDMENTS.

Any amendments to this Agreement must be in writing. Any amendments, including but not limited to revised or newly issued attachments, Payor Summaries, Fee Schedules or revisions to the Operations Manual shall be issued by ASH Networks in writing prior to their effective date.

The notice period for a reduction in the Fee Schedules or increase in the ETP Program Administrative Processing Fees will not occur more than once per calendar year and Contracted Chiropractor shall be given at least ninety (90) days notice prior to the change.

Notwithstanding the foregoing, all other amendments shall be automatically effective and incorporated into this Agreement on the date received or deemed received pursuant to ARTICLE 19 of this Agreement, unless otherwise specified in such notice or required by applicable state law.

## ARTICLE 24    INSOLVENCY OF ASH NETWORKS; PROTECTION OF INTERESTS OF CONTRACTED CHIROPRACTOR, MEMBERS, AND PAYORS.

24.01    ASH Networks and Contracted Chiropractor each expressly agrees to the inclusion of this Article of this Agreement to provide a means to protect the interests of Contracted Chiropractor, Members, and Payors in the event of the insolvency of ASH Networks. This Article shall apply only in the event of the insolvency of ASH Networks and only if, as a result of the insolvency, ASH Networks is unable to discharge its duties under this Agreement. This Article shall not apply in any other circumstances.

24.02    For purposes of this Article, the insolvency of ASH Networks means the filing of a voluntary petition by ASH Networks, or the filing of an involuntary petition by ASH Networks' creditors, under Chapter 7 of the Bankruptcy Code (Liquidation), and the date of the insolvency shall be the date on which any such petition is filed. The insolvency of ASH Networks shall not

ASH CONFIDENTIAL
Not To Be Reproduced Or Disclosed
Without Written Permission

include the filing of a voluntary petition by ASH Networks, or the filing of an involuntary petition by ASH Networks' creditors, under Chapter 11 of the Bankruptcy Code (Reorganization). Notwithstanding anything to the contrary in this Article shall not apply if or to the extent its application would violate any provision of the Bankruptcy Code or any other applicable federal or state statute or regulation, any automatic or other stay issued pursuant to the Bankruptcy Code, any order issued by the court with jurisdiction over the bankruptcy proceeding, or any other court order.

24.03   If, within sixty (60) days after the date of the insolvency of ASH Networks, a Payor provides written notice to Contracted Chiropractor stating that, with regard to any Member who is a beneficiary, employee, Member, or insured of that Payor, (a) the Payor shall pay Contracted Chiropractor, in accordance with the provisions of this Agreement, for any claims for Covered Services rendered by Contracted Chiropractor to any such Member on or after the date of the insolvency, to the extent ASH Networks has not paid such claims, and (b) the Payor otherwise shall use its best efforts to discharge the duties of ASH Networks under this Agreement, or to cause ASH Networks to discharge those duties, with regard to any such Member, then Contracted Chiropractor shall continue to be available to render Covered Services to those Members and shall continue to render Covered Services to those Members in accordance with the provisions of this Agreement for up to six (6) months after the date of the insolvency, as specified by the Payor.

24.04   To the extent this Article grants any rights to any Payor, Contracted Chiropractor hereby expressly agrees and acknowledges that the Payor is a third-party beneficiary of the provisions of this Article and shall have all rights granted under law to a third-party beneficiary to enforce the provisions of this Article.

**ARTICLE 25     ENTIRE AGREEMENT.**

This Agreement constitutes the entire agreement of the parties. The Agreement includes all attachments, the ASH Networks Operations Manual transmitted with this Agreement, and all amendments thereto.  Each Party acknowledges that no representation, inducement, promise or agreement, orally or otherwise, has been made by any Party or anyone acting on behalf of any Party, which is not embodied herein. In the event of an inconsistency between this Agreement and any attachment hereto including the Operations Manual (with the exception of Attachments D and/or I) the provisions described in this Agreement shall control the rights and duties of the parties.  In the event of an inconsistency between this Agreement, any attachments thereto including the Operations Manual, and Attachment D (Payor Summaries) and/or Attachment I (State Specific Requirements), the provisions of Attachment(s) D and/or I shall control the rights and duties of the Parties.  In the event of an inconsistency between Attachment D (Payor Summaries) and Attachment I (State Specific Requirements), the provisions of Attachment I shall control the rights and duties of the Parties.

ASH CONFIDENTIAL
Not To Be Reproduced Or Disclosed
Without Written Permission

**ARTICLE 26     EFFECTIVE DATE OF AGREEMENT.**

ASH Networks shall determine the Effective Date of this Agreement upon completion of all necessary pre-contractual requirements, including but not limited to credentialing and recredentialing. Contracted Chiropractor agrees to be bound by the Effective Date as determined by ASH Networks and indicated immediately below.

The Effective Date of this Agreement is _____.

[To be completed by ASH Networks Only]

IN WITNESS WHEREOF, the Parties have executed this Agreement on the dates set forth below.

CHIROPRACTOR                                    AMERICAN SPECIALTY HEALTH NETWORKS, INC.
(type or print clearly)                         (type or print clearly)

_____                       _____
Name Signed                                     Name Signed

_____                       _____
Name Printed                                    Name Printed

_____                       _____
Title                                           Title

_____                       _____
Date of Signature                               Date of Signature

Primary Office Address                          Mailing Address:
                                                American Specialty Health Networks, Inc.
Office Name:_____                      P.O. Box 509001
                                                San Diego, CA 92150-9001
Address:_____

City, State, Zip:_____                 Office Address:
                                                American Specialty Health Networks, Inc.
                                                10221 Wateridge Circle
                                                San Diego, CA 92121

ASH CONFIDENTIAL
Not To Be Reproduced Or Disclosed
Without Written Permission

This Page Intentionally Left Blank

ASH CONFIDENTIAL
Not To Be Reproduced Or Disclosed
Without Written Permission

Case 3:14-cv-02022   Document 30-7   Filed 12/23/14   Page 43 of 83 PageID #: 370

**CHIROPRACTIC PROVIDER SERVICES AGREEMENT**

**ATTACHMENT A - CONTRACTED CHIROPRACTOR INFORMATION SHEET**

Please complete this sheet for your primary office. If you have any additional offices, please complete and attach a separate copy of this sheet for each additional office where you practice and which you want listed in provider directories.

CONTRACTED CHIROPRACTOR NAME: _____

CLINIC NAME: _____

PHYSICAL ADDRESS: _____

CITY: _____  STATE: _____  ZIP: _____

TELEPHONE NUMBER: _____  FAX NUMBER: _____

EMAIL ADDRESS: _____

WEBSITE ADDRESS: _____

**Initial the box which best describes Office Information/Type of Structure:**

☐ Home Office    ☐ Commercial Office    ☐ Educational (University/College) Setting

**Initial the box which best describes Contracted Chiropractor:**

☐ Individual/Sole Proprietor    ☐ Owner/Co-Owner    ☐ Partner of a Professional Corporation or Group Practice or

☐ Employee of a Professional Corporation, or Group Practice. If an employee, please list the Owner of the tax identification number:

_____ .

NOTE: If you are an employee or owner of or a partner in a Group Practice or a Professional Corporation, then the owner of the tax identification number for that Group Practice or Professional Corporation must also be a Contracted Chiropractor or a Contracted Provider with ASH Networks. If you cease to be an employee, or owner of or a partner in a Group Practice, or Professional Corporation, this Agreement shall terminate, in accordance with ARTICLE 5 of this Agreement. In the event that the Contracted Chiropractor or Contracted Provider, as owner of the tax identification number of the Group Practice or Professional Corporation of which you are an employee, resigns or is terminated, ASH Networks shall either (1) disallow you from providing any further services to Members; or (2) re-evaluate the credentials of both the remaining Contracted Chiropractors and the Professional Corporation or Group Practice to determine whether the effectiveness, appropriateness and quality of chiropractic services continue to meet all ASH Networks standards. If ASH Networks re-evaluates the credentials and determines the Contracted Chiropractors' and the Professional Corporation's or Group Practice's chiropractic services meet ASH Networks' standards, you may be allowed to continue to provide services to Members if a new Attachment A is completed and the owner of the new tax identification number for that Group Practice or Professional Corporation meets the requirements pursuant to Sections 3.12 and 3.13.

**GENERAL LIABILITY INFORMATION:**

NAME OF CARRIER: _____

RENEWAL DATE _____

**NATIONAL PROVIDER IDENTIFIER (NPI) NUMBER:**

NPI Number Type 1 (Individual)  ___ ___  ___ ___ ___ ___ ___ ___ ___ ___

If applicable, NPI Number Type 2 (Organization)  ___  ___ ___ ___ ___ ___ ___ ___ ___ ___

CAQH ID Number (if available): _____

ASH CONFIDENTIAL
Not To Be Reproduced Or Disclosed
Without Written Permission

Case 3:14-cv-02022   Document 30-7   Filed 12/23/14   Page 44 of 83 PageID #: 371

**CHIROPRACTIC PROVIDER SERVICES AGREEMENT**

**ATTACHMENT A - CONTRACTED CHIROPRACTOR INFORMATION SHEET**

**Please complete the attached Request for Tax Payer Identification Number and Certification (W-9) Form included herein as Exhibit 1 to this Attachment A.**

**STATEMENT AND SIGNATURE:**

I, _____, represent that all the information submitted in this Attachment A, Contracted Chiropractor Information Sheet, is correct to my best knowledge and belief. I understand that any material misstatement or omission of any information on this Attachment A, Contracted Chiropractor Information Sheet, may result in the immediate termination of this Agreement. I understand and agree that I, as the Contracted Chiropractor, have the burden of producing adequate information for proper evaluation of my professional competence, character, ethics, and other qualifications and for resolving any questions about such qualifications. I release from liability all representatives of ASH Networks for their acts in good faith, and without malice, in connection with evaluating my Attachment A, Contracted Chiropractor Information Sheet, and my credentials for qualification. I hereby authorize ASH Networks to consult with individuals and organizations having information bearing on my qualifications and to inspect all documents from such individuals and organizations, and I hereby consent to the release and exchange of information relating to any disciplinary action, suspension, professional malpractice insurance history, curtailment of practice privileges by any outside organization or individual or any other information to ASH Networks.

Signature of Chiropractor _____ Date _____

Name of Chiropractor _____

ASH CONFIDENTIAL
Not To Be Reproduced Or Disclosed
Without Written Permission

ASH CONFIDENTIAL
Not To Be Reproduced Or Disclosed
Without Written Permission

Case 3:14-cv-02022   Document 30-7   Filed 12/23/14   Page 46 of 83 PageID #: 373

ASH CONFIDENTIAL
Not To Be Reproduced Or Disclosed
Without Written Permission

Case 3:14-cv-02022   Document 30-7   Filed 12/23/14   Page 47 of 83 PageID #: 374

ASH CONFIDENTIAL
Not To Be Reproduced Or Disclosed
Without Written Permission

Case 3:14-cv-02022   Document 30-7   Filed 12/23/14   Page 48 of 83 PageID #: 375

ASH CONFIDENTIAL
Not To Be Reproduced Or Disclosed
Without Written Permission

Case 3:14-cv-02022   Document 30-7   Filed 12/23/14   Page 49 of 83 PageID #: 376

**CHIROPRACTIC PROVIDER SERVICES AGREEMENT**

**ATTACHMENT B - ASH NETWORKS CONTACT PERSON REGARDING DISPUTES**

In accordance with the provisions of ARTICLE 17 of this Agreement, in the event of any dispute arising out of or relating to this Agreement, Contracted Chiropractor and ASH Networks shall first attempt in good faith to resolve the dispute mutually between themselves. In order to initiate the resolution process, Contracted Chiropractor shall contact ASH Networks in writing or by telephone at:

> Provider Relations Department
> American Specialty Health Networks, Inc.
> PO Box 509001
> San Diego, CA 92150-9001
> (800) 972-4226

ASH Networks may change the name and/or title, address or telephone number set forth in this Attachment B at any time pursuant to ARTICLE 23 of this Agreement. Contracted Chiropractor may have the opportunity to appeal any termination or request a hearing if appeal is denied, as described more fully in the Agreement. Please contact ASH Networks' Provider Relations Department to obtain additional information on ASH Networks' appeal processes.

ASH CONFIDENTIAL
Not To Be Reproduced or Disclosed
Without Written Permission

Case 3:14-cv-02022   Document 30-7   Filed 12/23/14   Page 50 of 83 PageID #: 377

### RECITALS

This Attachment is entered into by Contracted Chiropractor ("Downstream Entity" or "Provider") and American Specialty Health Networks, Inc. ("First Tier Entity") and is intended to add contractual language required by CMS for participation as a Medicare Advantage contracted Provider or organization.

WHEREAS, CMS requires that specific contract language be incorporated into contracts and subcontracts with downstream entities to comply with the provisions of the Balanced Budget Act of 1997;

WHEREAS, Provider wishes to provide services to Medicare beneficiaries who elected to enroll in a Medicare Advantage Health Plan and health plan wishes Provider to provide services to such Medicare beneficiaries;

WHEREAS, Provider agrees to the addition of the following language as an attachment to add contract language as specified by CMS to this Agreement between Provider and First Tier Entity.

NOW, THEREFORE, the parties agree as follows:

**ARTICLE 1     DEFINITIONS.**

1.01    **Center for Medicare and Medicaid Services (CMS)**, formerly Health Care Financing Administration or HCFA means the agency within the Department of Health and Human Services that administers the Medicare Program.

1.02    **Downstream Entity** means all entities or individuals below the level of the First Tier Entity (e.g., individual providers that contract with Networks or Administrative Service Entities), typically referred to as subcontractors, related entities and management companies. Downstream Entity shall also be referred to as Provider in this Attachment.

1.03    **Final Contract Period** means the final date of the contract period between CMS and Medicare Advantage Organization ("MAO") with whom the First Tier Entity has entered into an Agreement for the provision of services to Member.

1.04    **First Tier Entity** means the first level of contractor with the health plan whom or which has a direct contract with health plan.

1.05    **Medicare** is the health benefit program provided under Title XVIII of the Social Security Act, as amended and administered by CMS.

1.06    **Medicare Advantage Health Plan** is the managed care plan operated by MAO pursuant to its contract with CMS to provide health care benefits to individuals eligible for Medicare benefits.

1.07    **Medicare Advantage (MA) Organization or MAO** means a health plan or provider sponsored organization who has entered into an agreement with CMS to provide Medicare beneficiaries with health care options.

1.08    **Member** means an individual who has enrolled in or elected coverage through a MA Organization.

1.09    **Provider** means a Downstream Entity for the purposes of this Attachment.

**ARTICLE 2     PROVIDER DUTIES.**

2.01    Compliance with MAO and First Tier Entity. Provider agrees to comply with the regulatory requirements and Medicare Advantage guidelines promulgated by CMS which are more fully documented in all applicable MAO and First Tier Entity policies, procedures and manuals. [42 C.F.R. 422.504 (i) (3) (iii)]

2.02    Compliance with Medicare Law. Provider shall comply with all applicable State and Federal laws and regulations, including all applicable Medicare laws and regulations and CMS instructions. [42 C.F.R. 422.504 (i)(4)(v)]

Case 3:14-cv-02022   Document 30-7   Filed 12/23/14   Page 51 of 83 PageID #: 378

2.03 <u>Compliance with Federal Law</u>. Provider shall comply with Federal laws and regulations designed to prevent or ameliorate fraud, waste and abuse, including, but not limited to, applicable provisions of Federal criminal law, the False Claims Act (31 U.S.C. 3729 et seq.); the anti-kickback statute (section 1128 B(b) and HIPAA administrative simplification rules (45 C.F.R. parts 160, 162 and 164). [42 C.F.R. 422.504 (h)(1) and (2)]

2.04 <u>Participation Requirements</u>. Provider agrees to participate in MAO's Medicare Advantage Program. For purposes of this Attachment, Provider shall not knowingly employ or contract with individuals excluded from participation in Medicare under Section 1128 or 1128A of the Social Security Act. [42 C.F.R. 422.204 (b)(4)]

2.05 <u>Delegation</u>. Provider shall comply with any applicable delegation requirements between the MAO and First Tier Entity. Delegated functions shall be maintained consistent with MAO requirements and compliant with CMS regulations. [42 C.F.R. 422.504 (i)(3)(iii)]

2.06 <u>Appeals and Grievances</u>. Provider shall adhere to Medicare's appeals, expedited appeals and expedited review procedures for MAO Members, including gathering and forwarding information on appeals to MAO or First Tier Entity, as necessary. [42 C.F.R. 422.562 (a)(3)]

2.07 <u>Quality Assurance /Quality Improvement</u>. Provider shall comply with MAO and First Tier Entity's quality assurance/quality improvement programs developed in compliance with applicable NCQA and URAC standards and applicable federal and state laws and regulations. [42 C.F.R. 422.202 (b) and 42 C.F.R. 422.504 (a)(5)]

2.08 <u>Provision Applicable to MAO Enrollees Who are Eligible for Both Medicare and Medicaid</u>. Effective January 1, 2010, Provider shall not collect Medicare Part A and Part B cost sharing from any Medicare Member that exceeds the amount of cost sharing that would be permitted with respect to the Medicare Member under Title XIX of the Social Security Act (Medicaid) if the Medicare Member were not enrolled in the MAO's Medicare Advantage Health Plan. In no event shall Provider or a Provider subcontractor hold a Medicare Member responsible for any cost sharing for Covered Services when a State entity is responsible for paying such amount. Where the State is responsible for paying the cost share amount, Provider shall either accept ASH Networks' contracted rate (applicable for that MAO's Medicare Advantage Health Plan) as payment in full or bill the appropriate State source for the cost share amount. [42 C.F.R. 422.504 (g) (1) (iii)]

**ARTICLE 3       ACCESS: BENEFITS & COVERAGE**.

3.01 <u>Timely Access to Care</u>. Provider agrees to provide Covered Services consistent with regulatory requirements and Medicare Advantage guidelines. Provider agrees to abide by First Tier Entity's policies and procedures regarding: (1) timely access to care and Member services; (2) Medical Necessity determinations; and (3) Providers consideration of Member input in the establishment of treatment plans. [42 C.F.R. 422.112]

3.02 <u>Identifying Complex and Serious Medical Conditions.</u> Provider agrees to have procedures to identify, assess and establish a treatment plan for Members with complex or serious medical conditions. [42 C.F.R. 422.112(a)(4)(i)]

3.03 <u>Follow-up and Selfcare</u>. Provider agrees to maintain procedures to ensure that Members are informed of specific healthcare needs that require follow-up and receive as appropriate, training in self-care and other measures they may take to promote their own health. [42 C.F.R. 422.112 (b)(5)]

3.04 <u>Reconsideration</u>. Provider agrees to file a request for reconsideration with First Tier Entity within sixty (60) calendar days from the date of notice of determination from either the First Tier Entity or MAO, if Provider wants such determination reconsidered. [42 C.F.R. 422.582 (b)]

**ARTICLE 4      MEMBER PROTECTIONS**.

4.01 <u>Standards</u>. Provider shall provide all covered benefits in a manner consistent with professionally recognized standards of health care. [42 C.F.R. 422.504 (a)(iii)]

4.02 <u>Hold Harmless</u>. Provider agrees to hold harmless and protect Members from incurring financial liabilities that are the legal obligation of the MAO or First Tier Entity. Provider agrees that, except for the collection of applicable copayment, coinsurance or deductibles for Covered Services, in no event, including but not limited to nonpayment by MAO or First Tier Entity, insolvency of MAO or First Tier Entity, or any breach of the Agreement by MAO or First Tier Entity, shall the Provider bill, charge, collect a deposit from or receive other compensation or remuneration from or have any recourse against, a Member or a person acting on behalf of a Member for Covered Services provided to the Member. This provision does not prohibit collection of fees for non-Covered services, provided the Member was informed in advance and in writing

of the cost and elected to have non-Covered services rendered. The obligations of this section shall survive any termination of this Attachment. [42 C.F.R. 422.504 (g)(1)(i)]

4.03   Cultural Competency. Provider shall provide access to Covered Services, both clinical and non-clinical, to all Members including those with limited English proficiency or reading skills, with diverse cultural and ethnic backgrounds, the homeless, and individuals with physical and mental disabilities. Provider must provide information regarding treatment options in a culturally competent manner, including the option of no treatment. With respect to services provided by Provider, Provider must ensure that individuals with disabilities have effective communication in making decisions regarding treatment options. [42 C.F.R. 422.112 (a)(8)]

4.04   Non-Discrimination. Provider shall not unlawfully discriminate against any Members on the basis of health status, race, color, creed, national origin, ancestry, religion, sex, marital status, age, sexual orientation, gender identity, or physical or mental handicap including HIV status. Provider shall comply with the requirements of the Civil Rights Act of 1964, the Age Discrimination Act of 1975, the Rehabilitation Act of 1973, and the Americans with Disabilities Act, and all implementing regulations, guidelines and standards as are now or may be lawfully adopted under the above laws. [42 C.F.R. 422.110]

## ARTICLE 5   MAO RESPONSIBILITIES.

5.01   Accountability. Consistent with the requirements of State and Federal Law and the standards of the applicable accreditation organizations, MAO shall be accountable for the performance of the following services: (i) quality management and improvement, (ii) medical management, (iii) credentialing, (iv) Member rights and responsibilities, (v) preventive health services, (vi) Medical Record review and (vii) payment and processing of claims (collectively, "Managed Care Program Services"). Without limiting the foregoing or MAO delegation of any Managed Care Program Services to First Tier Entity, MAO shall remain accountable to CMS for complying with its obligations under the CMS Agreement. First Tier Entity and Providers shall cooperate with MAO in the performance of all Managed Care Program Services and conduct their activities in a manner consistent with the provisions herein and in support of the MAO's compliance with CMS requirements. [42 C.F.R. 422.504 (i)(3)(ii)]

## ARTICLE 6   TERMINATION

6.01   Termination of Agreement. In the event that the MAO or First Tier Entity terminates or suspends an Agreement with a Provider, the notice of termination must (1) be in writing; (2) state the reason for the termination; and (3) include provisions regarding a Provider's right to appeal such termination. [42 C.F.R. 202 (d) (1)]

6.02   Termination of Agreement without Cause. Provider agrees to provide both the First Tier Entity and the MAO at least sixty (60) days written notice before terminating a contract without cause. [42 C.F.R. 422.202 (d) (4)]

## ARTICLE 7   PAYMENT AND FEDERAL FUNDS.

7.01   Payment and Incentive Arrangements. Provider agrees to follow specific payment and incentive arrangements in agreement with First Tier Entity. [42 C.F.R. 422.208]

7.02   Prompt Payment. Either the MAO or the First Tier Entity, as applicable shall process claims promptly according to CMS standards and shall comply with all payment provisions of state and federal law. CMS requires claims for Contracted Provider to be paid or denied within sixty (60) days of receipt. Interest shall be applied to clean claims paid outside of the timeframes described herein as required by State and/or Federal regulation. [42 C.F.R. 422.520 (b)]

7.03   Federal Funds. Provider agrees that health services provided to Members are being paid for with Federal funds and, as such, payments for such services are subject to laws applicable to individuals or entities receiving Federal funds. [42 C.F.R. 422.504 (h)]

## ARTICLE 8   REPORTING AND DISCLOSURE.

8.01   Data Collection Requirements. Provider agrees to submit to MAO all data, including Medical Records, necessary to characterize the content and purpose of each encounter with Member. [42 C.F.R. 422.257, 42 C.F.R. 422.310 (d) (3)-(4), 42 C.F.R. 422.310 (e), 42 C.F.R. 422.504 (d)-(e), and 42 C.F.R. 422.504 (i)(3)-(4)]

8.02   Certification of Data. Provider agrees to submit and certify the accuracy, completeness and truthfulness of all encounter data. [42 C.F.R 422.504(l)(3)]

**ARTICLE 9     CONTINUITY OF CARE OBLIGATIONS**.

9.01    Continuity of Care. Provider understands that Provider has certain continuity of care obligations in the event that this Agreement terminates or MAO becomes insolvent. Provider agrees to provide continuity of care to Members who meet the following conditions:

    (a) Members shall continue to receive services through the period for which their CMS payments have been made; and

    (b) Members who are hospitalized on the date the agreement between CMS and MAO terminates or in the event of MAO's insolvency shall continue to receive services through the date of the Member's discharge from the applicable facility.  [42 C.F.R. 422.504 (g)]

9.02    Survival. The obligations of this article shall survive any termination of this Attachment.

**ARTICLE 10    ACCESS: RECORDS AND FACILITIES**.

10.01    Inspection and Retention of Records. Provider shall give the MAO, First Tier Entity, U.S. Department of Health and Human Services (HHS), CMS and the U.S. General Accounting Office (GAO) or their designees the right to audit, evaluate and inspect Provider's books, contracts, medical/clinical records, patient care documentation, and other relevant records of subcontractors or related entities as well as its premises, physical facilities and equipment as they relate to the provision of services to Members. These rights, along with the duty to retain the records, will extend for ten (10) years beyond the Final Contract Period or until the conclusion of any governmental audit that may be initiated that pertain to such records, whichever is latest unless: (i) the CMS determines there is a special need to retain a particular record or group of records for a longer period and notifies Provider or MAO or First Tier Entity at least thirty (30) days before the normal disposition date; (ii) there has been a termination, dispute, or fraud or similar fault by the Provider, in which case the retention may be extended to six (6) years from the date of any resulting final resolution of the termination, dispute, or fraud or similar fault; or (iii) the CMS determines that there is a reasonable possibility of fraud, in which case it may inspect, evaluate, and audit the Provider at any time. [42 C.F.R. Sections 422.504(e)(2); 422.504(e)(3); 422.504(e)(4); 422.504(i)(2)(ii)]

**ARTICLE 11    PROTECTION OF MEMBER INFORMATION**

11.01    Confidentiality. Provider shall abide by all State and Federal laws, including the Health Insurance Portability and Accountability Act (HIPAA) of 1996 regarding confidentiality and disclosure of Medical Records, or other health and enrollment information.  Provider agrees to: (i) safeguard the privacy of any information that identifies a particular Member; (ii) maintain such records in an accurate and timely manner; (iii) ensure that medical information is released only in accordance with applicable Federal or State law, or pursuant to court orders or subpoenas; and (iv) ensure timely access by Members to the records and information that pertain to them. [42 C.F.R. 422.118, 42 C.F.R. 422.504 (a)(13) and 42 C.F.R. 422.136]

**ARTICLE 12    ADOPTION OF MEDICARE RISK PROGRAM CONTRACT REQUIREMENTS**.

12.01    Provider agrees that all contracts must be signed and dated.

12.02    Provider agrees to serve Members during the term of this Attachment. [42 C.F.R. 422. 112 (a)]

Except as provided in this Attachment, all other provisions of this Agreement between Provider and First Tier Entity not inconsistent herewith shall remain in full force and effect. This Attachment shall remain in force as a separate but integral addition to such Agreement to ensure compliance with required CMS provisions, and shall terminate upon the termination of such Agreement, unless otherwise specified.

CHIROPRACTIC PROVIDER SERVICES AGREEMENT

ATTACHMENT F - CLINICAL MANAGEMENT PROGRAMS

ASH Networks and Contracted Chiropractor are responsible to work together to meet the Payors' requirements that Contracted Chiropractors are initially credentialed and periodically recredentialed and that Covered Services are Medically Necessary Services. ASH Networks conducts credentialing and recredentialing through its Credentialing/Recredentialing Program. Contracted Chiropractor participates in these programs by providing the necessary information for the Credentialing/Recredentialing Program, the clinical evaluation of Chiropractic Services and documenting and demonstrating clinical performance in accordance with professionally recognized standards of practice. ASH Networks verifies Covered Services are Medically Necessary Services through its Clinical Services Management Program. ASH Networks also evaluates the quality of Chiropractic Services through its Clinical Performance Management Program and thereby meets Payor requirements for the delivery of safe and clinically effective services to Members. By working together in this manner, ASH Networks and Contracted Chiropractor fulfill their mutual responsibilities to Payors.

**Clinical Program Compliance**. Contracted Chiropractor agrees to participate in and comply with all ASH Networks and/or Payor requirements and criteria for the following programs:

1. Credentialing/Recredentialing Program;

2. Clinical Services Management Program;

3. Clinical Performance Management Program; and

4. Medical Records Evaluation Program

The purpose of such Programs, implemented by ASH Networks or any Payor, is to evaluate the Medical Necessity and the clinical effectiveness and appropriateness of Chiropractic Services. Contracted Chiropractor agrees and acknowledges that all Covered Services must be Medically Necessary Services. Contracted Chiropractor agrees and acknowledges that all Covered Services, except for an initial examination shall require clinical evaluation by ASH Networks to verify that Covered Services are Medically Necessary Services. Each Payor Summary shall indicate the level of required clinical services evaluation. Clinical services evaluation may include evaluation of Medical Records or Clinical Treatment Forms by ASH Networks or Payor.

Programs specified in this section shall include, but are not limited to:

(a) Evaluation of Contracted Chiropractor's credentials to verify compliance with Credentialing criteria and requirements;

(b) Clinical services evaluation of Clinical Treatment Forms and/or Member's Medical Records to verify Medical Necessity;

(c) Proper completion and submission to ASH Networks of all required ASH Networks standardized forms, documents, and Medical Records, as specified in the Agreement;

(d) Clinical performance evaluation of Contracted Chiropractor's performance through Credentialing/Recredentialing Program, Medical Records Evaluation Program, appeals and grievances program, Clinical Performance Management, and other ASH Networks quality improvement programs;

(e) Discussions with Contracted Chiropractor regarding Members; conferences with Members; and

(f) Any other activities necessary to coordinate, verify the delivery of, or resolve issues related to Covered Services received by Members.

1.0 **Credentialing/Recredentialing Program**. Payors expect ASH Networks to recruit and retain Contracted Chiropractors and other ASH Networks Contracted Providers in order to provide a network of providers to their Members for the provision of Covered Services and Affinity Services. The ASH Networks contracted network of providers, including Contracted Chiropractors, are expected to comply with, at a minimum, applicable state and federal laws and regulations and nationally recognized accreditation organization standards, related to geographic access, adequacy of choice and established criteria and expectations related to provider credentialing criteria. Such criteria include, but are not limited to, evaluation and verification of applicable state licensure or certification, clinical training and continuing education, adequate malpractice and general

liability coverage, verification of regulatory or professional sanctions and evidence of appropriate Medical Records documentation. Periodic recredentialing is also required within established timeframes to verify that credentialing requirements continue to be met by Contracted Chiropractor and other ASH Networks Contracted Providers.

Therefore, ASH Networks and Contracted Chiropractor agree to carry out the following responsibilities to demonstrate compliance with established credentialing and recredentialing requirements of ASH Networks, Payors, regulators and accreditation organizations.

1.01    Requirements of the Credentialing/Recredentialing Program. ASH Networks shall develop and maintain a credentialing program that will comply with, at a minimum, applicable state and federal laws and regulations, nationally recognized accreditation organization standards and ASH Networks' Clinical Performance Management Program requirements for credentialing and recredentialing. Contracted Chiropractor agrees to comply with the ASH Networks Credentialing Program and shall provide all necessary information required by ASH Networks within required timeframes in order for ASH Networks to evaluate and determine if Contracted Chiropractor has met all credentialing criteria requirements within one-hundred eighty (180) days of submission of ASH Networks Chiropractic Credentialing/Recredentialing Application, unless otherwise specified in Attachment F. Contracted Chiropractor shall also respond in a timely manner to ASH Networks requests for credentialing related information including missing, incomplete or additional information required to evaluate and determine if Contracted Chiropractor has met all credentialing or recredentialing criteria requirements. Contracted Chiropractor understands and agrees that ASH Networks will also contact appropriate third parties to verify the status of licensure, certification, professional sanctions and/or insurance coverage during the credentialing and recredentialing process. Contracted Chiropractor's communication with an ASH Networks employee concerning the credentialing/recredentialing process is an Exempt Transaction for purposes of the ETP Program as more fully defined in Attachment J. The following are also components of the Credentialing/Recredentialing Program:

1.02    ASH Networks Credentialing Determinations. Determination of Contracted Chiropractor's compliance with the ASH Networks Credentialing/Recredentialing Program requirements and criteria shall be made by those committees delegated the responsibility for making credentialing/recredentialing determinations pursuant to the Credentialing/Recredentialing Program. These delegated committees shall determine if Contracted Chiropractor meets ASH Networks credentialing criteria and requirements to participate in the ASH Networks network. Such determination shall result in either acceptance or non-approval. ASH Networks may request additional information in order to make such determination.

1.03    Appeals of Credentialing/Recredentialing Determinations. If ASH Networks Provider Quality and Credentialing Committee determines that chiropractor does not meet the Credentialing/Recredentialing Program requirements, and therefore, will not be approved for participation, or will be terminated pursuant to Section 5.02 of this Agreement, Chiropractor may appeal such determination. Appeal rights and timeframes for appeal shall be provided to chiropractor in writing by ASH Networks as part of the notice of termination or non-approval.

1.04    Additional Payor Requirements. Specific Payors may establish additional requirements, including but not limited to review and oversight of ASH Networks Provider Quality and Credentialing Committee determinations, in order for Contracted Chiropractor to provide Affinity and/or Covered Services under Payor's Member Benefit Plans or Affinity Programs for its Members. Such requirements, if any, shall be described in the applicable Payor Summary.

1.05    Changes to Credentialing/Recredentialing Program. Credentialing/Recredentialing Program may be changed by ASH Networks, in accordance with ARTICLE 23 of this Agreement.

2.0    **Clinical Services Management Program.** The Clinical Services Management Program is utilized by ASH Networks or any Payor to evaluate the Medical Necessity and the clinical effectiveness and appropriateness of chiropractic services. Contracted Chiropractor agrees and acknowledges that all Covered Services must be Medically Necessary Services and only Covered Services will be reimbursed under Member Benefit Plans. Clinical evaluation may include evaluation of Medical Records or Clinical Treatment Forms by ASH Networks or Payor, subject to the Treatment Form Waiver that will indicate when a Clinical Treatment Form is required in lieu of the Medical Records Evaluation Program. Each Payor Summary shall indicate the specific requirements of clinical evaluation and the Treatment Form Waiver, if applicable.

2.01    Requirements of the Clinical Services Management Program. Programs specified in this section shall include, but are not limited to: (i) clinical services evaluation of Clinical Treatment Forms and/or Member's Medical Records to verify Medical Necessity; (ii) proper completion and submission to ASH Networks of all required ASH Networks standardized forms and documents as specified in the Operations Manual; (iii) clinical performance evaluation of Contracted Chiropractor's performance through the Medical Records Evaluation Program, appeals and grievances

Case 3:14-cv-02022   Document 30-7   Filed 12/23/14   Page 56 of 83 PageID #: 383

program, and other ASH Networks quality improvement programs; (iv) discussions with Contracted Chiropractor; and (v) any other activities necessary to coordinate the Covered Services received by Members. Therefore, ASH Networks and Contracted Chiropractor agree to carry out the following responsibilities to demonstrate compliance with applicable state and federal laws and regulations, nationally recognized accreditation organization standards, Payor requirements and ASH Networks' Clinical Services Management Program requirements.

2.02    <u>Clinical Treatment Form (CTF) Evaluation</u>. Contracted Chiropractor agrees to timely submission of the required ASH Networks standardized CTF and other forms as provided in the Operations Manual, except as provided in the Treatment Form Waiver Program or in a Payor Summary that includes a Treatment Form Waiver Program exception. CTFs received by ASH Networks more than one hundred eighty (180) days after the date of service will not be approved due to late submission by Contracted Chiropractor unless there are "extraordinary circumstances", as determined by ASH Networks. Contracted Chiropractor may present grounds for ASH Networks to consider a late submission as being due to "extraordinary circumstances" pursuant to the appeal process set forth in Attachment F, Section 2.07 of this Agreement.  If ASH Networks or Payor is the secondary payor, Contracted Chiropractor agrees to submit CTF and other forms to ASH Networks no later than one hundred eighty (180) days after the date of service. If a Member's condition is related to a third party liability claim, Contracted Chiropractor shall seek payment from the third party. If Contracted Chiropractor intends to request reimbursement from ASH Networks for any balance not reimbursed by the third party up to the ASH Networks Fee Schedule, Contracted Chiropractor shall submit a Clinical Treatment Form to ASH Networks. The Clinical Treatment Form shall be submitted no more than one hundred eighty (180) days after the date of service or thirty (30) days after the date of the determination of payment from the third party, whichever is later. Contracted Chiropractor understands and agrees that Contracted Chiropractor is responsible to appropriately complete all CTFs and other forms. Contracted Chiropractor understands and agrees that CTFs may not be approved if Contracted Chiropractor does not follow correct submission procedures or provide complete information. Attachment J defines which submissions covered by this section are included within the ETP Program.

2.03    <u>Reopen/Modification of Clinical Treatment Forms and/or Member's Medical Records</u>.

2.03.1    The modification process allows the Contracted Chiropractor to request a modification of the approved treatment form time frame or the number or type of treatment/services already approved. This may include a date extension or the submission for approval of additional treatment/services not requested at the time of the original submission (e.g. x-rays, supports, office visits). Contracted Chiropractor may request a modification within sixty (60) days after the return date of the ASH Networks Response Form, or sixty (60) days from the last date of service on the Clinical Treatment Form to be modified, whichever is later.

2.03.2    The reopen process allows the Contracted Chiropractor to submit additional information to support the Medical Necessity of treatment/services that were previously evaluated and resulted in an adverse organization determination and to request a re-evaluation of those services or to correct clerical errors. For non-Medicare claims, Contracted Chiropractor may request a reopen within sixty (60) days after the return date of the ASH Networks Response Form, or sixty (60) days from the last date of service on the Clinical Treatment Form to be reopened, whichever is later. For Medicare claims, Contracted Chiropractor may generally request a reopen within one (1) year from the date of service for any cause. However, Contracted Chiropractor may, for "good cause", request a reopen within four (4) years from the date of service. Good Cause may be established when (a) there is new and material evidence that was not available or known at the time of the initial determination which may result in a different conclusion; or (b) the evidence that was considered in making the determination clearly shows on its face that an obvious error was made at the time of the initial determination.

A request for a Reopen/Modification may be submitted via telephone, fax, or through the secure electronic submission of a Reopen/Modification form or Medical Records. Reopen/Modification forms may not be approved if Contracted Chiropractor does not follow correct submission procedures or provide complete information. Attachment J defines which submissions covered by this section are included within the ETP Program.

2.04    <u>Follow-Up on Clinical Treatment Forms or Reopen/Modification Forms</u>. ASH Networks shall reasonably attempt to provide a response to Contracted Chiropractor within three (3) business days after receipt of a Clinical Treatment Form or Reopen/Modification form submitted in accordance with the requirements of Attachment F, Sections 2.02 and 2.03 of this Agreement. If ASH Networks does not provide a response to Contracted Chiropractor within three (3) business days after receipt of a Clinical Treatment Form or Reopen/Modification form, ASH Networks shall not be responsible for any penalty, nor shall the terms and conditions of this Agreement be invalidated. If Contracted Chiropractor does not receive a response from ASH Networks within this three (3) business day period, Contracted

Case 3:14-cv-02022   Document 30-7   Filed 12/23/14   Page 57 of 83 PageID #: 384

Chiropractor shall be responsible to contact ASH Networks by telephone or via ASHLink to confirm ASH Networks' receipt of the Clinical Treatment Form or Reopen/Modification form. If, for any reason, ASH Networks did not receive such Clinical Treatment Form or Reopen/Modification form, Contracted Chiropractor shall be responsible to resubmit the Clinical Treatment Form or Reopen/Modification form to ASH Networks within the time period specified in Attachment F to this Agreement. Contracted Chiropractor shall waive all charges related to non-payment of claims if Contracted Chiropractor does not properly follow up on a submission of a Clinical Treatment Form or Reopen/Modification form. Attachment J defines which submissions covered by this section are included within the ETP Program.

2.05    Contracted Chiropractor Non-Billing of Member. Contracted Chiropractor understands that the Member may not be billed for any charges not approved because of late submission of CTFs, Reopen/Modification forms, or Medical Records by Contracted Chiropractor and that all such charges shall be waived by Contracted Chiropractor.

2.06    Emergency Services or Urgent Services Evaluation. Contracted Chiropractor understands and agrees that in the event Contracted Chiropractor renders Emergency Services or Urgent Services to a Member, Contracted Chiropractor shall be responsible to provide ASH Networks and/or Payor with sufficient documentation acceptable to ASH Networks and/or Payor: (i) to substantiate that the services rendered were Emergency Services or Urgent Services according to the expectations of a prudent layperson; and (ii) to verify that Emergency Services or Urgent Services were Medically Necessary Services through clinical services evaluation by ASH Networks and/or Payor after such services have been rendered. ASH Networks will require Contracted Chiropractor to comply with clinical services evaluation requirements for Emergency Services and Urgent Services, as defined in the applicable Payor Summary. If Contracted Chiropractor does not provide such documentation, ASH Networks may determine that such services are not Emergency Services or Urgent Services. Contracted Chiropractor may appeal any such determination by ASH Networks and/or Payor. Nothing in this section shall be construed to limit or restrict the timely provision of Medically Necessary Services.

2.07    Appeal of ASH Networks Clinical Services Evaluation Determination. Contracted Chiropractor may appeal any clinical services evaluation determination, such as an evaluation of a Clinical Treatment Form, Reopen/Modification form, or determination of non-Emergency Services or non-Urgent Services or Emergency Services or Urgent Services by ASH Networks or Payor.

    2.07.1    Timelines. Appeals under this Section of this Attachment, but only such appeals, must be made by Contracted Chiropractor no later than one hundred eighty (180) days after receipt of notice of any adverse determination from ASH Networks. The notice of a clinical services adverse determination shall also describe further appeal rights, if any, and timelines of such additional appeal rights, based on the applicable Payor Summary.

    2.07.2    Clinical Appeal. ASH Networks shall review appeals of Medical Necessity determinations in accordance with its Clinical Services Management Program and/or through its Clinical Performance Management Program. The appeal is commenced by providing a written request to ASH Networks within one hundred eighty (180) days of receipt of the notice of a clinical services evaluation determination.

    The first level appeal is reviewed by a Clinical Services Manager who practices in the same or similar specialty as Contracted Chiropractor and who had no involvement in the original determination. Following its review of an appeal, ASH Networks shall provide written communication to the Contracted Chiropractor of its determination and the rationale for the determination. If the original determination is upheld, Contracted Chiropractor may request a second level appeal within forty five (45) days of receipt of the first level appeal determination.

    The second level appeal is reviewed by a Clinical Director or a Clinical Services Manager who has had no involvement in any previous determination related to this appeal. Where the Clinical Director or Clinical Services Manager expects to uphold the previous determination the Clinical Director or Clinical Services Manager will consult with a contracted provider of a like specialty before making a final determination. Following its review of the second level appeal, ASH Networks shall provide written communication to the Contracted Chiropractor of its determination and the rationale for the determination. If the first level appeal determination is upheld, Contracted Chiropractor may request a third level appeal within forty five (45) days of receipt of second level appeal determination.

    The third level appeal is reviewed by the Clinical Provider Review Committee which includes contracted providers of a like specialties and senior clinical staff. Following its review of the third level appeal, ASH

Networks shall provide written communication to the Contracted Chiropractor of its determination and the rationale for the determination. If the second level appeal determination is upheld, Contracted Chiropractor may take the issue to an external review organization as specified in Section 2.07.4 or may go through an arbitration as detailed in ARTICLE 17, but may not do both.

**2.07.3** **Administrative Appeal**. ASH Networks shall review appeals of clinical services evaluation determinations resulting from the untimely or incorrect submission of CTFs, Reopen/Modification forms, and/or Medical Records in accordance with its Clinical Services Management Program and/or through its Clinical Performance Management Program. The appeal is commenced by providing a written request to ASH Networks within one hundred eighty (180) days of receipt of the notice of a clinical services evaluation determination.

The first level appeal is reviewed by an Administrative Appeal Committee. Following its review of an appeal, ASH Networks shall provide written communication to the Contracted Chiropractor of its determination and the rationale for the determination. If the original determination is upheld, Contracted Chiropractor may request a second level appeal within forty five (45) days of receipt of the determination of the first level appeal determination.

The second level appeal is reviewed by the Administrative Review Committee. Following its review of a second level appeal, ASH Networks shall provide written communication to the Contracted Chiropractor of its determination and the rationale for the determination. If the first level appeal determination is upheld, Contracted Chiropractor may request a third level appeal within forty five (45) days of receipt of the second level appeal determination.

The third level appeal is reviewed by the Executive Review Committee. Following its review of a third level appeal, ASH Networks shall provide written communication to the Contracted Chiropractor of its determination and the rationale for the determination. If the second level appeal determination is upheld, Contracted Chiropractor may take the issue to an external review organization as specified in Section 2.07.42.07.4 or may go through an arbitration as detailed in ARTICLE 17, but may not do both.

**2.07.4** **External Review Organization**. Contracted Chiropractor shall be offered the opportunity to request a review by an External Review Organization (ERO) for the final determination of disputes once the appeals process defined in this Section has been exhausted. The election to use an ERO shall require the payment by Contracted Chiropractor of fifty dollars ($50) to initiate the process. The determination of the ERO shall be final and binding on ASH Networks and the Contracted Chiropractor and thus shall result in the Contracted Chiropractor waiving Contracted Chiropractors' right to arbitration as described in ARTICLE 17 of this Provider Services Agreement.

**2.08**   Late Submission of an Appeal. Contracted Chiropractor agrees that the Member may not be billed for any non-payment of claims because of late submission of an appeal by Contracted Chiropractor and that all such charges must be waived by Contracted Chiropractor. ASH Networks may change its appeal process in accordance with ARTICLE 23 of this Agreement. Nothing in this Attachment F shall prevent or be construed to prevent Contracted Chiropractor from seeking approval for Covered Services that are Medically Necessary Services for any Member.

**2.09**   Clinical Services Management Program Medical Records Evaluation. ASH Networks may perform a Medical Records Evaluation as a component of the Clinical Services Management Program.

**2.10**   Additional Payor Requirements. If specified in the applicable Payor Summaries, clinical services evaluation and/or appeals review may be performed by Payor, external review organization, or other designated entity and other timelines or processes may be required.

**2.11**   Changes to Clinical Services Management Program. Clinical Services Management Program may be changed by ASH Networks, in accordance with ARTICLE 23 of this Agreement.

**3.0**   **Clinical Performance Management Program**. The Clinical Performance Management Program is utilized by ASH Networks or any Payor, to evaluate the clinical performance of Contracted Chiropractor in accordance with professionally recognized standards of practice. Contracted Chiropractor agrees and acknowledges that all Covered Services must be Medically Necessary Services and ASH Networks Members shall receive Covered Services in accordance with contractual requirements and professionally recognized standards of practice. The Clinical Performance Management Program, in which the Contracted Chiropractor agrees to participate, includes but is not limited to (i) Medical Records Evaluations; (ii)

Case 3:14-cv-02022   Document 30-7   Filed 12/23/14   Page 59 of 83 PageID #: 386

implementation of Clinical Performance Improvement, Corrective Action Plans and Sanctions when necessary; (iii) monitoring of Contracted Chiropractor's practice patterns and clinical protocols to evaluate compliance with standards and guidelines; (iv) monitoring of patient satisfaction; (v) resolution of Member clinical appeals and grievances; and (vi) resolution of Provider clinical appeals and grievances. Therefore, ASH Networks and Contracted Chiropractor agree to carry out the following responsibilities to demonstrate compliance with Clinical Performance Management Program requirements of ASH Networks, Payors, regulators and accreditation organizations.

3.01    <u>Performance Improvement Requirements</u>. Contracted Chiropractor agrees to comply with the ASH Networks Clinical Performance Management Program and Corrective Action Plans including responding to requests for information, as defined by ASH Networks. Contracted Chiropractor agrees to comply with Corporate Quality Oversight Committee Performance Improvement Requirements in a reliable and consistent manner. Frequent and/or repeated lack of compliance with program requirements may be considered a pattern of performance that is unacceptable to ASH Networks. Contracted Chiropractor shall demonstrate a consistent pattern of compliance with Corporate Quality Oversight Committee Performance Improvement Program and Corrective Action Plans. Contracted Chiropractor agrees to demonstrate a pattern of acceptable clinical performance and acceptable pattern of Member satisfaction as determined by the Clinical Provider Review Committee and the Corporate Quality Oversight Committee.

3.02    <u>Clinical Performance Management Program Site Evaluation</u>. A site evaluation may be required as a component of ASH Networks' quality assurance activities. The Contracted Chiropractor's compliance with the requirements of the site evaluation may affect the provider's participation. Contracted Chiropractor agrees to comply with the site evaluation when requested by ASH Networks.

3.03    <u>Clinical Corrective Action Plan</u>. Contracted Chiropractor agrees to comply with any Corrective Action Plan implemented within the Clinical Performance Management Program and as defined in Section 2.03.11 of this Agreement. A Contracted Chiropractor's failure to respond to, or comply with, a Corrective Action Plan will constitute a breach of the Agreement giving rise to ASH Network's right to terminate for cause under Section 5.03.

3.04    <u>Sanction of a Contracted Chiropractor</u>. Upon review and determination of the Provider Quality and Credentialing Committee or the Clinical Provider Review Committee, ASH Networks reserves the right to issue a sanction on the Contracted Chiropractor's participation in the ASH Networks network in response to Contracted Chiropractor's non-compliance with the Clinical Performance Management Program or the Administrative Program.

   3.04.1    Contracted Chiropractor may appeal the imposition of a sanction. Procedures for appeal will be presented to the Contracted Chiropractor in writing, in the case that a sanction is issued.

   3.04.2    Sanction shall be lifted at such time as the Contracted Chiropractor demonstrates to the Provider Quality and Credentialing Committee or the Clinical Provider Review Committee that they have complied with the performance improvement requirements that were issued by ASH Networks and such proof is deemed acceptable to the reviewing entity.

   3.04.3    Sanction shall be implemented for only the duration of time necessary for the Contracted Chiropractor to demonstrate performance improvement.

   3.04.4    Following the Provider Quality and Credentialing Committee's or the Clinical Provider Review Committee's acceptance of the Contracted Chiropractor's demonstration, the committee will make a determination regarding the continued participation of the Contracted Chiropractor and the lifting of the Sanction.

   3.04.5    During the time the sanction is in place, the provider will not be included in provider directories provided to clients and will not be eligible for providing Covered Services to Members except in cases where continuity of care provisions provide for continued treatment.

   3.04.6    Sanctions do not represent terminations from the network and can be cured with the demonstration of performance improvement defined in the applicable Corrective Action Plan.

3.05    <u>Appeal of Sanction Determinations</u>. Contracted Chiropractor may appeal the imposition of a Sanction within thirty (30) days of the date of the Sanction, unless the timeline is otherwise defined by applicable law. The process and timelines for the appeal shall be provided to Contracted Chiropractor by ASH Networks in written form at the time of notice of Sanction.

Case 3:14-cv-02022   Document 30-7   Filed 12/23/14   Page 60 of 83 PageID #: 387

**3.06**   Clinical Performance Management Program Medical Records Evaluation. ASH Networks may perform a Medical Records Evaluation as a component of the Clinical Performance Management Program.

**4.0**   **Medical Records Evaluation Program**. Maintenance of accurate, legible and clear Medical Records is essential to the effective management of a Member's clinical care rendered by Contracted Chiropractor and the outcome of that care. The Medical Records Evaluation Program is utilized by ASH Networks or any Payor, to evaluate the Medical Necessity and the clinical effectiveness and appropriateness of Chiropractic Services. Further, the Medical Records Evaluation Program is utilized to evaluate compliance with Medical Records keeping guidelines and professionally recognized standards. The Medical Records Evaluation Program will track the outcomes of Medical Records and Clinical Treatment Form reviews and shall use that evaluation in support of the Clinical Services Management Program, Clinical Performance Management Program, and Administrative Program.

**4.01**   Requirements of Medical Records Evaluation Program. The Medical Records Evaluation Program supports each of the other Clinical Management Programs. The requirements for Medical Records Evaluation for the Credentialing/Recredentialing Program, Clinical Services Management Program and the Clinical Performance Management Program are described in each of the applicable sections above.

**4.02**   Medical Records Quality. Contracted Chiropractor agrees to maintain Medical Records in compliance with guidelines published in the Agreement, in accordance with professional standards and in accordance with applicable federal and state law.

**4.03**   Retrospective Medical Record Evaluation (RMRE). The Medical Records Evaluation Program includes a random retrospective evaluation of a random sample of the Member's Medical Records prepared and maintained by the Contracted Chiropractor. The RMRE may be performed for (a) services rendered to Members during the Treatment Form Waiver; (b) at other times when the evaluation of Medical Records is necessary to resolve an appeal or grievance; (c) in support of a clinical performance evaluation implemented by the Provider Quality and Credentialing Committee; and (d) in support of the Clinical Services Management Program when such review is necessary to determine Medical Necessity. ASH Networks shall respond to the Contracted Chiropractor in writing following a RMRE. The response will document ASH Networks decisions and follow-up actions to be completed by the Contracted Chiropractor. Unless an applicable Payor Summary requires otherwise, Contracted Chiropractor agrees to submit Medical Records requested for Retrospective Medical Record Evaluation within fifteen (15) days of the date of written request from ASH Networks.

**4.04**   Medical Records Submission. Unless a Payor Summary provides otherwise, Contracted Chiropractor agrees to submit the required Medical Records as requested by ASH Networks in support of the Clinical Management Programs. Contracted Chiropractor shall provide ASH Networks or Payor with access to Member's complete Medical Records including x-rays, consistent with applicable state and federal laws and the Agreement, for purposes of reviewing compliance with the Clinical Services Management Program and Clinical Performance Management Program within fifteen (15) days of request. Contracted Chiropractor shall provide copies of all Medical Records, including x-rays, or other records at no cost to ASH Networks or Payor unless otherwise specified in applicable state law. Medical Records received by ASH Networks after the required submission date appropriate to the reason for the request, as defined throughout Attachment F to this Agreement, may result in the generation of a Corrective Action Plan and/or other action determined by the Provider Quality and Credentialing Committee.

Contracted Chiropractor agrees to submit Medical Records requested for review in response to a member appeal or grievance within five (5) days of the date of written request or Contracted Chiropractor agrees to submit Medical Records within twenty-four (24) hours for urgent clinical service evaluation when such evaluation is determined to be urgent by ASH Networks.

**4.05**   Changes to Medical Records Evaluation Program. The Medical Records Evaluation Program may be changed by ASH Networks, in accordance with ARTICLE 23 of this Agreement.

Case 3:14-cv-02022   Document 30-7   Filed 12/23/14   Page 61 of 83 PageID #: 388

**CHIROPRACTIC PROVIDER SERVICES AGREEMENT**

**ATTACHMENT G - CLAIMS SUBMISSION AND PAYMENT**

Expectations of Members, Payors, regulatory agencies and accreditation organizations include the timely and accurate submission of claims by Contracted Chiropractor and adjudication of claims payment for Covered Services provided to Members by ASH Networks and Payor. Therefore, ASH Networks and Contracted Chiropractor agree to fulfill the following responsibilities relating to timely and accurate claims submission and adjudication:

**1.0**   **Claims Submission**. Contracted Chiropractor shall submit claims according to the following submission timelines:

    **1.01**   <u>Claims Submission</u>. Contracted Chiropractor should make best efforts to submit claims, and other information that may be required to process such claims, as defined in the Operations Manual, to ASH Networks or Payor within thirty (30) days after the date of service. Claims or bills received over one hundred eighty (180) days after the date of service will not be approved for payment due to late submission unless the late submission is due to "extraordinary circumstances", as determined by ASH Networks. Contracted Chiropractor may present grounds for ASH Networks to consider a late submission as being due to "extraordinary circumstances" pursuant to the appeal process set forth in Section 6.0 of this Attachment G. Contracted Chiropractor shall waive all charges against Member, ASH Networks and/or Payor related to claims received by ASH Networks more than one hundred eighty (180) days after the date of service.

    **1.02**   <u>Claim Resubmission</u>. If any claim is returned by ASH Networks or Payor to Contracted Chiropractor for any reason, Contracted Chiropractor shall resubmit such claim, with required corrections or additional information, to ASH Networks or Payor, and must be received by ASH Networks or Payor, within sixty (60) days after the date of the determination by ASH Networks or Payor, as shown on the Remittance Advice form or one hundred eighty (180) days from the date of service, whichever is greater, unless otherwise specified in this Attachment G to this Agreement. If the late submission is due to "extraordinary circumstances", as determined by ASH Networks, Contracted Chiropractor may present grounds for ASH Networks to consider a late submission as being due to "extraordinary circumstances" pursuant to the appeal process set forth in Section 6.0 of this Attachment G.

    **1.03**   <u>Coordination of Benefits and/or Third Party Liability Claims</u>. In the event Contracted Chiropractor submits claims to ASH Networks as a secondary payor under the coordination of benefits provision or under the third party liability provision, as defined in this Attachment G, Sections 3.0 and 4.0 respectively, Contracted Chiropractor shall submit such claim no later than one hundred eighty (180) days after the date of the determination of benefits by the primary payor, unless otherwise specified in a Payor Summary. Claims submitted over one hundred eighty (180) days after the date of the determination of benefits by the primary payor will not be approved for payment due to late submission, unless the late submission is due to "extraordinary circumstances", as determined by ASH Networks. Contracted Chiropractor may present grounds for ASH Networks to consider a late submission as being due to "extraordinary circumstances" pursuant to the appeal process set forth in Section 6.0 of this Attachment G.

    **1.04**   <u>Late Submission of Claim</u>. Contracted Chiropractor understands that if Contracted Chiropractor does not submit claims in accordance with the timelines specified in this Attachment G to this Agreement, such claims will not be approved for payment. Contracted Chiropractor agrees to waive any charges not approved for payment by ASH Networks or Payor due to late submission of claims by Contracted Chiropractor to ASH Networks or Payor. Contracted Chiropractor shall not bill Member for waived charges. Contracted Chiropractor may appeal claims not approved for payment due to late submission or resubmission in accordance with the provisions of this Attachment G, Section 6.0.

**2.0**   **Claims Payment**. Upon submission of claims as stated in this Attachment G to this Agreement, Contracted Chiropractor agrees to accept as payment in full for Covered Services those Fee Schedule Amounts set forth in the applicable Payor Summary. Contracted Chiropractor agrees that payment will be approved only for those Chiropractic Services that have been determined to be Medically Necessary Services and otherwise eligible for payment as Covered Services under a Member Benefit Plan. ASH Networks requires its Contracted Chiropractors to not seek reimbursement for Covered Services rendered by Contracted Chiropractor to him/herself or to any person who lives in that Contracted Chiropractor's home or who is related to that Contracted Chiropractor by blood or by marriage (spouse, domestic partner, children, parent, brother or sister; or a parent, brother or sister of the Contracted Chiropractor's spouse). ASH Networks shall make payment to the Tax ID Owner designated in Exhibit 1 to Attachment A, on behalf of Contracted Chiropractor within thirty (30) calendar days of receipt of a properly completed Clean Claim, or within the timelines otherwise described in the applicable Payor Summary and in accordance with applicable law. A Clean Claim will be considered properly completed if Contracted Chiropractor

Case 3:14-cv-02022    Document 30-7    Filed 12/23/14    Page 62 of 83 PageID #: 389

complies with the billing procedures set forth in this Agreement and the Operations Manual. Attachment J defines which inquiries/submissions concerning claims submission and payment are included within the ETP Program.

**2.01**    <u>Non-Payment of Services</u>. Contracted Chiropractor understands and agrees that ASH Networks or Payor may not approve payment under a Member Benefit Plan for Chiropractic Services due to the absence of Medical Necessity or due to Member ineligibility, benefit limitations and/or exclusions. Contracted Chiropractor may appeal any non-payment of services, according to the provisions in Attachment G to this Agreement.

**2.02**    <u>Claims Adjustments</u>. ASH Networks or Payor may be required to make adjustments to claims previously paid by ASH Networks or Payor to correct over- or under-payments as a result of (i) corrected information received by ASH Networks or Payor, or (ii) incorrect determination of benefits or calculation of payment amounts. If such adjustment calculation results in an under-payment to Contracted Chiropractor, ASH Networks or Payor will provide additional payment to the Tax ID Owner designated in Exhibit 1 to Attachment A, on behalf of Contracted Chiropractor for the balance due. Contracted Chiropractor has eighteen (18) months from the date of the initial Remittance Advice to contact ASH Networks to request a claims adjustment due to an under-payment that was the result of an error or improper denial on the part of ASH Networks. If such adjustment results in an over-payment to Contracted Chiropractor, ASH Networks shall communicate in advance and in writing the intent to recover the overpayment amount from future claims payments and shall provide Contracted Chiropractor an opportunity to respond to such intent. ASH Networks may request a refund from Contracted Chiropractor in lieu of recovering such overpayments from future claim payments.

If such adjustment is to correct an overpayment, ASH Networks shall be entitled to a refund of the overpaid amount from the Contracted Chiropractor, provided that the overpayment adjustment is made within the earlier of (a) one hundred eighty days (180) after the date of the overpayment, or (b) any shorter period specified by state law. However, the preceding time limits shall not apply if the overpayment was the result of fraud on the part of the Contracted Chiropractor. ASH Networks shall notify the Contracted Chiropractor of the overpayment and may, to the extent permitted by state law, either (a) request that the Contracted Chiropractor refund the overpaid amount to ASH Networks, or (b) inform the Contracted Chiropractor that it intends to recover the overpaid amount by offsetting future claim payments due to the Contracted Chiropractor. If Contracted Chiropractor disagrees with ASH Networks overpayment determination, Contracted Chiropractor may appeal the determination as set forth in Section 6.0 of this Attachment G. During such an appeal, ASH Networks' recoupment of the overpayment is stayed until the appeal determination is finalized.

**2.03**    <u>Member Billing</u>. Nothing in this Agreement shall preclude Contracted Chiropractor from charging for Chiropractic Services rendered to Members which are not Covered Services under a Member Benefit Plan, as defined in applicable Payor Summary. Any such charges shall be consistent with Contracted Chiropractor's usual and customary fees, except where Member is covered under an Affinity Program, in which case such charges shall be in accordance with applicable Payor Summary. Contracted Chiropractor shall notify Member, in writing, in advance of providing Chiropractic Services, in accordance with procedures in the Agreement, that Member shall be responsible to pay for Chiropractic Services that are not Covered Services. Contracted Chiropractor agrees to use the ASH Networks Member Billing Acknowledgment form to arrange payment by a Member for Chiropractic Services that are not Covered Services.

**2.04**    <u>Member Billing Statements</u>. Contracted Chiropractor may bill Member for Member Payments, under a Member Benefit Plan, not previously collected at time of services. Such bills should only include those amounts owed by the Member. To avoid confusion about the Member's financial responsibility, Contracted Chiropractor shall not issue billing statements to Members indicating the amounts billed or Fee Schedule amounts owed or paid by ASH Networks or Payor, unless the bill clearly states the amount owed by the Member and the inclusion of such information is done in a manner which will not cause confusion for the Member. The bill should only include Contracted Chiropractor's name and address, dates of service, CPT Codes of Covered Services, narrative descriptions of the CPT Codes of Covered Services, and Member Payments due or paid.

**2.05**    <u>Secondary Payment</u>. Contracted Chiropractor shall pursue all primary sources of payment prior to billing ASH Networks, in accordance with this Attachment G to this Agreement. ASH Networks shall pay to Contracted Chiropractor only those amounts which, when added to the amounts received by Contracted Chiropractor from other payment sources, equal the Contracted Chiropractor's billed charges, not to exceed the Fee Schedule Amounts as set forth in the applicable Payor Summary.

Case 3:14-cv-02022 Document 30-7 Filed 12/23/14 Page 63 of 83 PageID #: 390

**3.0**    **Coordination of Benefits**. In the event a Member is covered under one or more benefit plans in addition to an ASH Networks or Payor Member Benefit Plan, ASH Networks shall coordinate benefits with other payors to ensure that the maximum allowable benefit available to Members is not exceeded and to prevent duplication of benefit payments for the same service. Coordination of benefits occurs as follows:

    **3.01**    <u>ASH Networks or Payor is Primary Payor</u>. If ASH Networks or Payor is the primary payor for Member under Member Benefit Plan, pursuant to applicable coordination of benefit provisions of state and federal law, ASH Networks or Payor shall pay Contracted Chiropractor the Fee Schedule Amounts set forth in the applicable Payor Summary, reduced by any applicable Member Payments.

    **3.02**    <u>ASH Networks or Payor is Secondary Payor</u>. If ASH Networks or Payor under state and federal laws is not the primary payor, Contracted Chiropractor shall collect payment from the primary payors, following Contracted Chiropractor's customary collection procedures with respect thereto, without being limited in such collection by the Fee Schedule Amounts agreed to under this Agreement.

        In the event Contracted Chiropractor has pursued all primary payors and it is determined that full payment cannot be obtained, Contracted Chiropractor shall submit a claim for reimbursement by ASH Networks or Payor. ASH Networks or Payor shall pay to Contracted Chiropractor only those amounts which, when added to the amounts received by Contracted Chiropractor from other payment sources, equal the Fee Schedule Amounts as set forth in the applicable Payor Summary.

    **3.03**    <u>ASH Networks or Payor May Determine Which Payor Is Responsible</u>. Contracted Chiropractor agrees ASH Networks or Payor shall, based upon state and federal law, the Operations Manual, and/or the procedures utilized by Payor, determine primary and secondary payor status. ASH Networks or Payor may make this designation at any time, including but not limited to before, during or after the course of treatment has been provided, ASH Networks or Payor has determined services are Covered Services, or Contracted Chiropractor has been reimbursed by ASH Networks or Payor.

**4.0**    **Third Party Liability**. In the event of third party liability, Contracted Chiropractor shall provide Chiropractic Services in accordance with all the terms and conditions of this Agreement, unless specified otherwise in the applicable Payor Summary. Contracted Chiropractor shall bill ASH Networks or Payor for Covered Services as follows:

    **4.01**    <u>Third Party Payors</u>. Contracted Chiropractor shall bill applicable third party payor for all services identified by Contracted Chiropractor, ASH Networks, and/or Payor as the responsibility of a third party. Contracted Chiropractor may elect not to bill ASH Networks and/or Payor until Contracted Chiropractor receives a determination of benefits statement from the third party payor. If Contracted Chiropractor receives a non-payment determination from the third party, Contracted Chiropractor may then bill ASH Networks within one hundred eighty (180) days from the date of the third party determination, unless a Payor Summary requires Contracted Chiropractor to bill in a shorter timeframe. Claims submitted over one hundred eighty (180) days after the date of the determination of benefits by the third party payor will not be approved for payment due to late submission, unless the late submission is due to "extraordinary circumstances", as determined by ASH Networks. Contracted Chiropractor may present grounds for ASH Networks to consider a late submission as being due to "extraordinary circumstances" pursuant to the appeal process set forth in Section 6.0 of this Attachment G.

        Contracted Chiropractor may bill ASH Networks for services while awaiting a determination from a third party payor. If the Member receives a recovery from a third party, Contracted Chiropractor will be eligible to seek payment from Member for the difference between the Contracted Chiropractor's usual and customary charges and the Fee Schedule Amounts under this Agreement, and for any Non-Covered or non-approved services, unless otherwise specified in the applicable Payor Summary. If Member receives such recovery, ASH Networks and/or Payor reserves the right to seek reimbursement from Member for all amounts paid on Member's behalf by ASH Networks and/or Payor to Contracted Chiropractor, unless otherwise specified by state law. Contracted Chiropractor agrees to assist ASH Networks and/or Payor in recovering such amounts paid to Contracted Chiropractor, if recovery is made by Member. If ASH Networks, Contracted Chiropractor or Payor recovers any settlement, award or recovery as a result of third party liability, ASH Networks, Contracted Chiropractor and/or Payor shall divide such amount on a prorata basis based on all amounts paid by ASH Networks and/or Payors, including medical/clinical, hospital, surgical, chiropractic, dental or other health plans. If Member does not receive a recovery from third party, Contracted Chiropractor shall accept ASH Networks Fee Schedule Amounts as payment in full.

**5.0**  **Follow-Up on Claims**. If Contracted Chiropractor does not receive payment or an explanation of payment status on a claim from ASH Networks or Payor, within thirty (30) days after submission of a claim to ASH Networks or Payor, Contracted Chiropractor shall contact ASH Networks by telephone or ASHLink or by submission of a claim tracer or contact Payor by telephone, as directed in the Payor Summary, to confirm ASH Networks' or Payor's receipt of the claim. In no event shall Contracted Chiropractor wait more than (180) days after the date of service to follow up on a claim or the Contracted Chiropractor may miss the claim submission deadline. If ASH Networks or Payor did not receive such claim, Contracted Chiropractor shall be responsible to submit the claim to ASH Networks or Payor, as directed in the Payor Summary, within the time period specified in this Attachment G to this Agreement. Contracted Chiropractor agrees that Contracted Chiropractor's failure to submit and follow up on claims within one hundred eighty (180) days after the date of services will result in ASH Networks' or Payor's non-payment of the claim. However, ASH Networks will not deny a claim due to late submission if the late submission was due to "extraordinary circumstances", as determined by ASH Networks. Contracted Chiropractor may present grounds for ASH Networks to consider a late submission as being due to "extraordinary circumstances" pursuant to the appeal process set forth in Section 6.0 of this Attachment G. Contracted Chiropractor agrees that the Member shall not be billed for any charges not approved for payment if Contracted Chiropractor does not submit and follow up on claims within one hundred eighty (180) days after the date of service and that all such charges must be waived by Contracted Chiropractor. Contracted Chiropractor may appeal any non-payment of claims in accordance with the provisions of this Attachment G to this Agreement. Attachment J defines which inquiries covered by this section are included within the ETP Program.

**6.0**  **Appeal of ASH Networks or Payor Non Payment of Claim**. Contracted Chiropractor may appeal any non-payment of a claim by ASH Networks or Payor. ASH Networks shall consider the appeal through its Administrative Program. Contracted Chiropractor agrees that an appeal of a non-payment of claim must be submitted to ASH Networks or Payor as specified in applicable Payor Summary, by Contracted Chiropractor within one hundred eighty (180) days after the date of the claim non-payment determination from ASH Networks or Payor. If Contracted Chiropractor does not file an appeal with ASH Networks or Payor within one hundred eighty (180) days after the date of the determination of non-payment of a claim by ASH Networks or Payor, such appeal will not be considered by ASH Networks or Payor. Contracted Chiropractor agrees that the Member shall not be billed for any charges for Covered Services not approved for payment due to late submission of an appeal by Contracted Chiropractor and that all such charges must be waived by Contracted Chiropractor.

The first level appeal is reviewed by an Administrative Appeal Committee. Following its review of an appeal, ASH Networks shall provide written communication to the Contracted Chiropractor of its determination and the rationale for the determination. If the original determination is upheld, Contracted Chiropractor may request a second level appeal within forty five (45) days of receipt of the first level appeal determination.

The second level appeal is reviewed by the Administrative Review Committee. Following its review of a second level appeal, ASH Networks shall provide written communication to the Contracted Chiropractor of its determination and the rationale for the determination. If the first level appeal determination is upheld, Contracted Chiropractor may request a third level appeal within forty five (45) days of receipt of the second level appeal determination.

The third level appeal is reviewed by the Executive Review Committee. Following its review of a third level appeal, ASH Networks shall provide written communication to the Contracted Chiropractor of its determination and the rationale for the determination. If the second level appeal determination is upheld, Contracted Chiropractor may take the issue to an external review organization as specified below or may go through an arbitration as detailed in ARTICLE 17, but may not do both.

Contracted Chiropractor shall be offered the opportunity to request a review by an External Review Organization (ERO) for the final determination of disputes once the appeals process defined in this Section has been exhausted. The election to use an ERO shall require the payment by Contracted Chiropractor of fifty dollars ($50) to initiate the process. The determination of the ERO shall be final and binding on ASH Networks and the Contracted Chiropractor and thus shall result in the Contracted Chiropractor waiving Contracted Chiropractors' right to arbitration as described in ARTICLE 17 of this Provider Services Agreement.

**7.0**  **Improper Collection of Charges**. Contracted Chiropractor shall collect Member Payments from Members only as specified in the applicable Payor Summary. With the exception of Member Payments and charges for Chiropractic Services that are not Covered Services delivered on a fee-for-service basis to Members, Contracted Chiropractor shall in no event bill, charge, collect or receive any form of surcharge or improper payment from any Member for Covered Services provided by Contracted Chiropractor pursuant to this Agreement, including but not limited to the following events:

  1.  Nonpayment by ASH Networks or Payor;

  2.  Insolvency of ASH Networks or Payor;

Case 3:14-cv-02022   Document 30-7   Filed 12/23/14   Page 65 of 83 PageID #: 392

3. Contracted Chiropractor does not follow ASH Networks' claims submission procedures; or

4. Breach of this Agreement.

In addition, if Contracted Chiropractor does not obtain or receive verification that Chiropractic Services are Medically Necessary Services in accordance with the Clinical Services Management Program, Contracted Chiropractor shall not bill, charge, collect or receive any form of payment from the Member for such Chiropractic Services. Further, if Contracted Chiropractor furnishes Chiropractic Services to a Member and collects or receives any form of payment (including Member Payments) from the Member for such Chiropractic Services and such Chiropractic Services are subsequently determined by ASH Networks not to be Medically Necessary Services, Contracted Chiropractor shall refund such payment to the Member promptly upon such determination.

Contracted Chiropractor shall not maintain any action at law or in equity (a) against Member or Payor to collect sums owed by ASH Networks to Contracted Chiropractor, or (b) against Member or ASH Networks to collect sums owed by Payor to Contracted Chiropractor. Nothing in this Agreement, however, shall be construed to prevent Contracted Chiropractor from providing Chiropractic Services that are not Covered Services for a usual and customary fee as set forth in this Attachment G to this Agreement herein. Upon notice of any charge made directly to Member by Contracted Chiropractor (other than a charge for a Member Payment or a charge for Chiropractic Services that are not Covered Services where the Member has agreed in writing to pay for such services), this Agreement may be terminated and any appropriate action may be taken consistent with the terms of this Agreement to eliminate such charge, including requiring Contracted Chiropractor to return all sums collected by Contracted Chiropractor as surcharges from Members or their representatives.

Case 3:14-cv-02022   Document 30-7   Filed 12/23/14   Page 66 of 83 PageID #: 393

**CHIROPRACTIC PROVIDER SERVICES AGREEMENT**

**ATTACHMENT J - ELECTRONIC TRANSACTION PROCESSING (ETP) PROGRAM**

1.0    **ETP Program Transactions**. Contracted Chiropractor shall receive an ETP Program Incentive Payment from or be charged an Administrative Processing Fee by ASH Networks based on the percentage of successful transactions submitted through the ETP Program.

For the purposes of the ETP Program, business transactions between Contracted Chiropractor and ASH Networks shall be defined as follows:

Successful Transactions: Successful transactions are defined as those transactions that are submitted completely and accurately with the information required to be designated either an ETP Program Transaction or Non-ETP Program Transaction and do not include Exempt Transactions or Unsuccessful Transactions that do not meet any of the criteria defined below:

ETP Transaction: An ETP Transaction is defined as one of the following transactions that is either (a) submitted completely and accurately to ASH Networks via the internet through ASHLink, or (b) submitted through an ASH Networks approved clearinghouse with all information required by ASH Networks in order to process the ETP Program Transaction to completion.

Transactions:

a)       Eligibility and benefit plan verification;

b)       Clinical Treatment Form;

c)       Reopen/modification of a Clinical Treatment Form;

d)       Claim submission;

e)       Claim re-submission;

f)       Referral submissions

Non-ETP Program Transaction: A Non-ETP Transaction, excluding Unsuccessful Transactions, is defined as a transaction that is submitted to ASH Networks as a telephone inquiry, including eligibility verifications and benefit inquiries, or submission/resubmission of a treatment plan or claim by paper or facsimile with information required by or researched by ASH Networks in order to process the Non-ETP Program Transaction to completion by ASH Networks.

Any transaction that is solely generated by the ASHLink system or a duplicate request of a previously submitted successful transaction are not Successful Transactions and shall not be included in the calculation of the ETP Usage Rate.

Exempt Transactions: Exempt Transactions shall not be included in any calculation defined in the ETP Program and, therefore, not be a factor in the determination of either ETP Program Incentive Payments, Administrative Fees or ETP Usage Rates. Exempt Transactions shall include inquiries, whether by written correspondence, telephone or fax, from Contracted Chiropractor where dialogue with ASH Networks staff is appropriate regarding:

a)       Clinical services evaluation determination- related telephone calls to Clinical Services Managers;

b)       those ETP Transactions in which information could not be immediately provided to Contracted Chiropractor by ASH Networks, such as eligibility requests that require ASH Networks to contact a third party;

c)       Credentialing or Recredentialing Program;

d)       Medical Records Evaluation Program;

e)       Clinical Performance Management Program;

ASH CONFIDENTIAL
Not To Be Reproduced or disclosed
Without Written Permission

Case 3:14-cv-02022   Document 30-7   Filed 12/23/14   Page 67 of 83 PageID #: 394

f)      Retrospective Medical Records evaluations;

g)      Emergency Services or Urgent Services evaluations;

h)      Clinical or Administrative Corrective Action Plans;

i)      appeals and/or grievances;

j)      contractual or other administrative topics;

k)      education or outreach activity;

l)      other related matters whereby electronic response to an inquiry or issue related to a business matter between Contracted Chiropractor and ASH Networks would not be functional; or

m)      internet originated communication unrelated to Successful or Unsuccessful Transactions as defined in this section.

Unsuccessful Transactions: Unsuccessful Transactions shall not be included in any calculation defined in the ETP program and, therefore, not be a factor in the determination of either ETP Program Incentive Payments or Administrative Fees. Unsuccessful Transactions shall include those transactions in which information could not be immediately provided to Contracted Chiropractor by ASH Networks other than electronic correspondence using the e-communication function of ASHLink; and, those transactions not defined as Successful Transactions or Exempt Transactions above.

In no event shall the identification of business transactions into the categories defined above for the purposes of administering the ETP Program prevent, act as a barrier or be considered an incentive for Contracted Chiropractor to not arrange for or provide Medically Necessary Covered Services for Member Benefit Plans under this Agreement.

**2.0**      **ETP Usage Rate**. The ETP Program Incentive Payment shall be based on Contracted Chiropractor's ETP Usage Rate for the month immediately prior to the current month. The ETP Usage Rate shall be calculated as:

a)      The sum of Successful ETP Transactions submitted to ASH Networks as defined in Section 1.0 above divided by:

b)      The sum of all Successful Transactions including Successful ETP Transactions and Successful Non-ETP Transactions submitted to ASH Networks as defined in Section 1.0.

Calculating numbers of transactions: For purposes of calculating the total number of ETP Program Successful Transactions and Non-ETP Successful Transactions and therefore the ETP Usage Rate, the total number of transactions for ASH Networks and all other ASH Networks' affiliates who have signed Provider Services Agreements with the Contracted Chiropractor will be calculated together.

**3.0**      **Claims Payment Amount**. The Claims Payment Amount is the actual amount paid directly and solely by ASH Networks to the Tax ID Owner designated in Exhibit 1 to Attachment A, on behalf of Contracted Chiropractor and shall be calculated by first deducting from billed charges submitted on a claim any amounts including but not limited to Non-Covered Services, duplicate billed amounts for services, amounts exceeding benefit maximums or limitations of Member Benefit Plans offered to Members by Payors and then applying to Covered Services, the Fee Schedule Amount, deducting Member Payment Amounts and amounts determined to be ineligible for payment due to Coordination of Benefits. The Claims Payment Amount shall also not include any amount due or paid directly to Contracted Chiropractor by any Payor or Member. The Claims Payment Amount shall be further identified as the "Amount Paid" on the Remittance Advice provided to the Tax ID Owner designated in Exhibit 1 to Attachment A, on behalf of Contracted Chiropractor by ASH Networks.

**4.0**      **ETP Program Incentive Payment Calculation**. The ETP Program Incentive Payment shall be paid according to the schedule below. The Incentive Payment amount will be calculated as a percentage of the total Claims Payment Amount defined in this Agreement for all claims processed and solely paid by ASH Networks to the Tax ID Owner designated in Exhibit 1 to Attachment A, on behalf of Contracted Chiropractor in the current month by using the prior month's ETP usage rate. Any payments received directly by Contracted Chiropractor from Members or Payors will be excluded from the total Claims Payment Amount used to determine the ETP Incentive Payment amount.

ETP Usage Rate - Incentive Payment Factor

50.0 – 59.9%            1% of Claims Payment Amount Paid by ASH Networks

Case 3:14-cv-02022   Document 30-7   Filed 12/23/14   Page 68 of 83 PageID #: 395

| | | |
|---|---|---|
| 60-0 – 69.9% | 2% | " |
| 70.0 – 79.9% | 3% | " |
| 80.0 – 89.9% | 4% | " |
| 90.0 – 99.9% | 5% | " |

The ETP Program Incentive will be added to the Claims Payment Amount determined for each claim paid solely by ASH Networks to Contracted Chiropractor in the Current Month.

Example of ETP Program Incentive Payment Calculation:

1. Example ETP Usage Rate = 90% (5% incentive level)

2. Individual Claim Payment Amount calculated and paid solely by ASH Networks in current month    $100.00

3. ETP Program Incentive Payment  $ 5.00

4. Total Amount calculated and paid solely by ASH Networks on claim payment    $105.00

**5.0  ETP Program Administrative Processing Fee**. The following criteria shall be used to determine the Administrative Processing Fee to be applied. The Administrative Processing Fee shall not be applied to the following types of claims transactions:

- Zero paid claims

- Claims Adjustments

- Duplicate claims submissions

If the ETP Usage Rate is less than 50% for the month immediately prior to the current month, the following administrative processing fee schedule shall be applied to each submission of a claim that is processed by ASH Networks in the current month ("Current Month").

This Administrative Processing Fee shall be deducted from the Claims Payment Amount determined for each claim paid solely by ASH Networks to Contracted Chiropractor in the Current Month. In no circumstance shall the Administrative Processing Fee exceed the "Maximum % of Claims Payment Amount" of any claim subject to the Administrative Processing Fee schedule set forth below.

Administrative Processing Fees:

| ETP Usage Rate | Administrative Processing Fee |
|---|---|
| 00.0-19.99% | $4.00 |
| 20.0-29.9% | $3.00 |
| 30.0-39.9% | $2.00 |
| 40.0-49.9% | $1.00 |
| Maximum % of Claims Payment Amount | 8% |
| Patient Count for 12 month period | >25 |
| Grace Period for new providers | 6 months |

ASH Networks will not increase the ETP Program Administrative Processing Fees more than once per calendar year, ASH Networks will notify Contracted Chiropractor of any such change at least ninety (90) days prior to its effective date in accordance with the provisions in ARTICLE 23.

1)    Example of ETP Program Administrative Processing Fee Calculation

ASH CONFIDENTIAL Not to Be Reproduced Or Disclosed Without Written Permission

2)         Example ETP Usage Rate = 32%

3)         Claim Payment Amount calculated and paid solely by ASH Networks in current month  $100.00

4)         Administrative Processing Fee = $2.00 (the lesser of $2.00 or 8% of the Claims Payment Amount)

5)         Total Claim Payment Amount = $98.00

**6.0**    **Direct Deposit Program**. Tax ID Owner designated in Exhibit 1 to Attachment A, on behalf of Contracted Chiropractor, registers for and agrees to solely utilize direct deposit capabilities offered by ASH Networks for electronic deposit of all funds due by ASH Networks in addition to electronic communication of all Remittance Advice resulting from claims processing activity by ASH Networks.

**7.0**    **Direct Deposit Bonus Payment**. An additional 1% of the total Claims Payment Amount paid solely by ASH Networks shall be paid to Tax ID Owner designated in Exhibit 1 to Attachment A, on behalf of Contracted Chiropractor, registered with the Direct Deposit Program. The Direct Deposit Bonus Payment amount will be calculated as a percentage of the total Claims Payment Amount defined in this Agreement for all claims processed and solely paid by ASH Networks to the Contracted Chiropractor during the current month. Any payments received directly by Contracted Chiropractor from Members or Payors will be excluded from the total Claims Payment Amount used to determine the Direct Deposit Bonus Payment amount.

**8.0**    **Paper Check (non-Direct Deposit) Administrative Processing Fee**. If the Tax ID Owner designated in Exhibit 1 to Attachment A does not register for the Direct Deposit program, a $3.00 administrative processing fee will be assessed for each paper check processed and mailed by ASH Networks. This fee is an addition to the ETP Program Administration Processing Fee described above.

This Attachment may be amended by ASH Networks pursuant to ARTICLE 23 of this Agreement.

ASH CONFIDENTIAL Disclosed Not To Be Reproduced Without Written

Case 3:14-cv-02022   Document 30-7   Filed 12/23/14   Page 70 of 83 PageID #: 397

ASH Networks Clinical Management Program includes a requirement that Clinical Treatment Forms be received by ASH Networks for evaluation within three (3) days of, but no later than one hundred eighty (180) days from the date of service (see Section 2.02 in Attachment F). However, ASH Networks will not deny a Clinical Treatment Form due to late submission if the late submission was due to "extraordinary circumstances", as determined by ASH Networks. Contracted Chiropractor may present grounds for ASH Networks to consider a late submission of a Clinical Treatment Form as being due to "extraordinary circumstances" pursuant to the appeal process set forth in this Agreement. The Treatment Form Waiver Program ("TFWP") provides different levels of waivers from this Clinical Treatment Form submission requirement. Each level of waiver defines the number of visits and specific Chiropractic Services for which the submission of a Clinical Treatment Form is not required. ASH Networks has defined a tier system to describe various levels of waiver.

ASH Networks will publish and make available to Contracted Chiropractor the number of visits and specific Chiropractic Services for which the submission of a Clinical Treatment Form is not required for each TFWP tier and the objective qualifying criteria for each TFWP tier.

Unless notified otherwise, Contracted Chiropractor is eligible for TFWP tier 3. ASH Networks will notify Contracted Chiropractor of Contracted Chiropractor's eligibility for a TFWP tier other than tier 3. On an annual basis, ASH Networks will review the Contracted Chiropractor's performance and ASH Networks will notify the Contracted Chiropractor of any change to the TFWP tier for which the Contracted Chiropractor is eligible. ASH Networks may, at its sole and absolute discretion, rescind, modify or change the Contracted Chiropractor's TFWP tier designation upon fifteen (15) days written notice if the Contracted Chiropractor is no longer eligible for a given TFWP tier. ASH Networks shall, at its sole discretion, determine the criteria for eligibility for the TFWP tier.

Individual Contracted Chiropractor performance will be monitored for TFWP eligibility regardless of whether the Contracted Chiropractor is part of a Group Practice or Professional Corporation which receives reimbursement under a common tax ID number.

The Treatment Form Waiver Program may not apply to the Member Benefit Plans of certain Payors. Payor-specific exceptions to the Treatment Form Waiver Program will be set forth in the applicable Payor Summaries attached to this Agreement. In the event that (1) the Member Benefit Plan provides for a specified number of visits without submission of a Clinical Treatment Form; (2) ASH Networks is the Payor for the Member Benefit Plan; and (3) this specified number of visits is less than those that would be afforded under Contracted Chiropractor's treatment form waiver tier; Contracted Chiropractor's tier shall supersede the number of visits specified in the Payor Summary.

Case 3:14-cv-02022   Document 30-7   Filed 12/23/14   Page 71 of 83 PageID #: 398

**TIER 1**

SUBMISSION OF A CLINICAL TREATMENT FORM: ASH Networks evaluation and approval of a Clinical Treatment Form is required for reimbursement of all Covered Services, except services covered under the Treatment Form Waiver. All Clinical Treatment Forms should be submitted within three (3) days of the dates of service. Clinical Treatment Forms received by ASH Networks more than one hundred eighty (180) days after the date-of-service will not be approved for reimbursement due to late submission. However, ASH Networks will not deny a Clinical Treatment Form due to late submission if the late submission was due to "extraordinary circumstances", as determined by ASH Networks. Contracted Chiropractor may present grounds for ASH Networks to consider a late submission of a Clinical Treatment Form as being due to "extraordinary circumstances" pursuant to the appeal process set forth in this Agreement. The Contracted Chiropractor is responsible for submitting any and all Clinical Treatment Forms in a timely manner.

CLINICAL TREATMENT FORM WAIVER GUIDELINES: Covered Services under the Tier 1 Treatment Form Waiver are those Chiropractic Services described below which, under the Clinical Services Management Program, are subject to random Medical Records review and are not subject to the submission of a Clinical Treatment Form for verification of Medical Necessity. The Treatment Form Waiver is available for the examination only at the first date of service provided to a Member who is a new or established patient during the twelve (12) month period of January 1st and December 31st. If there are additional services that may be necessary beyond the Treatment Form Waiver, the Contracted Chiropractor will need to submit a Clinical Treatment Form to ASH Networks. Once a Clinical Treatment Form has been submitted during the calendar year, the Treatment Form Waiver is no longer available. The following services are eligible under the Treatment Form Waiver.

- If covered, one Medically Necessary New Patient Office Visit/Examination (CPT Codes 99201, 99202, 99203 or 99204) or if covered, one established Patient Office Visit/Examination (CPT Codes 99211, 99212, 99213 or 99214).

RETROSPECTIVE MEDICAL RECORDS EVALUATION: ASH Networks may request Contracted Chiropractor provide Medical Records to ASH Networks for Chiropractic Services provided for which the Clinical Treatment Form submission requirement has been waived. Such requests will be in writing and Contracted Chiropractor shall comply with such requests, pursuant to the Medical Records Evaluation Program.

PAYOR-SPECIFIC EXCEPTIONS: The Treatment Form Waiver Program may not apply to the Member Benefit Plans of certain Payors. Payor-specific exceptions to the Treatment Form Waiver Program will be set forth in the applicable Payor Summaries attached to this Agreement. In the event that (1) the Member Benefit Plan provides for a specified number of visits without submission of a Clinical Treatment Form; (2) ASH Networks is the Payor for the Member Benefit Plan; and (3) this specified number of visits is less than those that would be afforded under Contracted Chiropractor's treatment form waiver tier; Contracted Chiropractor's tier shall supersede the number of visits specified in the Payor Summary.

EXCEPTION APPLICABLE TO PROVIDERS WHO BILL UNDER THE SAME TAX IDENTIFICATION NUMBER: The number of dates of service otherwise available to Contracted Chiropractor for waiver under Tier 1 for a Member will be reduced by the number of dates of service previously waived under this program for services furnished to that Member by all other providers contracted with ASH Networks who operate under the same tax identification number as Contracted Chiropractor.

Case 3:14-cv-02022   Document 30-7   Filed 12/23/14   Page 72 of 83 PageID #: 399

**TIER 2**

SUBMISSION OF A CLINICAL TREATMENT FORM: ASH Networks evaluation and approval of a Clinical Treatment Form is required for reimbursement of all Covered Services, except services covered under the Treatment Form Waiver. All Clinical Treatment Forms should be submitted within three (3) days of the dates of service. Clinical Treatment Forms received by ASH Networks more than one hundred eighty (180) days after the date-of-service will not be approved for reimbursement due to late submission. However, ASH Networks will not deny a Clinical Treatment Form due to late submission if the late submission was due to "extraordinary circumstances", as determined by ASH Networks. Contracted Chiropractor may present grounds for ASH Networks to consider a late submission of a Clinical Treatment Form as being due to "extraordinary circumstances" pursuant to the appeal process set forth in this Agreement. The Contracted Chiropractor is responsible for submitting any and all Clinical Treatment Forms in a timely manner.

CLINICAL TREATMENT FORM WAIVER GUIDELINES: Covered Services under the Tier 2 Treatment Form Waiver are those Chiropractic Services described below which, under the Clinical Services Management Program, are subject to random Medical Records review and are not subject to the submission of a Clinical Treatment Form for verification of Medical Necessity. The Treatment Form Waiver is available for the first five (5) dates of services provided to a Member who is a new or established patient during the twelve (12) month period of January 1st and December 31st. If there are additional services that may be necessary beyond the Treatment Form Waiver, the Contracted Chiropractor will need to submit a Clinical Treatment Form to ASH Networks. Once a Clinical Treatment Form has been submitted during the calendar year, the Treatment Form Waiver is no longer available. The following services are eligible under the Treatment Form Waiver.

- If covered: a total of five (5) dates of service to include any combination of:

  1. One Medically Necessary New Patient Office Visit/Examination (CPT Codes 99201, 99202, 99203 or 99204and/or one Medically Necessary Chiropractic manipulative treatment/office visit (CPT Codes 98940, 98941, 98942 or 98943) as long as such services are provided on one date of service, or

  2. if covered, one established Patient Office Visit/Examination (CPT Codes 99211, 99212, 99213 or 99214) and/or one Medically Necessary Chiropractic manipulative treatment/office visit (CPT Codes 98940, 98941, 98942 or 98943) as long as such services are provided on one date of service ; and;

  3. Up to four additional Medically Necessary Chiropractic manipulative treatment/office visits (CPT Codes 98940, 98941, 98942 or 98943)

- If covered, one adjunctive therapy per date of service (Medically Necessary adjunctive therapy will be allowed for each Chiropractic manipulative treatment/office visit allowed under the Treatment Form Waiver).

- If covered, Appliance (Only one Medically Necessary Support and Appliance per year from the list below)

  | Support and Appliance: | HCPC Code: |
  | --- | --- |
  | Arm Sling | A4565 |
  | Cervical Collar – flexible foam | L0120 |
  | Knee orthosis, elastic with condylar pads & joints | L1820 |
  | Thoracic, Rib belt | L0220 |
  | Wrist Hand orthosis, wrist extension control cock-up | L3908 |

All other care and services require ASH Networks evaluation and approval of a Clinical Treatment Form including x-rays and Supports and Appliances not listed above, clinical laboratory services and additional examinations.

TREATMENT FORM WAIVER EXCLUSIONS: The Treatment Form Waiver shall not apply and a Clinical Treatment Form must be submitted to ASH Networks in the following circumstances:

- The Member's diagnosis or treatment requires services, x-rays or Supports and Appliances not listed above

Case 3:14-cv-02022 Document 30-7 Filed 12/23/14 Page 73 of 83 PageID #: 400

- The Member is 12 years or less in age.

- The following evaluation and management services, if covered according to the applicable fee schedule: 99205 or 99215

RETROSPECTIVE MEDICAL RECORDS EVALUATION: ASH Networks may request Contracted Chiropractor provide Medical Records to ASH Networks for Chiropractic Services provided for which the Clinical Treatment Form submission requirement has been waived. Such requests will be in writing and Contracted Chiropractor shall comply with such requests, pursuant to the Medical Records Evaluation Program.

PAYOR-SPECIFIC EXCEPTIONS: The Treatment Form Waiver Program may not apply to the Member Benefit Plans of certain Payors. Payor-specific exceptions to the Treatment Form Waiver Program will be set forth in the applicable Payor Summaries attached to this Agreement. In the event that (1) the Member Benefit Plan provides for a specified number of visits without submission of a Clinical Treatment Form; (2) ASH Networks is the Payor for the Member Benefit Plan; and (3) this specified number of visits is less than those that would be afforded under Contracted Chiropractor's treatment form waiver tier; Contracted Chiropractor's tier shall supersede the number of visits specified in the Payor Summary.

EXCEPTION APPLICABLE TO PROVIDERS WHO BILL UNDER THE SAME TAX IDENTIFICATION NUMBER: The number of dates of service otherwise available to Contracted Chiropractor for waiver under Tier 2 for a Member will be reduced by the number of dates of service previously waived under this program for services furnished to that Member by all other providers contracted with ASH Networks who operate under the same tax identification number as Contracted Chiropractor.

ASH CONFIDENTIAL
Not To Be Reproduced or Disclosed
Without Written Permission

**TIER 3**

SUBMISSION OF A CLINICAL TREATMENT FORM: ASH Networks evaluation and approval of a Clinical Treatment Form is required for reimbursement of all Covered Services, except services covered under the Treatment Form Waiver. All Clinical Treatment Forms should be submitted within three (3) days of the dates of service. Clinical Treatment Forms received by ASH Networks more than one hundred eighty (180) days after the date-of-service will not be approved for reimbursement due to late submission. However, ASH Networks will not deny a Clinical Treatment Form due to late submission if the late submission was due to "extraordinary circumstances", as determined by ASH Networks. Contracted Chiropractor may present grounds for ASH Networks to consider a late submission of a Clinical Treatment Form as being due to "extraordinary circumstances" pursuant to the appeal process set forth in this Agreement. The Contracted Chiropractor is responsible for submitting any and all Clinical Treatment Forms in a timely manner.

CLINICAL TREATMENT FORM WAIVER GUIDELINES: Covered Services under the Tier 3 Treatment Form Waiver are those Chiropractic Services described below which, under the Clinical Services Management Program, are subject to random Medical Records review and are not subject to the submission of a Clinical Treatment Form for verification of Medical Necessity. The Treatment Form Waiver is available for the first five (5) dates of service provided to a Member who is a new or established patient during the twelve (12) month period of January 1st, and December 31st. If there are additional services that may be necessary beyond the Treatment Form Waiver, the Contracted Chiropractor will need to submit a Clinical Treatment Form to ASH Networks. Once a Clinical Treatment Form has been submitted during the calendar year, the Treatment Form Waiver is no longer available. The following services are eligible under the Treatment Form Waiver.

- If covered: a total of five (5) dates of service to include any combination of:

  1. One Medically Necessary New Patient Office Visit/Examination (CPT Codes 99201, 99202, 99203 or 99204and/or one Medically Necessary Chiropractic manipulative treatment/office visit (CPT Codes 98940, 98941, 98942) or 98943) as long as such services are provided on one date of service, or
  2. if covered, one established Patient Office Visit/Examination (CPT Codes 99211, 99212, 99213 or 99214) and/or one Medically Necessary Chiropractic manipulative treatment/office visit (CPT Codes 98940, 98941, 98942 or 98943) as long as such services are provided on one date of service ; and;
  3. Up to four additional Medically Necessary Chiropractic manipulative treatment/office visits (CPT Codes 98940, 98941, 98942 or 98943)

- If covered, one adjunctive therapy per date of service (Medically Necessary adjunctive therapy will be allowed for each Chiropractic manipulative treatment/office visit allowed under the Treatment Form Waiver).

- If covered, x-ray (Only one (1) Medically Necessary x-ray series per year from the list below):

  | X-Ray: | CPT Code: |
  | --- | --- |
  | Spine, Cervical, 2 or 3 views | 72040 |
  | Spine, Thoracic, 2 views | 72070 |
  | Spine, lumbosacral, 2 or 3 views | 72100 |
  | Chest, 2 views, Frontal and Lateral | 71020 |
  | Ribs, unilateral, 2 views | 71100 |
  | Sacrum and coccyx, minimum of 2 views | 72220 |

- If covered, Appliance (Only one Medically Necessary Support and Appliance per year from the list below):

  | Support and Appliance: | HCPC Code: |
  | --- | --- |
  | Arm Sling | A4565 |
  | Cervical Collar – flexible foam | L0120 |
  | Thoracic, Rib belt | L0220 |
  | Knee orthosis, elastic with condylar pads & joints | L1820 |
  | Wrist Hand orthosis, wrist extension control cock-up | L3908 |

All other care and services require ASH Networks evaluation and approval of a Clinical Treatment Form including x-rays and Supports and Appliances not listed above, clinical laboratory services and additional examinations.

Case 3:14-cv-02022   Document 30-7   Filed 12/23/14   Page 75 of 83 PageID #: 402

TREATMENT FORM WAIVER EXCLUSIONS: The Treatment Form Waiver shall not apply and a Clinical Treatment Form must be submitted to ASH Networks in the following circumstances:

- The Member's diagnosis or treatment requires services, x-rays or Supports and Appliances not listed above

- The Member is 12 years or less in age.

- The following evaluation and management services, if covered according to the applicable fee schedule: 99205 or 99215

RETROSPECTIVE MEDICAL RECORDS EVALUATION: ASH Networks may request Contracted Chiropractor provide Medical Records to ASH Networks for Chiropractic Services provided for which the Clinical Treatment Form submission requirement has been waived. Such requests will be in writing and Contracted Chiropractor shall comply with such requests, pursuant to the Medical Records Evaluation Program.

PAYOR-SPECIFIC EXCEPTIONS: The Treatment Form Waiver Program may not apply to the Member Benefit Plans of certain Payors. Payor-specific exceptions to the Treatment Form Waiver Program will be set forth in the applicable Payor Summaries attached to this Agreement. In the event that (1) the Member Benefit Plan provides for a specified number of visits without submission of a Clinical Treatment Form; (2) ASH Networks is the Payor for the Member Benefit Plan; and (3) this specified number of visits is less than those that would be afforded under Contracted Chiropractor's treatment form waiver tier; Contracted Chiropractor's tier shall supersede the number of visits specified in the Payor Summary.

EXCEPTION APPLICABLE TO PROVIDERS WHO BILL UNDER THE SAME TAX IDENTIFICATION NUMBER: The number of dates of service otherwise available to Contracted Chiropractor for waiver under Tier 3 for a Member will be reduced by the number of dates of service previously waived under this program for services furnished to that Member by all other providers contracted with ASH Networks who operate under the same tax identification number as Contracted Chiropractor.

AHC CONFIDENTIAL
Not To Be Reproduced or Disclosed
Without Written Permission

**TIER 4**

SUBMISSION OF A CLINICAL TREATMENT FORM: ASH Networks evaluation and approval of a Clinical Treatment Form is required for reimbursement of all Covered Services, except services covered under the Treatment Form Waiver. All Clinical Treatment Forms should be submitted within three (3) days of the dates of service. Clinical Treatment Forms received by ASH Networks more than one hundred eighty (180) days after the date-of-service will not be approved for reimbursement due to late submission. However, ASH Networks will not deny a Clinical Treatment Form due to late submission if the late submission was due to "extraordinary circumstances", as determined by ASH Networks. Contracted Chiropractor may present grounds for ASH Networks to consider a late submission of a Clinical Treatment Form as being due to "extraordinary circumstances" pursuant to the appeal process set forth in this Agreement. The Contracted Chiropractor is responsible for submitting any and all Clinical Treatment Forms in a timely manner.

CLINICAL TREATMENT FORM WAIVER GUIDELINES: Covered Services under the Tier 4 Treatment Form Waiver are those Chiropractic Services described below which, under the Clinical Services Management Program, are subject to random Medical Records review and are not subject to the submission of a Clinical Treatment Form for verification of Medical Necessity. The Treatment Form Waiver is available for the first seven (7) dates of service provided to a Member who is a new or established patient during the twelve (12) month period of January 1st and December 31st. If there are additional services that may be necessary beyond the Treatment Form Waiver, the Contracted Chiropractor will need to submit a Clinical Treatment Form to ASH Networks. Once a Clinical Treatment Form has been submitted during the calendar year, the Treatment Form Waiver is no longer available. The following services are eligible under the Treatment Form Waiver.

- If covered: A total of eight (8) dates of service to include any combination of:

  1. One Medically Necessary New Patient Office Visits/Examinations (CPT Codes 99201, 99202, 99203 or 99204and/or one Medically Necessary Chiropractic manipulative treatment/office visit (CPT Codes 98940, 98941, 98942) or 98943) as long as such services are provided on one date of service, or

  2. if covered, established Patient Office Visits/Examinations (CPT Codes 99211, 99212, 99213 or 99214) and/or one Medically Necessary Chiropractic manipulative treatment/office visit (CPT Codes 98940, 98941, 98942 or 98943) as long as such services are provided on one date of service ; and;

  3. Up to seven (7) additional Medically Necessary Chiropractic manipulative treatment/office visits (CPT Codes 98940, 98941, 98942 or 98943); and

  4. One additional Medically Necessary established patient office visit/examination (CPT Codes 99211, 99212, 99213 or 99214)

- If covered, one adjunctive therapy per date of service (Medically Necessary adjunctive therapy will be allowed for each Chiropractic manipulative treatment/office visit allowed under the Treatment Form Waiver).

- If covered, x-ray (Only one Medically Necessary x-ray series per year from the list below):

  | X-Ray: | CPT Code: |
  |---|---|
  | Spine, Cervical, 2 or 3 views | 72040 |
  | Spine, Thoracic, 2 views | 72070 |
  | Spine, lumbosacral, 2 or 3 views | 72100 |
  | Chest, 2 views, Frontal and Lateral | 71020 |
  | Ribs, unilateral, 2 views | 71100 |
  | Sacrum and coccyx, minimum of 2 views | 72220 |

- If covered, Appliance (Only one Medically Necessary Support and Appliance per year from the list below):

  | Support and Appliance: | HCPC Code: |
  |---|---|
  | Arm Sling | A4565 |
  | Cervical Collar – flexible foam | L0120 |
  | Thoracic, Rib belt | L0220 |
  | Knee orthosis, elastic with condylar pads & joints | L1820 |
  | Wrist Hand orthosis, wrist extension control cock-up | L3908 |

All other care and services require ASH Networks evaluation and approval of a Clinical Treatment Form including x-rays and Supports and Appliances not listed above, clinical laboratory services and additional examinations.

Case 3:14-cv-02022   Document 30-7   Filed 12/23/14   Page 77 of 83 PageID #: 404

TREATMENT FORM WAIVER EXCLUSIONS: The Treatment Form Waiver shall not apply and a Clinical Treatment Form must be submitted to ASH Networks in the following circumstances:

- The Member's diagnosis or treatment requires services, x-rays or Supports and Appliances not listed above

- The Member is 12 years or less in age.

- The following evaluation and management services, if covered according to the applicable fee schedule: 99205 or 99215

RETROSPECTIVE MEDICAL RECORDS EVALUATION: ASH Networks may request Contracted Chiropractor provide Medical Records to ASH Networks for Chiropractic Services provided for which the Clinical Treatment Form submission requirement has been waived. Such requests will be in writing and Contracted Chiropractor shall comply with such requests, pursuant to the Medical Records Evaluation Program.

PAYOR-SPECIFIC EXCEPTIONS: The Treatment Form Waiver Program may not apply to the Member Benefit Plans of certain Payors. Payor-specific exceptions to the Treatment Form Waiver Program will be set forth in the applicable Payor Summaries attached to this Agreement. In the event that (1) the Member Benefit Plan provides for a specified number of visits without submission of a Clinical Treatment Form; (2) ASH Networks is the Payor for the Member Benefit Plan; and (3) this specified number of visits is less than those that would be afforded under Contracted Chiropractor's treatment form waiver tier; Contracted Chiropractor's tier shall supersede the number of visits specified in the Payor Summary.

EXCEPTION APPLICABLE TO PROVIDERS WHO BILL UNDER THE SAME TAX IDENTIFICATION NUMBER: The number of dates of service otherwise available to Contracted Chiropractor for waiver under Tier 4 for a Member will be reduced by the number of dates of service previously waived under this program for services furnished to that Member by all other providers contracted with ASH Networks who operate under the same tax identification number as Contracted Chiropractor.

Case 3:14-cv-02022   Document 30-7   Filed 12/23/14   Page 78 of 83 PageID #: 405

**TIER 5**

SUBMISSION OF A CLINICAL TREATMENT FORM: ASH Networks evaluation and approval of a Clinical Treatment Form is required for reimbursement of all Covered Services, except services covered under the Treatment Form Waiver. All Clinical Treatment Forms should be submitted within three (3) days of the dates of service. Clinical Treatment Forms received by ASH Networks more than one hundred eighty (180) days after the date-of-service will not be approved for reimbursement due to late submission. However, ASH Networks will not deny a Clinical Treatment Form due to late submission if the late submission was due to "extraordinary circumstances", as determined by ASH Networks. Contracted Chiropractor may present grounds for ASH Networks to consider a late submission of a Clinical Treatment Form as being due to "extraordinary circumstances" pursuant to the appeal process set forth in this Agreement. The Contracted Chiropractor is responsible for submitting any and all Clinical Treatment Forms in a timely manner.

CLINICAL TREATMENT FORM WAIVER GUIDELINES: Covered Services under the Tier 5 Treatment Form Waiver are those Chiropractic Services described below which, under the Clinical Services Management Program, are subject to random Medical Records review and are not subject to the submission of a Clinical Treatment Form for verification of Medical Necessity. The Treatment Form Waiver is available for the first twelve (12) dates of services provided to a Member who is a new or established patient during the twelve (12) month period of January 1 and December 31st. If there are additional services that may be necessary beyond the Treatment Form Waiver, the Contracted Chiropractor will need to submit a Clinical Treatment Form to ASH Networks. Once a Clinical Treatment Form has been submitted during the calendar year, the Treatment Form Waiver is no longer available. The following services are eligible under the Treatment Form Waiver.

- If covered, a total of twelve (12) dates of service to include any combination of:

  1. One Medically Necessary New Patient Office Visit/Examination (CPT Codes 99201, 99202, 99203 or 99204) and/or one Medically Necessary Chiropractic manipulative treatment/office visit (CPT Codes 98940, 98941, 98942 or 98943) as long as such services are provided on one date of service, or

  2. if covered, one Medically Necessary established Patient Office Visit/Examination (CPT Codes 99211, 99212, 99213 or 99214) and/or one Medically Necessary Chiropractic manipulative treatment/office visit (CPT Codes 98940, 98941, 98942 or 98943) as long as such services are provided on one date of service ; and

  3. up to eleven (11) additional Medically Necessary Chiropractic manipulative treatment/office visits (CPT Codes 98940, 98941, 98942 or 98943); and

  4. two (2) additional Medically Necessary established Patient Office Visit/Examination (CPT Codes 99211, 99212, 99213 or 99214)

- If covered, one adjunctive therapy per date of service (Medically Necessary adjunctive therapy will be allowed for each Chiropractic manipulative treatment/office visit allowed under the Treatment Form Waiver).

- If covered, x-ray (Only one Medically Necessary x-ray series per year from the list below):

  | X-Ray: | CPT Code: |
  | --- | --- |
  | Spine, Cervical, 2 or 3 views | 72040 |
  | Spine, Thoracic, 2 views | 72070 |
  | Spine, lumbosacral, 2 or 3 views | 72100 |
  | Chest, 2 views, Frontal and Lateral | 71020 |
  | Ribs, unilateral, 2 views | 71100 |
  | Sacrum and coccyx, minimum of 2 views | 72220 |

- If covered, Appliance (Only one Medically Necessary Support and Appliance per year from the list below):

  | Support and Appliance: | HCPC Code: |
  | --- | --- |
  | Arm Sling | A4565 |
  | Cervical Collar – flexible foam | L0120 |
  | Thoracic, Rib belt | L0220 |
  | Knee orthosis, elastic with condylar pads & joints | L1820 |
  | Wrist Hand orthosis, wrist extension control cock-up | L3908 |

All other care and services require ASH Networks evaluation and approval of a Clinical Treatment Form including x-rays and Supports and Appliances not listed above, clinical laboratory services and additional examinations.

TREATMENT FORM WAIVER EXCLUSIONS: The Treatment Form Waiver shall not apply and a Clinical Treatment Form must be submitted to ASH Networks in the following circumstances:

- The Member's diagnosis or treatment requires services, x-rays or Supports and Appliances not listed above

- The Member is 12 years or less in age

- The following evaluation and management services, if covered according to the applicable fee schedule: 99205 or 99215

RETROSPECTIVE MEDICAL RECORDS EVALUATION: ASH Networks may request Contracted Chiropractor provide Medical Records to ASH Networks for Chiropractic Services provided for which the Clinical Treatment Form submission requirement has been waived. Such requests will be in writing and Contracted Chiropractor shall comply with such requests, pursuant to the Medical Records Evaluation Program.

PAYOR-SPECIFIC EXCEPTIONS: The Treatment Form Waiver Program may not apply to the Member Benefit Plans of certain Payors. Payor-specific exceptions to the Treatment Form Waiver Program will be set forth in the applicable Payor Summaries attached to this Agreement. In the event that (1) the Member Benefit Plan provides for a specified number of visits without submission of a Clinical Treatment Form; (2) ASH Networks is the Payor for the Member Benefit Plan; and (3) this specified number of visits is less than those that would be afforded under Contracted Chiropractor's treatment form waiver tier; Contracted Chiropractor's tier shall supersede the number of visits specified in the Payor Summary.

EXCEPTION APPLICABLE TO PROVIDERS WHO BILL UNDER THE SAME TAX IDENTIFICATION NUMBER: The number of dates of service otherwise available to Contracted Chiropractor for waiver under Tier 5 for a Member will be reduced by the number of dates of service previously waived under this program for services furnished to that Member by all other providers contracted with ASH Networks who operate under the same tax identification number as Contracted Chiropractor.

SPECIAL CONFIDENTIAL
Not To Be Produced Or Disclosed
Without Written Submission

**TIER 6**

SUBMISSION OF A CLINICAL TREATMENT FORM: ASH Networks evaluation and approval of a Clinical Treatment Form is required for reimbursement of all Covered Services, except services covered under the Treatment Form Waiver. All Clinical Treatment Forms should be submitted within three (3) days of the dates of service. Clinical Treatment Forms received by ASH Networks more than one hundred eighty (180) days after the date-of-service will not be approved for reimbursement due to late submission. However, ASH Networks will not deny a Clinical Treatment Form due to late submission if the late submission was due to "extraordinary circumstances", as determined by ASH Networks. Contracted Chiropractor may present grounds for ASH Networks to consider a late submission of a Clinical Treatment Form as being due to "extraordinary circumstances" pursuant to the appeal process set forth in this Agreement. The Contracted Chiropractor is responsible for submitting any and all Clinical Treatment Forms in a timely manner.

CLINICAL TREATMENT FORM WAIVER GUIDELINES: Covered Services under the Tier 6 Treatment Form Waiver are those Chiropractic Services described below which, under the Clinical Services Management Program, are subject to random Medical Records review and are not subject to the submission of a Clinical Treatment Form for verification of Medical Necessity. The Treatment Form Waiver is available to a Member who is a new or established patient during the twelve (12) month period of January 1st and December 31st. Once a Clinical Treatment Form has been submitted during the calendar year, the Treatment Form Waiver is no longer available. The following services are eligible under the Treatment Form Waiver.

- If covered, all Medically Necessary New Patient Office Visits/Examinations (CPT Codes 99201, 99202, 99203 or 99204or if covered, all Medically Necessary established Patient Office Visits/Examinations (CPT Codes 99211, 99212, 99213 or 99214) and all Medically Necessary Chiropractic manipulative treatment/office visit (CPT Codes 98940, 98941, 98942 or 98943)

- If covered, all Medically Necessary established patient office visits/examinations (CPT Codes 99211, 99212, 99213 or 99214)

- If covered, one adjunctive therapy per date of service (Medically Necessary adjunctive therapy will be allowed for each Chiropractic manipulative treatment/office visit allowed under the Treatment Form Waiver)

- If covered, all Medically Necessary x-ray studies do not require submission of a Clinical Treatment Form

- If covered, all Medically Necessary Supports and Appliances do not require submission of a Clinical Treatment Form

RETROSPECTIVE MEDICAL RECORDS EVALUATION: ASH Networks may request Contracted Chiropractor provide Medical Records to ASH Networks for Chiropractic Services provided for which the Clinical Treatment Form submission requirement has been waived. Such requests will be in writing and Contracted Chiropractor shall comply with such requests, pursuant to the Medical Records Evaluation Program.

PAYOR-SPECIFIC EXCEPTIONS: The Treatment Form Waiver Program may not apply to the Member Benefit Plans of certain Payors. Payor-specific exceptions to the Treatment Form Waiver Program will be set forth in the applicable Payor Summaries attached to this Agreement. In the event that (1) the Member Benefit Plan provides for a specified number of visits without submission of a Clinical Treatment Form; (2) ASH Networks is the Payor for the Member Benefit Plan; and (3) this specified number of visits is less than those that would be afforded under Contracted Chiropractor's treatment form waiver tier; Contracted Chiropractor's tier shall supersede the number of visits specified in the Payor Summary.

**ATTACHMENT N –REPRESENTATIONS AND WARRANTIES OF APPLICANT OR CONTRACTED CHIROPRACTOR**

**1.0**     <u>Compliance with Clinical Practice Guidelines and Policies</u>

Applicant or Contracted Chiropractor represents and warrants that:

    **1.01**     He or she has had an opportunity to review the clinical practice guidelines and policies found at <u>http://www.ashcompanies.com/providers/cqm/techniqueprocedurecpgs.aspx</u> and understands that the guidelines and policies may be revised from time-to-time by ASH Networks;

    **1.02**     He or she agrees to abide by the then current clinical practice guidelines and take those guidelines and all other current and applicable health care evidence into consideration when making diagnostic and treatment decisions for Members;

    **1.03**     He or she understands that ASH Networks may monitor his or her compliance with the clinical practice guidelines and policies and agrees that non-compliance may result in (i) ASH Networks clinical staff contacting the Contracted Chiropractor to discuss expectations regarding the application of the clinical practice guidelines and policies; (ii) non-payment of services; and/or (iii) issuance of a CAP in accordance with Section 2.03.11;

    **1.04**     He or she agrees not to use procedures or modalities that are not widely accepted as Evidence-Based[1] without notifying the Member in advance and in writing that the clinical effectiveness and safety of the procedure or modality is unknown; and

    **1.05**     He or she agrees that a Member may not be billed for procedures or modalities that are not widely accepted as Evidence-Based unless Contracted Chiropractor has notified the Member in advance and in writing that these services are non-Covered Services in accordance with Section 2.03.12 (c) and obtains the full written informed consent of the Member prior to rendering the procedure or modality.

[1] Evidence-Based means that the health service (i) is supported by clinically relevant scientific information which can be used to inform the diagnosis or treatment of a patient that meets industry standard research quality criteria; (ii) is adopted as credible by an ASH Networks clinical peer review committee; and (iii) has been published in an acceptable peer-reviewed clinical science resource and includes, but is not limited to, the techniques and procedures identified by ASH Networks clinical peer review committee as documented in the ASH Networks clinical policies and clinical practice guidelines.

**2.0**     <u>Compliance with Governmental Program Participation Requirements.</u>

    **2.01**     Applicant or Contracted Chiropractor represents and warrants that he or she does not and will not employ or contract with an individual or corporation that has been sanctioned by Medicare/Medicaid or that has been placed on the List of Excluded Individuals/Entities maintained by the Office of the Inspector General at http://exlusions.oig.hhs.gov or on the Excluded Parties List System.

**3.0**     <u>Compliance with Patient Safety Guidelines</u>.

    **3.01**     Applicant or Contracted Chiropractor represents and warrants that none of his or her employees have any serious disease or condition that poses a high probability of substantial harm to the health and safety of a Member. Contracted Chiropractor agrees that if he or she identifies an employee who poses a high probability of substantial harm to the health and safety of a Member, the Contracted Chiropractor will notify ASH Networks and provide an accommodation plan made for Member care which decreases the likelihood of any impact to a Member's health and safety. Contracted Chiropractor further understands that if the accommodation plan does not appear to or cannot eliminate the risk of harm to a Member's health and safety then this failure may result in <u>failure to meet credentialing criteria or suspension or termination from the network.</u> ASH Networks shall maintain as confidential information all information received from Contracted Chiropractor relating to this section.

Case 3:14-cv-02022    Document 30-7    Filed 12/23/14    Page 82 of 83 PageID #: 409

**4.0**    **Compliance with Facility Requirements**

Applicant or Contracted Chiropractor represents and warrants that

**4.01**    He or she has had an opportunity to review the Office Facility Requirements as stated in the specialty specific policy located online at http://www.ashcompanies.com/providers/cqm/practiceresource.aspx and understands that the requirements may be revised from time-to-time by ASH Networks;

**4.02**    Each facility listed in Attachment A where Applicant or Contracted Chiropractor intends to render Covered Services meets the facility requirement referred to in 4.01; and

**4.03**    He or she agrees that any additional facility for which he or she may apply in the future shall also be required to meet the facility requirements referred to in 4.01.

**4.04**    If Applicant or Contracted Chiropractor's office location is other than a stand-alone office structure such as a home office, this location meets the additional facility requirements as stated in the Alternate Practice Sites policy located at http://www.ashcompanies.com/providers/cqm/practiceresource.aspx.

ASH CONFIDENTIAL
Not To Be Reproduced or Disclosed
Without Written Permission

Case 3:14-cv-02022   Document 30-7   Filed 12/23/14   Page 83 of 83 PageID #: 410