IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RICHARD COLE, BRADFORD COLE, CARY JUSTICE, MICHAEL MASSEY, and DON WEGENER, ET AL., | )<br>)<br>)<br>) |
| Plaintiffs, | ) |
| v. | ) NO. 3:14-cv-02022 <br> ) JUDGE CAMPBELL |
| AMERICAN SPECIALTY HEALTH NETWORK, INC., AMERICAN SPECIALTY HEALTH, INC., CIGNA CORPORATION, INC., JOHN DOES A, B, & C, and JANE DOES A, B, &C, | )<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Pending before the Court are motions to dismiss filed by Cigna Corporation, Inc. ("Cigna") (Docket No. 28) and by American Specialty Health Network, Inc. ("ASH") (Docket No. 31). For the reasons stated herein, the Court will grant the motion in part and deny it in part. Specifically, the Court will deny the motions as to Plaintiffs' contract of adhesion claim and grant them as to the remainder of Plaintiffs' claims.

**I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]**

Cigna is a healthcare company that administers healthcare benefits plans for its clients, many of which are employers who provide health benefits to their employees through self-funded plans. As part of its role in administering plans, Cigna contracts with individual healthcare providers to treat plan members such that those providers become "in-network" providers who agree to charge

---

[1]The facts set forth herein are taken from Plaintiffs' Complaint, Docket No. 1.

members based on a pre-determined fee schedule. In contrast, "out-of-network" providers do not have a contractual relationship with Cigna and thus do not have agreed-upon rates with Cigna. However, those providers can still be compensated for treating patients covered by Cigna-administered plans.

Cigna also contracts with entities that provide healthcare services, including entities that provide access to their own networks of contracted healthcare professionals, administer payments to healthcare professionals for claims submitted to Cigna, and evaluate claims for medical necessity and/or appropriateness. In 2010, Cigna contracted with ASH to serve these functions with respect to Cigna's chiropractic claims in Tennessee. Some of the plaintiffs were existing in-network providers with Cigna at the time that Cigna contracted with ASH, though at least one plaintiff was not yet in-network. On November 11, 2010, ASH sent a letter to Cigna's in-network chiropractors informing them that effective March 1, 2011, "[t]o continue participation in the CIGNA network for these customers, you will need to contract directly with us at ASH Networks by submitting a credentialing application, Provider Services Agreement, and CIGNA Election to Participate documents to ASH by February 11, 2011." Docket No. 32-1 to 32-5 ("Recruitment Letter"). The Recruitment Letter also stated, "If ASH Networks does not receive the completed credentialing documents on or before the February 11, 2011 deadline termination proceedings will begin in accordance with your CIGNA agreement and applicable state law."[2] Plaintiffs allege that they were

---

[2] The Recruitment Letter is referenced in Plaintiffs' Complaint and attached to Defendants' brief. The Court may consider these materials in ruling on Defendants' motion to dismiss pursuant to Rule 12(b)(6) because they are "referred to in the complaint and [are] central to the plaintiffs' claim." *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999); *see also Thomas v. Publishers Clearing House, Incl*, 29 F. App's 319, 322 9th Cir. 2002) ("Where the plaintiff fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading.").

advised that their existing Cigna agreement would remain in effect but be "suspended" as it pertained to Cigna's managed-care medical-benefit plans for chiropractic services for the duration of Cigna's contract with ASH.

The crux of Plaintiffs' Complaint is that they signed the three-page Election to Participate before receiving the 82-page contract referred to in the Recruitment Letter as the "Provider Services Agreement" ("PSA"). Plaintiffs allege that they were not aware that the Election to Participate did not represent the entirety of their agreement with ASH, that they had no ability to negotiate the terms of the PSA, and that they object to some of the terms of the PSA. Defendants represent that the November 11, 2010 Recruitment Letter included a CD with all the documentation needed to enroll with ASH and remain in-network providers with Cigna, including the Election to Participate and the PSA. Defendants argue that the letter demonstrates that Plaintiffs had the PSA before they executed the Election to Participate. The Recruitment Letter states the following details about the nature of what is contained on the compact disc:

> The enclosed ASH Networks Contracting Kit compact disc provides detailed information on the completion of the documents that need to be returned to ASH Networks to begin your credentialing process and remain participating in the CIGNA network. The Contracting Kit CD also includes the ASH Networker provider Operations Manual and the Payor Summaries and Fee Schedule of other ASH Network clients in your state, payor Summaries and Fee Schedules for the CIGNA program are included as a hard copy in this packet for your review.

Plaintiffs dispute that the CD was attached to the Recruitment Letter and allege that they did not have the PSA until after executing the Election to Participate. At least one Plaintiff was not an in-network provider and so alleges that he did not receive the Recruitment Letter or the PSA at all before signing the Election to Participate.

3

In addition to their complaints about the lack of disclosure of the terms of the PSA before the signing of the Elections to Participate, Plaintiffs also complain about alleged problems with the implementation of the PSA, including that Defendants failed to properly pay claims as required by the contract, failed to pay claims in a timely fashion, failed to pay claims pursuant to contractual terms, improperly assessed fees and penalties, improperly applied a "Tier System," and failed to pay required interest as required by statute for late claims. On October 20, 2014, Plaintiffs filed this action asserting the following claims: (1) breach of contract/unjust enrichment; (2) contract of adhesion; (3) fraud/tortious misrepresentation; (4) wrongful trover and conversion; (5) constructive trust; (6) negligence; (7) negligence per se; (8) accounting. Federal jurisdiction is based on the diverse citizenship of the parties.

## II. Standard of Review

For purposes of a motion to dismiss, the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 1950. A legal conclusion couched as a factual allegation need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient. *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

### III. Legal Analysis

#### A. ERISA Preemption

Defendants' first argument is that Plaintiffs' claims for breach of contract/unjust enrichment, wrongful trover/conversion, constructive trust, negligence, negligence per se, and accounting are preempted by the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1111 *et seq.* because these claims allege that Cigna improperly calculated and/or denied benefits pursuant to the applicable benefit plans. Defendants assert that, to the extent that these plans are governed by ERISA, the Court should find that Plaintiffs' state-law claims "relate to" an employee benefit and thus are preempted under ERISA § 514(a).

"ERISA preempts state law and state law claims that 'relate to' any employee benefit plan as that term is defined therein." *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1275 (6th Cir. 1991) (citing 29 U.S.C. § 11144(a), *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41 (1987)). "The phrase 'relate to' is given broad meaning such that a state law cause of action is preempted if 'it has connection with or reference to that plan.'" *Id.* (quoting *Metropolitan Life Ins. Co. v. Mass.*, 471 U.S. 724, 730, 732–33 (1985)). The Sixth Circuit has interpreted ERISA's preemption to include "virtually all state law claims relating to an employee benefit plan." *Id.* at 1276 (citing cases).

The allegation that Defendants failed to properly compensate Plaintiffs for the services rendered to participants in Cigna's insurance plans is at the root of Plaintiffs' claims for breach of contract/unjust enrichment, trover and conversion, negligence, and negligence per se claims. For example, the breach of contract claim alleges that Cigna failed to "properly" and "timely" pay claims in administering its plans, failed " to pay claims pursuant to contractual terms," and

5

improperly applied a "tier system." To assess the validity of these claims, the Court would need to interpret Cigna's plans. Similarly, the trover/conversion cause of action alleges that Defendants "converted to their own use monies for claims rightfully belonging to Plaintiffs," and wrongfully converted Plaintiffs' "properties and assets." This claim, too, would require the Court to interpret Cigna's plans.

Because Plaintiffs' Complaint does not identify any specific benefits claims that were improperly handled or what plans those claims belonged to, it is not possible for the Court to ascertain which, if any, of Plaintiffs' benefits claims are governed by ERISA. Cigna represents that the majority of the plans it administers are governed by ERISA. To the extent that Plaintiffs' claims for breach of contract/unjust enrichment, trover and conversion, negligence, and negligence per se are related to benefit plans governed by ERISA, the Court agrees with Defendant that they have a "connection with" an employee benefit plan. Through these claims, Plaintiffs seek reimbursement for allegedly unpaid or underpaid benefits, which would require the Court to interpret the terms of Cigna's plans to determine whether additional payments were warranted. *See, e.g., Ward v. Alternative Health Delivery Sys.*, Inc., 55 F. Supp. 2d 694, 699 (W.D. Ky. 1999) *aff'd in part, rev'd in part*, 261 F.3d 624 (6th Cir. 2001) (holding state-law causes of action brought by health care provider alleging health maintenance organization did not pay the amount due for treatment of plan participants was preempted by ERISA); *Productive MD, LLC v. Aetna Health, Inc.*, 969 F. Supp. 2d 901, 934 (M.D. Tenn. 2013) ("[Plaintiff] concedes, as it must, that ERISA preempts its state law claims to the extent that those claims seek to recover benefits under the applicable insurance policies."). As the Sixth Circuit has held, "[i]t is not the label placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an

6

ERISA plan benefit." *Cromwell*, 944 F.2d at 1276 (finding health care provider's state law claims against administrator of employee benefit plan for failure to pay for services rendered to a plan participant were "at the very heart of issues within the scope of ERISA's exclusive regulation" and thus clearly preempted). The Court finds Plaintiff's claims for breach of contract/unjust enrichment, trover and conversion, negligence, and negligence per se related to any benefit plans governed by ERISA are preempted by ERISA and will, accordingly, dismiss those claims.

Plaintiffs' claims for constructive trust and accounting are dismissed because they are remedies, not causes of action. To the extent, if any, those claims can be construed as causes of action and are related to benefit plans governed by ERISA, they too are dismissed based on ERISA preemption.

Even if Plaintiffs' breach of contract claim were not preempted by ERISA, and to the extent that Plaintiffs have a breach of contract claim that is related to benefit plans that are not governed by ERISA, the Court dismisses this claim for the additional reason that Plaintiffs have not identified "the specific contract language whereby the defendant assumed a legally-enforceable obligation to the plaintiff," as is required in a breach of contract case. *Brooks v. Wells Fargo Bank, N.A.*, No. 3:12-0821, 2014 WL 345737, at *2 (M.D. Tenn. Jan. 30, 2014) (citation omitted). This claim is also legally deficient in that Plaintiffs failed to allege facts necessary to support the claim, such as any facts that would demonstrate that Defendants have violated one or more terms of the PSA. *Id.* at *3 (citing cases). Without the facts to support their claim, their allegations are simply legal conclusions couched as factual allegations.

Similarly, if Plaintiffs' claims for conversion and trover were not preempted by ERISA, and to the extent Plaintiffs have such claims that are related to benefit plans that are not governed by

7

ERISA, the Court would dismiss these claims for the additional reason that under Tennessee law, unless "money is specific and capable of identification or where there is a determinate sum that the defendant was entrusted to apply to a certain purpose," "the general rule is that money is an intangible and therefore not subject to a claim for conversion. . . . Trover does not lie to enforce a mere obligation to pay money. . . ." *PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 553 (Tenn. Ct. App. 2012) (quoting 90 C.J.S. Trover and Conversion § 16 (2012)). Additionally, under Tennessee law, Tennessee Rule of Civil Procedure 9.02 requires that conversion claims be pled with particularity. *Id.* at 554. In this case, Plaintiffs have not identified a single unpaid claim allegedly converted by either Defendant, much less any specific dollar amount or accounts. Nor have Plaintiffs alleged that Defendants were entrusted with money to apply to a certain purpose. Plaintiffs' claims are simply to enforce an obligation to pay money, which does not give rise to claims of conversion and trover. To the extent, if any, that these claims are not preempted by ERISA, the Court would dismiss these claims based on these legal deficiencies.

Finally, if Plaintiffs' negligence and negligence per se claims were not preempted by ERISA, the Court would dismiss them because in Tennessee, contractual duties do not give rise to a negligence claim. *Permobil, Inc. v. Am. Exp. Travel Related Servs. Co.*, 571 F. Supp. 2d 825, 842 (M.D. Tenn. 2008) *(citing Thomas & Assoc., Inc. v. Metro. Gov't of Nashville*, No. M2001–00757–COA–R3–CV, 2003 WL 21302974, at *6 (Tenn. Ct. App. June 6, 2003)).

   **B.**   **Contract of Adhesion**[3]

---

[3]Defendants do not argue that this claim is preempted by ERISA. Plaintiffs' allegations in this claim include Defendants' failure to timely and properly pay claims and improper application of a "tier system. Docket No. 1 at 47–49.

Plaintiffs allege the following in their claim for contract of adhesion: (1) Plaintiffs were forced into the contracts with ASH by Cigna's unilateral "suspension" of their contracts and also by Cigna's requirement that Plaintiffs contract with ASH in order to remain in-network providers with Cigna; (2) Plaintiffs were required to sign a 3-page Election to Participate with ASH before they received an 82-page Provider Services Agreement; and (3) Plaintiffs were not provided with an opportunity to negotiate the terms of the ASH contract. Plaintiffs seek as a remedy specific performance of the original contract they had with Cigna.

Defendant have several arguments. First, they argue that Plaintiffs admit in sections of the Complaint that they were aware of the PSA when they signed the Election to Participate. The Court does not read the paragraphs from the Complaint cited by Defendants as a concession that Plaintiffs were aware of the existence of the PSA when signing the Election to Participate.

Second, Defendants argue that the Recruitment Letters indicate that to continue participation in the Cigna network, Plaintiffs will have to complete and submit a "credentialing application, Provider Services Agreement, and CIGNA Election to Participate documents" by February 11, 2011. The Recruitment Letters indicate that they are accompanied by a compact disc with the "Contracting Kit" which "provides detailed information on the completion of the documents that need to be returned to the Ash Networks to begin your credentialing process and remain participating in the CIGNA network." Although the fact that there is a Provider Services Agreement to be completed and submitted before Cigna will consider a provider to be in-network is clear from the plain language of the Recruitment Letter, Plaintiffs allege that they only received the CD after they had executed the Election to Participate and the enrollment paperwork for ASH. It also is not clear from the Recruitment Letter that the PSA is included on the CD, although the letter does imply that is the

9

case. Nonetheless, it *is* clear from the letter that there is a PSA to be completed as part of the process of contracting with ASH to remain in-network with Cigna. If the Plaintiffs who were already in-network with Cigna (such that they received the Recruitment Letter) did not receive the disk with the letter, or the disk did not contain the PSA, they nonetheless were clearly on notice that there was a document entitled "Provider Services Agreement." Defendants further argue that the PSA states that Plaintiffs can terminate the PSA "at any time with or without cause" subject to a 60-day notice requirement." Docket No. 30-7 at 30–31 (PSA Art. 5.01). In contrast, the PSA provides that ASH "shall not terminate this Agreement without cause." *Id.* However, Plaintiffs represent that some Plaintiffs did not receive the Recruitment Letter and/or the CD before executing the Election to Participate. For example, Plaintiffs argue that at least one Plaintiff, Dr. Justice, signed the Election to Participate on November 10, 2010 after receiving a fax from ASH so requesting and had not received the November 11, 2010 letter. Docket No. 38 at 15 (Pl's Brief). Plaintiffs further allege that he did not receive the CD with the PSA until January 3, 2011. *Id.* These factual disputes cannot be resolved at this stage of the litigation.

Next, Defendants argue that Plaintiffs' claim does not satisfy the elements of an adhesion contract. The Tennessee Supreme Court has defined an adhesion contract as follows:

> An adhesion contract has been defined as "a standardized contract form offered to consumers of goods and services on essentially a 'take it or leave it' basis, without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or service except by acquiescing to the form of the contract." Professor Henderson has observed that "the essence of an adhesion contract is that bargaining positions and leverage enable one party 'to select and control risks assumed under the contract.' " Courts generally agree that "[t]he distinctive feature of a contract of adhesion is that the weaker party has no realistic choice as to its terms."

10

*Wallace v. Nat'l Bank of Commerce*, 938 S.W.2d 684, 687 (Tenn. 1996) (quoting *Buraczynski v. Eyring*, 919 S.W.2d 314, 320 (Tenn.1996). Defendants argue that Plaintiffs had adequate alternatives to entering into contract with ASH, including becoming an out-of-network provider, contracting with other managed care companies, or treating patients covered under Medicare or Medicaid. Defendants also argue that even if the contract is adhesive, it is still enforceable so long as it is not unduly oppressive or unconscionable, a bar which, according to Defendants, Plaintiffs have not met. Defendants also argue that an adhesive contract is enforceable so long as it is not unduly oppressive or unconscionable and that Plaintiffs have not met this bar. Docket No. 29 at 13 (Defendants' brief) (citing *Buraczynski, 919* S.W. 2d at 320).

The parties have not adequately addressed the question of whether Cigna was legally entitled to suspend their existing contracts with Plaintiffs, which the Court considers to be essential to its evaluation of this claim. The Court concludes that Plaintiffs' allegations, assuming they are correct, give rise to a claim for relief sufficiently colorable to survive a Rule 12(b)(6) motion. The Court will deny Defendants' motion to dismiss this claim.

### C. Fraud

In order to state a claim for fraud under Tennessee law, a plaintiff must plead the following elements: (1) a representation of an existing or past fact; (2) the representation was false when made; (3) the representation was in regard to a material fact; (4) the false representation was made knowingly, without belief in its truth, or recklessly; (5) the plaintiff reasonably relied on the misrepresentation; and (6) the plaintiff suffered damages as a result of the misrepresentation. *Walker v. Sunrise Pontiac–GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008). Plaintiffs' fraud claim alleges the following misrepresentations: (1) the contract with Cigna would continue; (2) the three-

11

page Election to participate and the ASH enrollment package constituted the entire agreement; (3) the fee schedules for Cigna were to remain in place.

Under Rule 9(b) of the Federal Rules of Civil Procedure "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir.1999). The Sixth Circuit has held that

> a complaint is sufficient under Rule 9(b) if it alleges the time, place, and content of the alleged misrepresentation on which [the deceived party] relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud, and enables defendants to prepare an informed pleading responsive to the specific allegations of fraud.

*United States ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 518 (6th Cir.2009) (internal bracket and quotations omitted).

The Court agrees with Defendants that Plaintiffs' fraud claim is not pled with sufficient particularity to withstand a motion to dismiss. Even more fundamentally, Plaintiffs' allegations are directly contradicted by the Recruitment Letter to which the Complaint references. It is clear from the Recruitment Letter that the contract with Cigna would not continue without the Plaintiffs' entering an agreement with ASH, that there was a PSA, and that there were fee schedules that the letter purports to have been on a CD attached to the letter. If it is true that the CD was not attached to the letter, Plaintiffs certainly were on notice that there were fee schedules that they could request and review. In any event, Plaintiffs do not allege a time, place, or content of communications that indicated the contract with Cigna would continue, that there were no contractual provisions other than the Election to Participate, or that the fee schedules would remain the same. The Court will dismiss Plaintiffs' fraud claim.

12

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion to dismiss Plaintiffs' claims for breach of contract/unjust enrichment, trover and conversion, negligence, negligence per se, and fraud. The Court will deny Defendants' motion to dismiss Plaintiffs' claim for contract of adhesion.

An appropriate order is filed herewith.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE

13